FILED

APR 2 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

530
NW

## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name __Haskins__    __Leonard__    __A.__
         (Last)         (First)        (Initial)

Prisoner Number __B-96040__

Institutional Address __San Quentin State Prison, San Quentin CA. 94964__

---

### UNITED STATES DISTRICT COURT

E-filing NORTHERN DISTRICT OF CALIFORNIA

CW

(PR)

CV 08    2226

__Leonard A. Haskins__
Full Name of Petitioner

Case No.(To be provided by the
clerk of court)

vs.

__Robert Ayers Jr. Warden__    PETITION FOR A WRIT OF HABEAS CORPUS
Name of Respondent
(Warden or jailor)

08-2226 NW

---

### Read Comments Carefully Before Filling In

#### When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

petition will likely be transferred to the district court for the district that includes the institution where you are confined.  Habeas L.R. 2254-3(b).

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

<u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

1. What sentence are you challenging in this petition?

    (a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

<u>Long Beach Superior Court</u>        <u>210 West Temple Street</u>
        Court                               Location

    (b) Case number, if known <u>NA056192.01</u>
    (c) Date and terms of sentence <u>07-24-2003 - 8 Years</u>
    (d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) (Yes)    No

Where? <u>San Quentin State Prison, San Quentin CA. 94964</u>
      (Name of Institution)                    (Address)

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>§§ 10851 vc, §§ 667.5 enhancement</u>
<u>§§ 1170.12 enhancement</u>

3. Did you have any of the following?

Arraignment: Yes ✓ No ___ Preliminary Hearing: Yes ___ No ✓ Motion to Suppress: Yes ___ No ✓

4.    How did you plead?

Guilty _____    Not Guilty _____    Nolo Contendere ✓

Any other plea (specify) __NO__

5    If you went to trial, what kind of trial did you have?  N/A

Jury N/A    Judge alone N/A    Judge alone on a transcript N/A

6.    Did you testify at your trial?  Yes N/A  No N/A

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment    Yes ✓    No __
(b)    Preliminary hearing    Yes    No ✓
(c)    Time of plea    Yes ✓    No _
(d)    Trial    Yes __    No ✓
(e)    Sentencing    Yes ✓    No __
(f)    Appeal    Yes ✓    No
(g)    Other post-conviction proceeding    Yes ✓    No __

8.    Did you appeal your conviction?    Yes ✓  No __

(a)    If you did, to what court(s) did you appeal?

| | | | (Year) | (Result) |
|---|---|---|---|---|
| Court of Appeal | Yes ✓ | No __ | 2003-2004 | Denied |
| Supreme Court of California | Yes __ | No ✓ | N/A | N/A |
| Any other court | Yes __ | No ✓ | N/A | N/A |

(b)    If you appealed, were the grounds the same as those that you are raising in this petition?    Yes __  No ✓

(c)    Was there an opinion?    Yes    (No)

(d)    Did you seek permission to file a late appeal under Rule 31(a)?    Yes    (No)

If you did, give the name of the court and the result:

N/A

9.    Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes __✓__    No ___

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.  NO

I.    Name of Court ___N/A___

Type of Proceeding ___N/A___

Grounds raised (Be brief but specific):

a.    ___N/A___

b.    ___N/A___

c.    ___N/A___

d.    ___N/A___

Result ___N/A___    Date of Result ___N/A___

II.    Name of Court ___N/A___

Type of Proceeding ___N/A___

Grounds raised (Be brief but specific):

a.    ___N/A___

b.    ___N/A___

c.    ___N/A___

d.    ___N/A___

Result ___N/A___    Date of Result ___N/A___

III.    Name of Court ___N/A___

Type of Proceeding  N|A _____

Grounds raised (Be brief but specific):

a.  N|A _____

b.  N|A _____

c.  N|A _____

d.  N|A _____

Result  N|A _____  Date of Result  N|A _____

     (b)   Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes __  No ✓

_____  N|A _____

               (Name and location of court)


## B. GROUNDS FOR RELIEF

    State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened? Who

made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need

more space. Answer the same questions for each claim.

    Note: You must present ALL your claims in your first federal habeas petition. Subsequent

petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499

U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

    Claim One:  See attachment B-1 through B-13 and

attachment c-1. through c-5.

Supporting Facts: _____

_____

_____

_____

Claim Two: _____

_____

Supporting Facts: _____

_____

_____

_____

Claim Three: _____

_____

Supporting Facts: _____

_____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which
grounds were not presented and why:

A. Plaintiff reserves the right to have damages determined in a Court of Law.

1) Issue a writ of Habeas Corpus

2) Declare the Rights of the Party

3) Neglectful medical conditions at San Quentin State Prison, with deliberate indifference to Plaintiffs U.S. Constitution Eighth Admendment Rights to be free from crule and unusual

4.) Plaintiff medical neglect constitutes reasons to be released from prison to seek medical treatment in a medical facility or prerelease treatment center, on parole.

5.) To be granted any other relief court deems proper.

6.) To be appointed counsel as representation of this writ.

7.) Investigation of San Quentin medical staff.

8.) Investigation of San Quentin Appeal Procedures of 602 Appeal form procedures which are faulty.

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases: The United States Constitution Eighth Admendment and The United States Constitution Fourthteen Admendment.

Plata v. Schwarzenegger

In re Darrell Goldstein v. Robert Ayers Jr. warden

Rule 8.7100 et seq. and Pen Code §1477

Do you have an attorney for this petition?    Yes ___ No ✓    In Pro Per

If you do, give the name and address of your attorney:

N/A

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on 04-03-2008        Leonard A. Haskin In Pro Per
Date                              Signature of Petitioner

( rev. 5/96)

<table>
<tr><td>
Court of Appeal, First Appellate District<br>
**FILED**<br>
APR 1 0 2008<br>
Diana Herbert, Clerk<br>
by _____ Deputy Clerk
</td></tr>
</table>

 COPY

# Division Four

# A121170

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  Haskins          Leonard          A.
     (Last)            (First)         (Initial)

Prisoner Number  B-96040

Institutional Address  San Quentin State Prison, San Quentin CA. 94964

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Leonard A. Haskins
Full Name of Petitioner

                                        Case No.(To be provided by the
                                        clerk of court)

       VS.

Robert Ayers Jr. Warden  PETITION FOR A WRIT OF HABEAS CORPUS
   Name of Respondent
   (Warden or jailor)

Read Comments Carefully Before Filling In

When and Where to File

     You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

     If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

In re LEONARD A. HASKINS,

    on Habeas Corpus.

A121170

> Court of Appeal, First Apellate District
>
> # FILED
>
> APR 1 7 2008
>
> Diana Herbert, Clerk
>
> by _____ Deputy Clerk

BY THE COURT:

    The court has received a petition for writ of habeas corpus apparently intended for the United States District Court, Northern District of California.  If the petition was intended for a state court, it must be filed in the superior court in the first instance.  (*In re Hillery* (1962) 202 Cal.App.2d 293, 294.)  A petition for writ of habeas corpus filed in the superior court must be submitted on the appropriate state habeas form (MC-275) and must comply with rule 8.380 of the California Rules of Court.

    The above-captioned proceeding (A121170) is dismissed.

    (Reardon, Acting P.J., Sepulveda, J., and Rivera, J., joined in the decision.)

Date:   APR 1 7 2008      REARDON, ACTING P.J.,P.J.

A121170

Leonard A. Haskins
CDC:B-96040
San Quentin State Prison
B-96040
San Quentin, CA 94974

**NOTICE**

*Please include both the appellate case number and the division number on any written communication or filing submitted to this court.*

**Our website address is**
**http://appellatecases.courtinfo.ca.gov**

pet

adda

Attachment B-1. through B-13.:

Claim 1. on 09-10-2003, I Leonard A. Haskins, informed Dr. Leong at Delano State Prison of my Cronic medical needs concerning cervical and spine degeneration. At the above time and date Dr. Leong ordered X-rays to be taken of said disorder. See attachment A-1.

Claim 2. on 10-21-2003 I was transfered to San Quentin State Prison

B-1

where I was seen by a Dr. Martin. At this meeting I informed Dr. Martin of all my cronic medical needs concerning my spinal arthritic disk degeneration causing loss of feeling in my feet and hands. Dr. Martin did not order any treatment.

Claim 3. On or about 03-01-2004 I saw Dr. Martin in S.Q. H-unit medical and I complained of a seriously painful two inch swelling on my left knee, and serious lower back pain. Dr. Martin did not order any treatment at this time. For above medical problems, Dr. Martin saw me on 06-25-2004 and ordered a lower back and left knee x-ray. See attachment A-1.

Claim 4. On or about 07-10-2004 I saw Dr. Martin were he read x-rays taken of my lower back and large swelling of left knee. Dr. Martin referred me to Teleortho for left knee. On 08-11-2004 Teleortho diagnosis was a bakers cyst. See attachment A-3.

Claim 5. On or about 10-01-2004 I was seen in S.Q. H-unit medical by Dr. Wilson, where I complained of my cronic spinal arthritic disk degeneration medical problems. At this time I informed Dr. Wilson of the severe pain I was in and the loss of feeling in my feet and hands, and also of pain in

1  my shoulder. Dr. Wilson referred me to the
2  Teleortho Doctor. On 12-02-2004 Teleortho
3  said to me that I would be starting physical
4  therapy for my shoulder. See attachment A-3.
5    Claim 6. From 12-02-2004 to approximatly
6  03-01-2005 I complained to Dr. Wilson and a
7  Dr. Bui in S.Q. H-unit medical of urological
8  problems, and neither Doctors ordered any
9  treatment. On or about 04-01-2005 one Dr.
10  Bui ordered antibiutics for my inlarged
11  prostrate. Medication did not work. See
12  attachment A-6(1),(5)(2.)
13    Claim 7. On 12-02-2004 in S.Q. H-unit
14  medical my medical chart was lost. Because
15  of severity of medical issues I was sent to
16  Dr. Williams the chief Physician. Dr. Williams
17  sent me to urology but never followed through
18  with setting up the appointment.
19    On or about 12-03-2004 I spoke with Lt. Eagan
20  about my medical needs and lost chart. Lt.
21  Eagan made many phone calls without prevailing.
22  During this time CC1 Linehan became involved
23  See attachment A-4(1)(5). CC1 Linehan was unable
24  to help me and mailed a report of her findings
25  to warden Jill Brown. This report never made
26  it to warden Jill Brown office. Instead it was
27  redirected to appeal coordinator office. See
28  attachment A-15(2.)

B-3.

Claim 8. On or about 12-17-2004 I wrote a 602 grievance about lack of treatment in S.Q. H-unit medical and losing my medical chart. See attachment. A-5 (27)

Claim 9. On 12-29-2004 appeal coordinator secretary told me to send a second 602 grievance directly to her office, because the 602 I wrote on 12-17-2004 was lost. The second appeal 602 was returned on 12-31-2004 stating to mail it to medical department. See attachment A-6(2)

Claim 10. On 12-30-2004 my 12-17-2004 602 was returned and I resubmitted it on 01-03-2005 It was returned on 01-04-2005 stamped canceled. See attachment. A-5(27)

Claim 11. On 12-24-2004 I was seen in S.Q. H-unit by Neurologist Dr. Capozoli. Dr. Capozdi said I would receive an immediate MRI and follow up treatment. The MRI and follow up never took place. See attachment A-3.

Claim 12. On 04-22-2005 in S.Q. H-unit medical I saw Urologist Dr. Gershbein. He perscribed me seven day of Valium and said that my symptoms were psychosomatic. said psychosomatic symptoms were of an x-rayed enlarged prostrate. I continued to complain to H-unit Doctors until I was perscribed Flomax. See attachment A-6(5)

Claim 13. On or about 05-01-2005 in H-

unit medical I complained of severe pain in my left shoulder and accute pain in my lower back and neck with loss of feeling in my feet and hands. See attachment

Claim 14. On 06-15-2005 MRI ordered by Dr. Khoo was taken. See attachment A-8(1)

Claim 15. On 09-30-2005 in S.Q. H-unit medical I was seen by Neurologist Dr. Mendius and was refered for sergery. Then no follow up treatment by Dr. Mendius. See attachment A-7.

Claim 16. On 12-23-2005 I spoke to Lt. Barker who was at that time supervising medical in S.Q. H-unit and infirmary. I addressed all of my medical concerns and medical neglect concerns with Lt. Barker. Lt. Barker did not assist me with my medical problems. See attachment A-7. On or about 07-01-2005 I was medically unasigned from my work assignment.

Claim 17. On or about 01-01-2006 my foot pain became accute. I complained of this pain to S.Q. H-unit Doctors and RN. I was not seen by a Podiatrist, Dr. Griffith, until 06-28-2006. See attachment A-9. . I again saw Dr. Griffith on 07-05-2006 and he told me that I had acessive high arches and needed arch support. See attachment A-9.

B-5.

1   On 08-16-2006 I saw Dr. Griffith and casting

2   of both of my feet were taken to make

3   prostetic arch supports. On 08-30-2006

4   Dr. Griffith check arch supports and said

5   that I needed speically fitted shoes and

6   referred me to a prostetic Doctor. See

7   attachment A-9. On 09-13-2006 I saw Dr.

8   Griffith where he confirmed my prostetic

9   Doctor appointment. See attachment A-10(2)

10   On 11-17-2006 I saw prostetic Doctor and

11   received said shoes. A-10(2)

12     Claim 18. On 08-14-2006 I began physical

13   therapy for my cronic neck and spinel

14   degeneration disorder. I first requested

15   treatment on 10-21-2003. At this appointment

16   the therapist said that I had cronic cervical

17   and lumbar arthritic degeneration and that I

18   was beyond physical therapy and that I

19   should immediately be reffered to a Nuro

20   surgeon. See attachment A-9. I continued

21   physical therapy until 09-13-2006, then

22   I was reffered to a Neuro surgeon. See

23   attachment A-10(2)

24     Claim 19. On or about 02-01-2007 I was

25   see by Neuro surgecy clinic at U.C.S.F.

26   huspital, and refered back to S.Q. medical

27   physical therapist for another probation

28   period of light tracktion for curvical

spine disorder. On 04-05-2007 this tracktion
probation period ended and the physical
therapist reffered me back to the Neuro
surgeon. From 04-05-2007 to approximately
12-17-2007 I received no follow up treatment.
See attachment A-10(1)

Claim 20. On 07-14-2006 S.Q. H-unit medical
Sent me to see an urologist. After a minimum
case review I was never seen again by an
urologist until approximately 02-01-2008.
See attachment A-9.

Claim 21. On or about 12-01-2005 I wrote
a letter to the prison law office explaining
my medical issues and medical neglect at
S.Q. H-unit medical department. Since the
above date I have contacted said law
office off and on with no legal help offered.
See attachment A-12(1),(2)(B.),(4).

Claim 22. On or about            I tried
to mail a letter outlining my medical
needs and medical neglect at S.Q. H-unit
medical, via initutional mail system
and it was misdirected to appeal coordinator
office. This letter was written to warden
Jill Brown. See attachment A-15(1)

Claim 23. On or about 09-01-2007 S.Q H-
unit medical sent me to Doctors hospital.
I was seen by urologist specialist Dr. Brown.

B-7.

1  Dr. Brown said that he was making me an
2  appointment for surgery and that he would
3  be my surgeon.
4     On or about Tuesday 10-16-2007 I was
5  admitted into Doctors hospital for surgery
6  on my prostrate. On Wenesday 10-17-2007
7  I was discharged and returned to S.Q. TTA
8  clinic, then sent back to my housing unit,
9  without out any follow up treatment or
10 pain medications ordered by Dr. Brown.
11    On 10-18-2007 my dorm officer Archembeau
12 made multible phone calls trying to obtain
13 said pain medications and said treatment.
14    On 10-18-2007 at 1315 hours I was sent
15 to S.Q. TTA clinic for said follow up
16 treatment and refused treatment by
17 officer Cortez at the door.
18    On 10-18-2007 at 1700 hours I was
19 transported via med. I. to said TTA clinic
20 in severe pain, where I recieve pain
21 medication and antibiotics and a
22 follow up treatment cleaning of my
23 exterior catheter. I was then made
24 to walk back to my housing unit.
25    On 10-19-2007 I forced my way into S.Q
26 H-unit medical unit and was seen by Dr.
27 Udenhi and she exclaimed 'oh my God, your
28 catheter was supposed to be removed in 48

B-8.

1  hours, Jesus, were a day late already, RN
2  get him sent to the TTA ASAP, to get this
3  removed'.
4     On 10-19-2007 at 1500 hours said TTA doctor
5  removed said catheter and I was told to
6  walk back to my housing unit.
7     On or about 10-21-2007 I began suffering
8  complications from my prostrate surgery,
9  which was accute pain in my prostrate area,
10 urinary retention and a burning when I
11 urinated.
12    Beginning on 10-21-2007 I complained to
13 S.Q. H-unit medical of said complications,
14 and requested to be seen by Dr. Brown or for
15 Dr. Brown to be called. my request was
16 ignored.
17    After two weeks of complaining of said
18 complications to the S.Q. H-unit medical, I
19 called my mother, ms. Judy Butler, for help.
20 my mother called the Inspector General office
21 three times and explained my medical needs
22 and problems at S.Q. and requested that
23 their office interview me. To no avail.
24    On 11-20-2007 in severe pain from said
25 complications I was transported to Doctors
26 hospital where I was seen by Dr. Brown
27    On 11-20-2007 I was returned to S.Q. TTA
28 clinic accompanyed by strict treatment

B-9.

1  orders by Dr. Brown.

2  On 11-26-2007 I began complaining to S.Q.
3  H-unit medical unit about not receiving any
4  pain medications ordered by Dr. Brown or
5  Dr. Brown other treatment orders. I was
6  refused said treatment.

7  On or about 12-10-2007 S.Q. H-unit medical
8  Doctor Udenhi told me that all of Dr. Brown
9  treatment orders of 11-20-2007 were lost
10 out of medical file. Dr. Udenhi then said
11 that he would call Dr. Brown and ask him
12 what treatment he perscribed. Later, Dr.
13 Udenhi perscribed me 1mg. of Terazosin
14 once daily. This dosage did nothing for my
15 pain or systems. Dr. Udenhi then started
16 increasing said medications.

17 On 02-14-2008 in S.Q. H-unit medical unit,
18 I was seen by one Dr. David. Where she said
19 that she spoke to Dr. Brown and per his
20 instructions I was to be given a new
21 treatment procedure. I was perscribed
22 along with Terazosin, oxybugutin 5mg 1
23 tablet twice daily.

24 Claim 2A. On or about 02-18-2008 I again
25 contacted the prison law office and explained
26 all of the above medical neglect by S.Q. H-unit
27 medical and lack of treatment after my resent
28 prostrate surgery. On 02-21-2008 I received a

B-10.

1  letter from a mr. Tobias at the prison law office.
2  At this time mr. Tobias said that my case
3  concerning medical neglect was being reopend.
4  See attachment A-17.
5    On or about 12-17-2007 I was seen in S.Q.
6  medical Dr. Papas a spinel surgeon, a Doctor
7  I was not under his treatment. Dr. Papas saw
8  me for my spinel degeneration disorder and
9  began me on 'facet spinel injections' for my
10  cercical spine disorder. I am now under
11  his care. See attachment A-10.
12    Lastly, on 03-28-2008 in S.Q. H-unit medical
13  I was seen by one Dr. David, where she
14  refered me back to Dr. Brown Urologist, due to
15  complications from my on going medical need in
16  that area. Dr. David also ordered an MRI of
17  my lumbar spine, which I waited three years
18  to have looked into.
19    Claim 25. On 12-24-2006 at 1900 hours, I
20  became deathly ill and began to experience
21  extencive vomiting every 30 minutes. At
22  approximately 0001 hours I approached officer
23  Perry in my dorm in S.Q. H-unit and requested
24  immediate medical treatment, called 'man-
25  down'. Instead of ordering the man-down,
26  officer Perry called the first watch sergeant,
27  who refused me the man down order. At
28  approximately 0300 hours I again approached

1  officer Perry and told him that I was continually
2  experiencing vomitting along with diarrhea.
3  Officer Perry once again called sergeant on
4  duty and once again the sergeant on duty
5  refused to order a 'man-down medical
6  emergency' call.
7     At 0520 hours I again approached officer
8  Perry in my dorm and said, 'for God sakes
9  I'm litterly dying what do I have to do to get
10  some medical attention. Office Perry finelly
11  wrote me a pass to the TTA clinic.
12     To get clearence to go to said TTA clinic
13  I first had to walk to S.Q. H-unit administration
14  building, and on the way there I was approached
15  by the third watch officer Lee, who asked me
16  what I needed. I told him that I was deathly
17  ill and needed treatment. Officer Lee said to
18  hold on and he will call an man-down, which
19  a R/N agreed.
20     As I waited to be picked up by
21  an officer Johnston approached me and ordered
22  me to go back to my dorm. About one hour
23  later I saw sergeant Collier and he ordered
24  that I be escorted to said TTA clinic. At the
25  TTA clinic the R/N said that if I did not come
26  in when I did, that I would of died of
27  dehydration.
28     I Leonard A. Haskins believe that all of the

1  above attachment B-1, through B-13, along with
2  attachment c-1 through c-5 demonstrate the
3  dangerous lack of medical care to my person
4  at San Quentin State Prison whom have with
5  deliberate indifference 'denied' me adaquate
6  medicare care in violation of my United State
7  constitution Eighth Admendment Rights to be
8  free of crule and unusual punishment, and
9  my united State constitution Fourthteenth
10 Admendment Rights to Due Process of Law.
11 The grounds for relief for neglect of medical
12 care outlined in attachment B-1 through B-13,
13 and attachment c-1 through c-5 in this
14 writ are to be determined.

B-13.

1    The following is further claim documentation
2  in the form of my person being denied the inmate
3  Appeal Form CDC 602 process, from the informal
4  level, formal level, first level and second level, to
5  chief Inmate Appeals office.

Claim 26. 6  1. Informal appeal see attachment A-5(1). Appeal
7  log number 07-00209. Dated 01-10-2007. Result
8  'Bypass'. Appeals coordinator requested that I
9  mail a replacement grievance to appeal office,
10  because this grievance was lost, so at one time
11  there were 'two' with same log number see attachment
12  A-5(1) through A-5(16).

Claim 27. 13    See attachment A-5(18). No appeal log number. Dated
14  04-23-2007. Partially granted.
15    See attachment A-5(19). Appeal log number 07-00209.
16  No date. No result. Not pursued because grievance
17  was lost in appeal coordinator office. See attachment
18  A-5(19) through A-5(25).

Claim 28. 19    See attachment A-5(26). Appeal log number is
20  CSQ-5-05-00488. No date. No result. Could not
21  pursue because grievance was lost in appeal office.

Claim 29. 22    See attachment A-5(28). Appeal log number
23  was never attached. Dated 12-29-2004.
24  This grievance was improperly cancelled by
25  appeal coordinator office. See attachment
26  A-5(27)-8. Abuse of the Appeal Procedure.

Claim 30. 27    See attachment A-6(1). Appeal log number
28  was never attached. Dated 01-04-2004 /

COMPLAINT                C-1.

1  12-31-2004. No responce. Requested by appeal
2  office that I pursue grievance through medical
3  dept. See attachment A-6(1) to A-6(3).

4
Claim 31.
5  2. Formal level see attachment A-5(1). Appeal
6  log number 07-00209. Dated 01-11-2007. Bypass.
7  Partially granted. See attachment A-5(1) to A-5(16).
Claim 32.
8  See attachment A-5(18). No appeal log number.
9  Dated 04-26-2007. No response by appeal office.
10  Not pursued because 'no' appeal process was left
11  to pursue by appeal office. See attachment A-5(17)
12  through A-5(18).
Claim 33.
13  See attachment A-5(19). Appeal log number
14  07-00209. No date. No result. Not responded
15  too. Not pursued because grievance was lost
16  in appeal coordinator office. See attachment
17  A-5(19) through A-5(2.).
Claim 34.
18  See attachment A-5(26). Appeal log number CSQ-5-
19  05-00488. Dated 03-11-2005. No result. Not pursued
20  because lost in appeal coordinator office.
Claim 35.
21  See attachment A-5(28). No appeal log
22  number. Dated 01-03-2005. No result. Not pursued
23  because appeal office did not return original and
24  improperly canceled grievance see attachment A-5(27).
Claim 36.
25  See attachment A-6(3). No appeal log number.
26  No date. No result. Not pursued because
27  grievance was lost in appeal coordinator office.
28  found, then misdirected. See attachment A-6(1) - A-6(3).

COMPLAINT                    C-2.

claim 37.
3. Second formal level. See attachment A-5(1). Appeal log number 07-00209. Dated 03-09-2007, 04-06-2007. Result not granted, stamped bypass. Appeal coordinator did not leave me an option to pursue at this level. See attachment A-5(1) through A-5(16).

claim 38
   See attachment A-5(18) no appeal log number. No date. No result not pursued because of no appeal process left to pursue by appeal coordinator. See attachment A-5(17) through A-5(18).

claim 39
   See attachment A-5(19). Appeal log number 07-00209. No date. No result because was lost. Could not pursue because grievance was lost in appeal coordinator office. See attachment A-5(19) through A-5(25).

claim 40
   See attachment A-5(26). Appeal log number CSQ-5-05-00488. No date. No result. Not pursued because grievance was lost in appeals coordinator office. See attachment A-5(26).

claim 41
   See attachment A-5(28) no appeal log number. No date. No result. Could not pursue because grievance was lost and then found in appeals coordinator office and then misdirected. See attachment A-5(27) through A-5(29).

COMPLAINT                    C-3.

Claim 42

1  See attachment A-6(2) no appeal log
2  number. No date. No result. I could not
3  pursue grievance because grievance was
4  lost in appeal coordinator office and
5  then found then misdirected. See
6  attachment A-6(1) through A-6(3).
7
Claim 43.
8  A. third formal level see attachment A-5(1).
9  Appeal log number 07-00209. No date. No
10 result. Not pursued because of misdirection
11 to me by appeal coordinator, see attachment
12 A-5(6) and A-5(7), also because of entire
13 misdirection appeal coordinator procedure.
Claim 44.
14 See attachment A-5(8) no appeal log
15 number. No date. No result. Could not
16 pursue because of no appeal process. See
17 attachment A-5(7) and A-5(8).
Claim 45.
18 See attachment A-5(9). Appeal log
19 number 07-00209. No date. No result.
20 Could not pursue because grievance was
21 lost in appeal coordinator office. See
22 attachment A-5(9) through A-5(25).
Claim 46.
23 See attachment A-5(26). Appeal log
24 number CSQ-5-05-00488. No date. No result.
25 Not pursued because was lost in appeal
26 coordinator office. See attachment A-5(26)
Claim 46.
27 See attachment A-5(28) no appeal log
28 number. No date. No result. Could not pursue

COMPLAINT

1 because grievance was lost in appeal
2 coordinator office. See attachment A-5 (2r)

Num 47.
3     See attachment A-6(2) no appeal log number.
4 no date. no result. Could not pursue because
5 grievance was lost in appeals coordinator
6 office. See attachment A-6(2) through A-6(3).
7     None of the above grievances were allowed to
8 the Director of Corrections in the Chief Inmates
9 Appeals office in Sacramento.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT                    C.5

Attachments A-1

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# MEDICAL/DENTAL LAY-IN ORDER

| INMATE'S NAME  Haskii, L | CDC NUMBER  B 96040 | HOUSING  4H17c |
|---|---|---|

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

Lay in for 2/28, 3/1, 3/2, 3/3 due to chronic injury.

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

MTA  RJ McCluskey           Schaum    x6185

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

CDC 7257 (Rev 6/97)

A-1:



| INMATE  HASKI,N | CDC NUMBER:  B96040 | HOUSING:  FD-B2-128U |
|---|---|---|

**Work restriction: NO LIFTING.**

CC: C-File (Original)
    Medical File
    Assignment Lieutenant
    Unit Sergeant
    Housing Officer
    Inmate

PHYSICIAN:  Dr. LEONG, A

ARRIVAL DATE :  9/10/03

DATE :  9/12/2003      N K S P    M E D I C A L    C H R O N O      CDC-128-C

Attachment; A-2

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS
CDC 7393 (11/02)

## NOTIFICATION OF DIAGNOSTIC TEST RESULTS

| NAME Haskins, Leo | CDC NUMBER R-4804 |
| INSTITUTION SQ | HOUSING 5013 |
| TYPE OF TEST Left Knee X-ray, Lowback | DATE OF TEST 6/25/04 |

### YOUR TEST RESULTS HAVE BEEN EVALUATED BY A PHYSICIAN AND THE FOLLOWING HAS BEEN DETERMINED:

☐ Your test results are essentially within normal limits or are unchanged and no physician follow up is required.

☒ You are being scheduled for a follow up medical appointment. You will be receiving a ducat indicating your appointment time.

☐ A repeat test will be ordered. You will be ducated for this test.

☐ A chronic care appointment has been scheduled for you. You will be receiving a ducat indicating your appointment time.

_____T. MARTIN_____
NAME / TITLE

_____
PHYSICIAN SIGNATURE

7/20/04
DATE

ORIGINAL - File in UHR          CANARY - Scheduler          PINK - Patient

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## CDC 128 C - TEMPORARY COPY

NAME_____ NUMBER_____ HOUSE_____ DATE_____

REQUEST _____ not available _____

_____

_____

MEDICAL REASON: _____

SIGNED _____ M.D.

A-3.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**PRIORITY INMATE DUCAT**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D. ALLEN, LT. | 12/23/2004 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 12/24/2004 | 0900 HRS |
| REASON: | | |
| NEUROLOGY | | |

AUTHORIZED BY: *[signature]* — REQUESTED BY: CAPOZOLLI

DEPART TO: | TIME: | RECORDED BY:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**PRIORITY INMATE DUCAT**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 3 N 067U |
| ISSUED BY: | DATE: | PASS FROM: |
| D. ALLEN, LT *[signature]* | 8/10/2004 | NORTH BLOCK |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 8/11/2004 | 1430 HRS |
| REASON: | | |
| TELEORTHO | | |

AUTHORIZED BY: — REQUESTED BY: MACAALAY

DEPART TO: | TIME: | RECORDED BY:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskins | B96040 | |
| ISSUED BY: Weller | DATE: 2-8-05 | PASS FROM: |
| PASS TO: PIA | DATE: | TIME: 1215 |
| REASON: RN Triage unable to urinate painful | | |

ARRIVAL TIME: | RECORDED BY:

DEPART TO: | TIME: | RECORDED BY:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskin | B96040 | 4 H 17L |
| ISSUED BY: J. Suazy | DATE: 11-3-04 | PASS FROM: PIA |
| PASS TO: H-Unit | DATE: 11-3-04 | TIME: 1215 |
| REASON: Medical | | |

ARRIVAL TIME: | RECORDED BY:

DEPART TO: | TIME: | RECORDED BY:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 4H17 |
| ISSUED BY: Watt | DATE: 2-22-05 | PASS FROM: |
| PASS TO: INFIRMARY | DATE: 2-22-05 | TIME: AM |
| REASON: LAB | | |

ARRIVAL TIME: | RECORDED BY:

DEPART TO: | TIME: | RECORDED BY:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**PRIORITY INMATE DUCAT**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D. ALLEN, LT. | 11/28/2004 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 11/29/2004 | 0800 HRS |
| REASON: | | |
| H-UNIT CLINIC | | |

AUTHORIZED BY: *[signature]* — REQUESTED BY: SUMLER

DEPART TO: | TIME: | RECORDED BY:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKINS | B96040 | 4H17 |
| ISSUED BY: Watt | DATE: 2-2-05 | PASS FROM: |
| PASS TO: H-Unit Clinic | DATE: 2-2-05 | TIME: 0830 |
| REASON: RN Triage | | |

ARRIVAL TIME: | TIME:

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskins | B96040 | 4 H 17 |
| ISSUED BY: K. Brodie | DATE: 12-2-04 | PASS FROM: H Unit |
| PASS TO: PIC | DATE: 12-2-04 | TIME: 0945 |
| REASON: Medical Phone Conference | | |

ARRIVAL TIME: | RECORDED BY:

DEPART TO: | TIME: | RECORDED BY:

Attachment; A-4(i)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# MEDICAL/DENTAL LAY-IN ORDER

| INMATE'S NAME | | CDC NUMBER | HOUSING |
|---|---|---|---|
| | | | |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

CDC 7257 (Rev 6/97)

---

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# MEDICAL/DENTAL LAY-IN ORDER

| INMATE'S NAME | | CDC NUMBER | HOUSING |
|---|---|---|---|
| HASKIN | | | |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

CDC 7257 (Rev 6/97)

---

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# MEDICAL/DENTAL LAY-IN ORDER

| INMATE'S NAME | | CDC NUMBER | HOUSING |
|---|---|---|---|
| | | | |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

CDC 7257 (Rev 6/97)

• Attachment, A-4(2)

STATE OF CALIFORNIA
## MEDICAL/DENTAL LAY-IN ORDER

DEPARTMENT OF CORRECTIONS

| INMATE'S NAME | CDC NUMBER | HOUSING |
|---|---|---|
| | | |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

**CDC 7257 (Rev 6/97)**

STATE OF CALIFORNIA
## MEDICAL/DENTAL LAY-IN ORDER

DEPARTMENT OF CORRECTIONS

| INMATE'S NAME | CDC NUMBER | HOUSING |
|---|---|---|
| | | |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

6 - 15 - 05

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

**CDC 7257 (Rev 6/97)**

STATE OF CALIFORNIA
## MEDICAL/DENTAL LAY-IN ORDER

DEPARTMENT OF CORRECTIONS

| INMATE'S NAME | CDC NUMBER | HOUSING |
|---|---|---|
| | | |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.

C.C: WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

**CDC 7257 (Rev 6/97)**

Attachment, A-4 (3)

STATE OF CALIFORNIA                          DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C              PAGE    1    OF    1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| B-96040 | HASKIN | 05-3H-02-082 | SQSP | 3/6/05 |

| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER |
|---|---|---|---|---|---|

**Hearing:** The hearing was convened on 03/06/05, at approximately 1800 when I introduced myself to HASKIN as the Hearing Officer for this disciplinary. HASKIN stated he was in good health with normal vision and hearing. HASKIN acknowledged that he received a copy of the following document more than 24 hours in advance of the hearing: CDC-115. This report as well as the disciplinary charge of REFUSAL TO REPORT TO WORK was reviewed with HASKIN in the hearing. He stated that he understood both and that he was prepared to begin the hearing.

**District Attorney:** This has not been referred for criminal prosecution.

**Due Process:** The disciplinary was served on the inmate within 15 days of discovery and the hearing was held within 30 days of service. The inmate received his copies of all documents more than 24 hours in advance of the hearing. There are no due process issues.

**Staff Assistant:** A Staff Assistant was not assigned as HASKIN agrees that he speaks English, is literate (that is, reads at 4.0 or above), the issues are not complex and a confidential relationship is not required. In the hearing, HASKIN confirmed that assignment of a Staff Assistant was not necessary.

**Investigative Employee:** An IE was not assigned as the issues are not complex and the available information is sufficient. Per the CDC 115-A and his statements in the hearing, HASKIN has not requested IE assignment.

**Request for Witnesses:** HASKIN waived all witnesses and the SHO requested none.

**Plea:** Not guilty

**Hearing testimony:** HASKIN gave the following testimony as his defense: I have medical lay-ins for the date I was supposed to have refused to report to work.

**Finding:** Not guilty. This finding is based on the following evidence presented at the hearing.

A. The report states HASKIN failed to report to work on 2-23-05 and had no lay-in, ducat, pass, or apparent physical disability to excuse him from his job assignment.
B. Inmate HASKIN produced a medical lay-in dated 2/22/05 stating he was restricted to his housing unit on 02/23 and 02/24.

**Disposition:** Dismissed. After review has been completed by the CDO, a copy of this disciplinary report will be sent to the Register of Institution Violations, the original copy of this disciplinary will be given to the inmate and all other copies of this disciplinary will be destroyed. Notice will be sent to records staff to remove the CDC 804 from the Central File.

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| R. P. ROMAN | Correctional Lieutenant | 3/6/05 |

| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| | | 3-1-05 | 1700 |

Attachment; A-4(4)

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE    1    OF    1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| B-96040 | HASKIN | 05-3H-01-101 | SQSP | 2/21/05 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER |
|---|---|---|---|---|---|

**Hearing:** The hearing was convened on 2-13-05, at approximately 1000 hours when I introduced myself to HASKIN as the Hearing Officer for this disciplinary. HASKIN stated he was in good health with normal vision and hearing. HASKIN acknowledged that he received a copy of the following document more than 24 hours in advance of the hearing; CDC 115. This report as well as the disciplinary charge of REFUSAL TO WORK were reviewed with HASKIN in the hearing. He stated that he understood both and that he was prepared to begin the hearing.

**Due Process:** The disciplinary was served on the inmate within 15 days of discovery and the hearing was held within 30 days of service. The inmate received his copies of all documents more than 24 hours in advance of the hearing. There are no due process issues.

**Staff Assistant:** HASKIN was not assigned a Staff Assistant as the issues are not complex, does not meet criteria in CCR 3315 (d) (2)

**Investigative Employee:** HASKIN was not assigned an investigative Employee, incident does not meet criteria in CCR 3315 (d) (1)

**Request for Witnesses:** HASKIN waived all witnesses and the SHO requested MTA's Walker and McCloskey and CMO Dr. Williams.

**Plea:** GUILTY WITH AN EXPLANATION.

**Hearing testimony:** HASKIN gave the following testimony as his defense: I have been trying to get medical treatment regarding pain in my shoulder. I have filed Appeals and they have been returned. CCI Linehan has been attempting to assist me. Hearing postponed pending availability of witness. HASKIN explained that he could not work due to chronic pain in his neck and shoulder due to osteoarthritis.

2-16-05 hearing reconvened with CCI Linehan present. Linehan had a packet of papers. She stated that she had been assisting HASKIN in resolving his medical issues. She had advised him to submit a copy to the CDW and one to the Warden. HASKIN received a notice back, which stated they do not except copies of Appeals. A blank 602 was attached. Neither Linehan nor HASKIN understood where the notice came from. HASKIN went on to explain that he has been attempting to resolve his medical issue for 2 months. Around 10-29-04 a Dr Wilson read some x-rays and stated that the deterioration was worse in his neck than he thought. Dr. Wilson scheduled HASKIN for additional test and asked him about cortisone shots. HASKIN explained that he had a shot about 4-5 years ago. The problem started when medical discovered that his medical file was missing around 12-2-04 and they said they could not treat him because he did to have a medical file. The file was located on 12-29-05. Since then he was treated by Dr. Bui but only for a change in prescription. HASKIN claims to have been referred to CMO Dr. Williams by MTA's Walker and McCloskey, Nurse Daniels and another nurse. On 2-16-05 SHO left a message with the CMO's secretary.

On 2-17-05 SHO contacted the CMO, Dr. Williams. All of the above information was relayed to Dr. Williams. Dr. Williams had a nurse White write a 3-day lay-in for HASKIN. The lay-in was written pending a proper medical review of the issues claimed by HASKIN.

**Finding:** NOT GUILTY of the Div. F (3) (California Code of Regulations, Title 15, Section 3315 (a)(3)(J)) offense REFUSAL TO REPORT TO WORK. This finding is based upon the following preponderance of evidence:

1. HASKIN claimed of having chronic pain from October.
2. HASKIN medical files were lost from 12-2-04 to 12-29-04

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| R. EGAN | | Correctional Lieutenant | 2/21/05 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |

• Attachment, A-4 (5)

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS
PAGE    2    OF    2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| B-96040 | HASKIN | 05-3H-01-101 | SQSP | 2/21/05 |

☐ SUPPLEMENTAL    ☑ CONTINUATION OF:    ☐ CDC 115 CIRCUMSTANCES    ☑ HEARING    ☐ I.E. REPORT    ☐ OTHER

3. HASKIN repeatedly signed up for sick call to have the chronic pain addresses.
4. MTA's Walker, Daniels and McCloskey referred HASKIN to CMO DR. Williams
5. CCI Linehan attempted to resolve the medical issue via Inmate Appeals. The appeals were returned with notations but they did know who returned the appeals.
6. Dr. Wilson reviewed x-rays and stated to HASKIN that the deterioration of his neck was worse that he thought.
7. HASKIN's medical file was lost preventing him from prescribing medication.
8. ON 2-18-05 CMO, Dr. Williams determined due to the medical problems HASKIN was issued a 3-day lay-in.

Disposition: Dismissed

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED | |
|---|---|---|---|
| R. EGAN | Correctional Lieutenant | 2/21/05 | |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |

07-00209

• Attachment; A-5(1.)                    1 of 2                    07-00209

**INMATE COPY**

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. _SQ_ | 1. _07-00209_ | _1_ |
| 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NURSE PICKET, NC

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| HASKIN, L | B-96040 | Medically Unassigned | 4-H-17L |

A. Describe Problem: On Sunday evening of Dec. 24, 06 at approximately 1900 hrs. I began to have extensive vommiting and diarrhea every (30) minutes. At approximately 0001 hrs. I approached Officer Perry at the podium and explained that I had been continuously vommiting and suffering from diarrhea since 1900 hrs., also that I had a known history of stomach trouble already; I need immediate medical attention; please do a (man-down). At that time the first-watch

If you need more space, attach one additional sheet.

B. Action Requested: That all staff members medical and custody who were involved in this fiasco be immediately suspended without pay pending investigation of this matter. That this very serious incident be immediately put under investigation.

Inmate/Parolee Signature: _Leonard Haskin_    JAN 1? REC'D    Date Submitted: 1-1-07

JAN 10 REC'D

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: **Bypass**

JAN 17 REC'D

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**Bypass**

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

Attachment; A-5(z.)

Sergeant was called, in direct violation of Section (3354) regarding health care responsibilities and limitations of the Title 15 rules and regulations code, the First-Watch Sergeant took it upon himself to act as a health care employee and deny me badly needed medical attention. Section (3354) explicitly explains that only health care consultants shall be permitted, within the scope of their lisencore, to diagnose illness or prescribe medication and health care treatment for inmates. "No other personnel may do so!" Once again at approximately 0300 hrs. after still continuously suffering from extensive vommiting/diarrhea I approched the podium and told Officer Perry that my symtoms have become increasingly worse that I seriously need medical attention, also that I was now becoming critically dehydrated. Officer Perry once again contacted the First-Watch Sergeant and explained that inmate (Haskin) was getting seriously worse, unfortunately the Seargeant again violating Section (3354) took it upon himself to deny me badly needed medical attention. At any point of time during this fiasco if by chance an M.T.A. was contacted, then that person was seriously negligent in performing his/her job duties! At 0520 hrs. I approached Officer Perry again and said, "what do I have to do to get some damned medial attention? For God's sakes I feel like I'm literally dying." Finally he took the initiative to write me a pass directly to the T.T.A. Clinic. At 0530 hrs. I barely made it to the Admin. Building and observed my third-watch dorm Officer Lee coming out of the M.S.F. Dorm and approach the Admin. Building, he stopped

JAN 17 REC'D

Attachment; A-5(a)

thank God I was brought in there. Over approximately 4 hours it took a full 4 liter bags of sterile fluids to bring my heart rate even back to (100) a somewhat safer level. I was lastly given an I.V. injection of prochorperazine and three prochorperazine 10mg. tablets. As I got ready to return to my dorm I was told no solid foods for at least 4 days, unfortunately this is where the first mistake was made. I wasn't issued any enlive nutrient drinks to sustain myself. The following day of Dec. 26, 06 I approached male ~~nurse Peter~~ and explained to him my situation, he became very unprofessional and stated thusly; "you got enough fluids yesterday I've nothing for you." I was very unprofessionlly denied any way to sustain myself for over 4 days until the medical staff finally started handing out (enlive). I was never treated so disrespetfully my entire life until this fiasco. The only three people who showed professionalism and respect were, Sergeant Collier, and the two male nurses in the T.T.A. Clinic.

JAN 17 REC'D

Attachment; A-5 (A)

1-2-07

C. M. O. Saylor:

The main reason that I am sending this appeal directly to you at the informal level is manny fold. First, I have previously brought this matter to the attention of your Scenior M. T. A. with no response. Secondly, I tried to obtain staff assistance regarding who to direct this appeal to, only to face a dead end. Lastly, the severity of the issues at hand; also that they deal with violations regarding medical protocol, which in turn put my health and well-being at great risk.

I will deeply appreciate your assistance in getting to the bottom of this urgent matter.

Thanking you in advance.

Leonard Haskin, B-96040

JAN 17 REC'D

Attachment; A-5 (s.)

1-2-07

Mr. Robert Sillen,

I am sending you a copy of an inmate appeal which I sent to C.M.O. Kathleen Taylor. The reason for sending you a copy is due to the severity of the issues at hand, and also that they deal directly with extremely serious violations of professional medical protocol. There is no question that my health and well-being were put at great risk by this astronomic fiasco of unprofessionalism. I feel sir that (4 liter bags of fluids) to finally rehydrate me was extensive. At (55) years of age, a heart rate of (145-150) was definitely at a critical stage.

I will deeply appreciate your assistance at getting to the root of this fiasco.

Thanking you in advance.

Leonard Haskin, B-96040

JAN 0 5 REC'D

JAN 17 REC'D

te of California     Attachment; A-5 (6)                    Department of Corrections

# INMATE/PAROLEE APPEALS SCREENING FORM

AME: Haskin          NUMBER B 96040     SQP LOG No:_____

(OTHER LOG NO)_____     ISSUE:_____     AREA OF ORIGIN:_____

OUSING UNIT_____          NOTE_____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

___1. The action or decision being appealed is not within the jurisdiction of the Department.
_____ a. BPT Issue, file BPT 1040 form & submit to C&PR          _____ b. Other, see comments

___2. You have submitted a duplicate appeal on the same issue.  Check one:
_____ Your first appeal was screened out on _____ for _____
_____ Your appeal is currently under review at the_____ level.
_____ Your first appeal has been completed at the _____ level.

___3. You are appealing an action not yet taken.

___4. You may not submit an appeal on behalf of another inmate.

___5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.
_____ CDC-115 Hearing Officer's or Disciplinary Committee Results          _____ Supplemental Reports to CDC-115.
_____ CDC-115A with I.E./D.A. info.          _____ CDC-128B1 Hearing Notif.          _____ CDC-839/840 Class/Reclass Score Sheet
_____ CDC-128G ICC/UCC Clas.Com.          _____ CDC-128G Init. Clas. Com.          _____ CDC-128G CSR Endorsement Chrono
_____ Lab Results Sheet          _____ CDC-114D Lock Up Order          _____ CDC-1030 Confidential Disclosure
_____ CDC-7219 Medical Report          _____ Legal Status Summary          _____ CDC-128C Medical Chrono
_____ Board of Control Claim Form (attached)          _____ Property Inventory Slip
_____ Receipts:_____ Qtr.Pkg. Inventory Slip          _____ CDC-143 Property Transfer Slip          _____ Cell Search Slip
_____ You have failed to complete Section_____          _____ Sign & Date Section_____
_____ Other:_____

___6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

___7. This issue has been appealed under the assigned SQP Appeal Log No._____. Per DOM section 54100.10.1,
     a copy of the reviewer's response:          _____ Is attached          _____ Will be forwarded to you upon completion

___8. Abuse of the Appeal Procedure.  See Comments.

Comments: Please submit your complaint on
the attach. 602 and return to
the Inmate Appeals Office for process
ing.

R. CHANDLER-DACANAY          W. JEPPESON          Date 1-8-7
CC-II, Appeals Coordinator     CC-II, Appeals Coordinator

JAN 17 REC'D

This screening action may not be appealed unless you allege that the above reason is inaccurate.  In such case, please return this
form to the Appeals Coordinator with the necessary information.

## PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

CDC-695 (REVISED 9/03)

Attachment, A-5 (7.)

`` State of California

# Memorandum

Date    :    **March 1, 2007**

To    :    **Haskin, B96040**

Subject:    **STAFF COMPLAINT RESPONSE - APPEAL # 07-00209-**

**APPEAL ISSUE:**  Complaint Against Staff

**DETERMINATION OF ISSUE:**  A review of the allegations of staff misconduct presented in the written complaint has been completed.  Based upon this review your appeal has been handled as follows:

☒  PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐  REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the
   conclusion of any internal affairs investigation)

**SUMMARY FOR APPEAL INQUIRY:**
You allege that on December 24, 2006 you became very ill, which lasted for several days.  You stated that you received several liters of IV Fluid in the TTA during the time of this illness. You alleged that LVN Picket was in H Unit on December 26, 2006 and treated you in an unprofessional manner when you requested Enlive.  Upon interview, you stated that you chose not to pursue the complaint against LVN Picket at this time.

**FINDINGS FOR AN APPEAL INQUIRY:**
Your appeal is PARTIALLY GRANTED at the ☒ First level, as an inquiry into your allegation has been conducted.    ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.  As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates.  Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.  If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review.   Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

_____  1 SRN II              3/1/7
S. Grove, Supervising Registered Nurse II                     Date

Attachment, A-5(8) *Second Level Continuation Sheet*

part within this appeal was a minor issue at best. I personally spoke with an Officer who was a key witness in this appeal, he was never interviewed. As far as I have been able to ascertain, there was never any legitimate investigation ever conducted, only a giant smoke screen. Considering that one of the most important witnesses was never interviewed, only adds credence to the lack of any means of investigation. I am also considering filing a Citizens Complaint regarding this matter. I don't appreciate being lied to regarding this matter. I am now requesting an Internal Affairs investigation of these issues, especially after the malicious intents to thwart the seriousness of this appeal through totally inadequate investigating!

Attachment A-5(a) 3-6-07

Unfortunately once again it seems that one of my Inmate Appeals wasn't returned on it's due date as yet. The Appeal that I filed regarding Staff Complaints. Log # C.S.Q-5-07-00209 had a due date of 2-27-2007. This Appeal was assigned to the AW3 as a Staff reviewer at the First level for response. It seems this is an ongoing problem at this Institution concerning Appeals not being returned on their (due dates). I would deeply appreciate my Appeal being returned with the First level reviewer's response.

Leonard Hasbin B-96040

4-H-17L

MAR 0 8 REC'D

3/8 Please See attached Sheets.

K Marshall

Attachment; A-5(10.)

San Quentin State Prison

03/08/2007

# CALIFORNIA DEPARTMENT OF CORRECTIONS
## Inmate / Parolee Appeals Tracking System - Level I & II

### Statistic Sheet

Log Number: CSQ-5-07-00209   Area Of Origin: H-UNIT   Last Name: HASKIN   First Name: LEONARD   CDC Number: B96040

Housing At Time Of Appeal:4H17
Current Housing: 4H17

Issue: STAFF COMPLAINTS   Group Appeal:
Issue Subcategory: Unprofssnl/Rude/Disrespectful

### Inmate Information

Appeal Abuse:   Appeal Abuse Until:   Appeal Flag:   Appeal Flag Until:
Special Needs:
Other Log Numbers:

### Appeal History

| Log Number | Issue | L1 Received | L1 Due | L1 Completed | L1 Disposition | L2 Received | L2 Due | L2 Completed | L2 Disposition |
|---|---|---|---|---|---|---|---|---|---|
| CSQ-5-07-00094 | PROPERTY | 01/09/2007 | 02/23/2007 | 01/22/2007 | WITHDRAWN | | | | |
| CSQ-5-05-00488 | MEDICAL | 03/11/2005 | 04/25/2005 | 04/06/2005 | GRANTED IN PART | | | | |
| CSQ-5-04-03246 | LIVING CONDITIONS | 12/28/2004 | 02/09/2005 | 02/07/2005 | GRANTED IN PART | 02/22/2005 | 03/22/2005 | 02/22/2005 | CANCELLED |
| CSQ-3-00-03599 | FUNDS | 10/03/2000 | 11/15/2000 | 10/31/2000 | CANCELLED | | | | |
| CSQ-3-00-02777 | FUNDS | 08/09/2000 | 09/21/2000 | 11/13/2000 | DENIED | 08/09/2000 | 01/22/2001 | 02/20/2001 | DENIED |

### Screen Outs

| Level | Received | Screened Out | Reason | Note |
|---|---|---|---|---|

Page: 1

Attachment, A-5(M)

San Quentin State Prison

03/08/2007

# CALIFORNIA DEPARTMENT OF CORRECTIONS
## Inmate / Parolee Appeals Tracking System - Level I & II

### Statistic Sheet

**Informal Level**
-- Assignments --

Received: | **Assigned** | **Assigned To** | **Replied**

Due: | **Completed:** | Disposition:

**Level I**
-- Assignments --

Received: 01/11/2007 | **Assigned** | **Assigned To** | **Replied**
01/11/2007 | HCM | 03/02/2007

Due: 02/27/2007 | **Completed:** 03/06/2007 | Disposition: WITHDRAWN

**Level II**
-- Assignments --

Received: | **Assigned** | **Assigned To** | **Replied**

Due: | **Completed:** | Disposition:

**Level III**

Received: | **Completed:** | Disposition:

Attachment, A-5 (12)

San Quentin State Prison

03/08/2007

## CALIFORNIA DEPARTMENT OF CORRECTIONS
### Inmate / Parolee Appeals Tracking System - Level I & II

**Statistic Sheet**

**Investigation Type:** Fact Finding

**Staff Involved**

| Last Name | First Name | Job Classification | Resolution |
|---|---|---|---|
| LEE | J. B. | Correctional Officer | NOT SUSTAINED |

**Modification Orders**

| Level | Modification Order Type | Assigned To | Sent | Due | Completed | Grant Reason |
|---|---|---|---|---|---|---|

**115 Information**

115 Log Number:                          Hearing Officer:                          Discovery:

**Administrative / Serious:**

**Reimbursement**

Cash Award:    Amount Awarded:    Reimbursement With Like Item(s):

Factor:    Inmate Signed Waiver:

Comment:

**Comment**

2 PART APPEAL ASSIGNED TO HCM AND AW 3 ON 1/17/06. APPEAL REASSIGNED TO AW 2 PER AW 3 ON 1/19/07.

Page:    3

3/4  Attachment; A-5 (13.)                         4-#-17L
Please See Attached 3-12-07
                H Marshall

In accordance to the Title 15 Rules
and Regulations Code, as per Section
3084.5, regarding (Levels of Appeal Review
and Disposition), Second level review shall
be conducted by the institution head or
regional parole administrator, or their
designee. Considering that my appeal
log # C.S.2.-5-07-00209 in accordance
with your Inmate/Parolee Appeals
Tracking System, was originally assigned
to the (H.C.M.) then Redirected to the
(A.W.3) at the First Level of Review,
then once again redirecting my appeal
at the Second Level of Review back to
the (H.C.M.) is totally inappropriate.
This misdirection of my appeal is
in complete violation of the Title
15's Section 3084.5 concerning Levels of
Appeal Review. Unfortunately, the (H.C.M)
does not meet the criteria as a high
enough level staff member to answer
my appeal at the Second Level, per
the Title 15 Rules and Regulations Code
Book. I would deeply appreciate my
appeal being reassigned to the
proper level reviewer.

Attachment, A-5 (14.)

# INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                          Date: March 14, 2007
Current Housing: 4H17

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-5-07-00209

ASSIGNED STAFF REVIEWER: HCM
APPEAL ISSUE: STAFF COMPLAINTS
DUE DATE: 04/06/2007

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for SECOND level response. If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for THIRD level review. Third level appeals are to be mailed directly to:

       Chief of Inmate Appeals
       Department of Corrections
       P. O. Box 942883
       Sacramento, CA 94283-0001

R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison.

3/14 Your appeal has been properly
routed and is not due until
4/6/07.
        K.Marshall

Attachment, A-5 (15.)

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                                     Date: January 17, 2007
Current Housing: 4H17

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER:  CSQ-5-07-00209

ASSIGNED STAFF REVIEWER:  AW 3
APPEAL ISSUE:  STAFF COMPLAINTS
DUE DATE:  02/27/2007

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for FIRST level response.  If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for SECOND level review.


R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

· Attachment, A-5 (16.)

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                           Date: March 12, 2007
Current Housing: 4H17

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-5-07-00209

ASSIGNED STAFF REVIEWER: HCM
APPEAL ISSUE: STAFF COMPLAINTS
DUE DATE: 04/06/2007

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for SECOND level response.  If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for THIRD level review.  Third level appeals are to be mailed directly to:

        Chief of Inmate Appeals
        Department of Corrections
        P. O. Box 942883
        Sacramento, CA  94283-0001


R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

Attachment; A-5(11)

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*April 30, 2007*

*HASKIN, B96040*
*4H16*

Log Number: CSQ-5-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have submitted an appeal that duplicates a previous appeal upon which a decision has been rendered or is pending (CCR 3084.3(c)(2)).*

*DULPICATE APPEAL OF LOG # 07-209 WAS ANSWERED DELAY WAS DUE TO BACK LOG.*

Appeals Coordinator
San Quentin State Prison

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

Attachment; A-5(18)

# INMATE/PAROLEE APPEAL FORM

CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. _____ | 1. _____ | _____ |
| 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME HASKIN | NUMBER B-96040 | ASSIGNMENT Med Unss | UNIT/ROOM NUMBER 4 H 17 L 16 |
|---|---|---|---|

A. Describe Problem: THE ATTACHED APPEAL ( COPY THEREOF ) WAS DUE TO BE ANSWERED BY APRIL 6, 2007. TO DATE APPELLANT HAS NOT BEEN PROVIDED AN ANSWER

If you need more space, attach one additional sheet.

B. Action Requested: REQUEST THAT THE ATTACHED APPEAL BE ANSWERED FORTHWITH

Inmate/Parolee Signature: *Leonard Haskin*    APR 2 3 REC'D    Date Submitted: 4-20-07

C. INFORMAL LEVEL (Date Received: 4/23/07 )

Staff Response: Staff has been notified about your overdue Appeal.

Staff Signature: *K Marshall*    Date Returned to Inmate: 4/23/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

APPELLANT SUBMITS THIS APPEAL TO THE FORMAL LEVEL TO ASCERTAIN THE REASONS FOR THE LATE APPEAL AND SEEKS INDENTIFICATION OF THE RESPONSIBLE PARTY.

Signature: *Leonard Haskin*    Date Submitted: 4-26-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

APR 2 7 REC'D

Attachment; A-5 (9.)

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. S.Q. | 1. 07-00209 | |
| | 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| HASKIN, L | B-96040 | Medically Unassigned | 4-H-17L |

A. Describe Problem: On Sunday evening of Dec. 24, 06 at approximately 1900 hrs. I began to have extensive vommiting and diarrhea every (30) minutes. At approximately 0001 hrs. I approached Officer Ferry at the podium and explained that I had been continuously vommiting and suffering from diarrhea since 1400 hrs., also that I had a known history of stomach trouble already; I need immediate medical attention; please do a (man-down). At that time the first-watch

If you need more space, attach one additional sheet.

B. Action Requested: That all staff members medical and custody who were involved in this fiasco be immediately suspended without pay pending investigation of this matter. That this very serious incident be immediately put under investigation.

Inmate/Parolee Signature: Leonard Haskin                Date Submitted: 1-1-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response _____

_____

_____

_____

_____

Staff Signature: _____  Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____                  Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed        CDC Appeal Number:
Board of Control form BC-1E Inmate Claim

Attachment; A-5 (20.)

Sergeant was called, in direct violation of Section (3354) regarding health care responsibilities and limitations of the Title 5 rules and regulations Code, the First-Watch Sergeant took it upon himself to act as a health care employee and deny me badly needed medical attention. Section (3354) explicitly explains that only health care consultants shall be permitted, within the scope of their lisencure, to diagnose illness or, prescribe medication and health care treatment for inmates." No other personnel may do so." Once again at approximately 0300 hrs. after still continuously suffering from extensive vommiting/diarrhea I approched the podium and told Officer Perry that my symftoms have become increasingly worse that I seriously need medical attention, also that I was now becoming critically dehydrated. Officer Perry once again contacted the First-Watch Sergeant and explained that inmate (Haskin) was getting seriously worse, unfortunately the Seargeant again violating Section (3354) took it upon himself to deny me badly needed medical attention. At any point of time during this fiasco if by chance an M.T.A. was contacted, then that person was seriously negligent in performing his/her job duties! At 0520 hrs. I approached Officer Perry again and said, "what do I have to do to get some damned medial attention? For God's sakes I feel like I'm literally dying." Finally he took the initiative to write me a pass directly to the TTA Clinic. At 0530 hrs. I barely made it to the Admin. Building and observed my third-watch dorm Officer Lee coming out of the M.S.F. Dorm and approach the Admin. Building, he stopped

Attachment; A-5(2k)

explained that I had been deathly ill all night long and was in serious need of medical attention. Officer Lee exclaimed, "We need to do a man-down; hold on for a second." Just as Officer Lee entered the building the morning nurse arrived. She told me to also hold on a moment as she entered the building. Unfortunately directly after she entered the building Officer Johnston approached me very arrogantly, "what the fuck do you think your doing out here?" the ranch is out here get the fuck back to your building. When I tried to explain he again said, "get the fuck back to your building now!" By that time I was so weak I barely made it back to building (4). While standing inside the door of my building at approximately 0555 hrs. I was lucky to observe 2nd-watch Sergeant Collier going through the the outside ped-gate, I immediately approached him and explained my plight. Sergeant Collier thankfully acted very professionally and escorted me directly to the admin. building told me to grab a chair, then sit directly outside the clinic area. Approximately 30 minutes later I was escorted by walking directly to the T.T.A. clinic. Thankfully to Sergeant Collier's professionalism I was finally out of serious medical danger. When the on duty nurses took my vital signs and discovered a heart rate of (145-150) they instinctively knew that I was very seriously dehydrated. They immediately contacted the on-call emergency doctor and he confirmed that I was dangerously dehydrated start pumping fluids into him (stat). Both on duty

Attachment A-5 (22)          3.

Thank God I was brought in there. Over approximately 7 hours it took a full 4 liter bags of sterile fluids to bring my heart rate even back to (100) a somewhat safer level. I was lastly given an I.V. injection of prochorperazine and three prochorperazine 10mg. tablets. As I got ready to return to my dorm I was told no solid feeds for at least 4 days, unfortunately this is where the first mistake was made. I wasn't issued any nlive nutrient drinks to sustain myself. The following day F Dec. 26, 06 I approached male nurse (Picket) and explained to him my situation, he became very unprofessional and stated thusly, "you got enough fluids yesterday I've nothing for you." I was very unprofessionally denied any way to sustain myself for over 4 days until the medical staff finally started handing out (enlive). I was never treated so disrespectfully my entire life until this fiasco. The only three people who showed professionalism and respect were, Sergeant Collier, and the two male nurses in the T.T.A Clinic.

Attachment, A-5 (23)

04/27/2007

San Quentin State Prison

## CALIFORNIA DEPARTMENT OF CORRECTIONS
## Inmate / Parolee Appeals Tracking System - Level I & II

### Statistic Sheet

Log Number: CSQ-5-07-00209    Area Of Origin: H-UNIT    Last Name: HASKIN    First Name: LEONARD    CDC Number: B96040

Housing At Time Of Appeal: 4H17
Current Housing: 4H17

Group Appeal:
Issue: STAFF COMPLAINTS    Issue Subcategory: Unprofssnl/Rude/Disrespectful

Appeal Abuse:                Appeal Abuse Until:    Appeal Flag:    Appeal Flag Until:
Special Needs:
Other Log Numbers:

**Inmate Information**

**Appeal History**

| Log Number | Issue | L1 Received | L1 Due | L1 Completed | L1 Disposition | L2 Received | L2 Due | L2 Completed | L2 Disposition |
|---|---|---|---|---|---|---|---|---|---|
| CSQ-5-07-01305 | CASE INFO./RECORDS | 03/29/2007 | 05/10/2007 | 04/17/2007 | DENIED | 04/23/2007 | 05/21/2007 | | |
| CSQ-5-07-00094 | PROPERTY | 01/09/2007 | 02/23/2007 | 01/22/2007 | WITHDRAWN | | | | |
| CSQ-5-05-00488 | MEDICAL | 03/11/2005 | 04/25/2005 | 04/06/2005 | GRANTED IN PART | | | | |
| CSQ-5-04-03246 | LIVING CONDITIONS | 12/28/2004 | 02/09/2005 | 02/07/2005 | GRANTED IN PART | 02/22/2005 | 03/22/2005 | 02/22/2005 | CANCELLED |
| CSQ-3-00-03599 | FUNDS | 10/03/2000 | 11/15/2000 | 10/31/2000 | CANCELLED | | | | |
| CSQ-3-00-02777 | FUNDS | 08/09/2000 | 09/21/2000 | 11/13/2000 | DENIED | 08/09/2000 | 01/22/2001 | 02/20/2001 | DENIED |

**Screen Outs**

| Level | Received | Screened Out | Reason | Note |
|---|---|---|---|---|

Attachment; A-5 (2A)

04/27/2007

San Quentin State Prison

**CALIFORNIA DEPARTMENT OF CORRECTIONS**
**Inmate / Parolee Appeals Tracking System - Level I & II**

**Statistic Sheet**

**Informal Level**
-- Assignments --

Received:                Due:              Assigned              Assigned To              Disposition:              Replied

**Level I**
-- Assignments --

Received: 01/11/2007     Due: 02/27/2007    Assigned           Assigned To              Disposition: WITHDRAWN     Replied
                                            01/11/2007         HCM                                                  03/02/2007
                                            Completed: 03/06/2007

**Level II**
-- Assignments --

Received: 03/09/2007     Due: 04/06/2007    Assigned           Assigned To              Disposition:              Replied
                                            03/09/2007         HCM
                                            Completed:

**Level III**

Completed:                                  Disposition:

Attachment; A-5 (25)

San Quentin State Prison

**CALIFORNIA DEPARTMENT OF CORRECTIONS**
**Inmate / Parolee Appeals Tracking System - Level I & II**

04/27/2007

**Statistic Sheet**

Investigation Type: Fact Finding

**Staff Involved**

| Last Name | First Name | Job Classification | Resolution |
|-----------|-----------|--------------------|------------|
| LEE | J. B. | Correctional Officer | OTHER |

**Modification Orders**

| Level | Modification Order Type | Assigned To | Sent | Due | Completed | Grant Reason |
|-------|------------------------|-------------|------|-----|-----------|--------------|

Administrative / Serious:

115 Log Number:

**115 Information**

Hearing Officer:                     Discovery:

**Reimbursement**

Cash Award:          Amount Awarded:          Reimbursement With Like Item(s):

Factor:                                            Inmate Signed Waiver:

Comment:

**Comment**

Page:   3

Attachment; A-5 (26)

# INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                          Date: March 11, 2005
Current Housing: N-3-00000C C  067U

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-5-05-00488

ASSIGNED STAFF REVIEWER: HCM
APPEAL ISSUE: MEDICAL
DUE DATE: 04/25/2005

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for FIRST level response.  If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for SECOND level review.

R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

State of California          Attachment; A-5 (27.)                    Department of Corrections

# INMATE/PAROLEE APPEALS SCREENING FORM

NAME: _Haskin._     NUMBER _B96040_     SQP LOG No: _____

(OTHER LOG NO)_____     ISSUE:_____     AREA OF ORIGIN:_____

HOUSING UNIT _4 - H 17_          NOTE_____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

____1. The action or decision being appealed is not within the jurisdiction of the Department.
      ____a. **BPT Issue, file BPT 1040 form & submit to C&PR**          ____b. Other, see comments

____2. You have submitted a duplicate appeal on the same issue.   Check one:
      ____Your first appeal was screened out on _____ for _____
      ____Your appeal is currently under review at the_____ level.
      ____Your first appeal has been completed at the _____ level.

____3. You are appealing an action not yet taken.

____4. You may not submit an appeal on behalf of another inmate.

____5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.

| | |
|---|---|
| ____CDC-115 Hearing Officer's or Disciplinary Committee Results | ____Supplemental Reports to CDC-115. |
| ____CDC-115A with I.E./D.A. info.     ____CDC-128B1 Hearing Notif. | ____CDC-839/840 Class/Reclass Score Sheet |
| ____CDC-128G ICC/UCC Clas.Com.     ____CDC-128G Init. Clas. Com. | ____CDC-128G CSR Endorsement Chrono |
| ____Lab Results Sheet     ____CDC-114D Lock Up Order | ____CDC-1030 Confidential Disclosure |
| ____CDC-7219 Medical Report     ____Legal Status Summary | ____CDC-128C Medical Chrono |
| ____Board of Control Claim Form (attached) | ____Property Inventory Slip |
| ____Receipts:____Qtr.Pkg. Inventory Slip     ____CDC-143 Property Transfer Slip     ____Cell Search Slip | |
| ____You have failed to complete Section_____ | ____Sign & Date Section_____ |
| ____Other:_____ | |

____6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

____7. This issue has been appealed under the assigned SQP Appeal Log No._____. Per DOM section 54100.10.1,
      a copy of the reviewer's response:          ____Is attached          ____Will be forwarded to you upon completion

____8. Abuse of the Appeal Procedure. See Comments.

Comments: _You requested your medical chart be found ; be seen by a doctor. You were seen. Now you are adding an issue and changing the appeal which you cannot do. Appeal cancelled. It is your responsibility to get the paperwork to your work supervision. NOT medical !_

_R. Chandler-Dacanay_
**R. CHANDLER-DACANAY**
CC-II, Appeals Coordinator

_W Jepperson_
**W. JEPPESON**
CC-II, Appeals Coordinator          Date_ 1-4-5_

This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to the Appeals Coordinator with the necessary information.

**PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.**

Attachment; A-5 (28)

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region        Log No.                    Category

1. _____        1. _____          7

2. _____        2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Haskin Leonard | B-91040 | PIA Chair Upholsteren | 4-H-171 |

A. Describe Problem: Approximately 3 months ago I was seen by Dr. Wilson with the complaint of severe pain within my neck and left shoulder. At that time he ordered an xray exam to be conducted of both areas. On 10-27-04 I was once again seen by Dr. Wilson for a consultation regarding my xray results. I was informed that the xrays of my neck showed some serious problems and he ordered several tests to be conducted along with a tele-Ortho conference. Since my

If you need more space, attach one additional sheet.

B. Action Requested: That my medical chart be immediately located! That the necessary paper work be issued to by by boss excusing me for the days I've missed work! That I receive proper medical treatment immediately so I may return to work!

Inmate/Parolee Signature: Leonard Haskin                    Date Submitted: 12-17-04

C. INFORMAL LEVEL (Date Received: 12/29/04)

Staff Response: I found your chart it is in medical records
Thank you very much.

Staff Signature: Lillian Gimenez MA                    Date Returned to Inmate: 12/29/04

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Since my chart was located on Wed. 12-29-04 and one of the major reasons for finding my chart was to be seen immediately by Dr. Wilson, and considering that todays date is Jan. 3, 2005, then one of the major actions

Signature: Leonard Haskin                    Date Submitted: 1-3-05

Note: Property/Funds appeals must be accompanied by a completed        CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

JAN 0 4 RECD

Attachment; A-5 (29)

initial appointment on 10-27-04, I have run into serious trouble in performing my job assignment due to severe pain. On 11-3-04 I even returned to H-Unit at 12:15 because of severe pain. On 11-29-04 I was called back in to medical by Dr. Wilson for a 30 day review. At this time I was going to discuss the problems I was having regarding pain and ask to be given a steroid shot so I could properly perform my job assignment. Unfortunately since Dr. Wilson left early that morning, I had to be seen by another Dr. who was unfamiliar with my case, and was basically unable to resolve any issues. On 12-2-04 I was seen by the Tele-Ortho physician and explained to him of the problems I was having and that I had been unable to report to my job assignment for approximately a little over a week already. At that time the Doctor was going to request that I start physical therapy and I was to be placed on temporary medical hold until I was able to return to work. Also paper work was to be sent to my Supervisor Jeff Scoozy with a full explanation, I don't want to loose my job assignment! On 12-3-04, I asked M.T.A Walker if my paper work was sent to my boss, "no, but I'll ask for your chart so it can. On 12-6-04 I asked M.T.A Morrow if my paper work had been sent to my boss, "no, but I will ask for your chart once again." Every day to date (12-17-04) I have been asking to be seen by Dr. Wilson and my response is no chart, you can not be seen without a chart. Because of this charade, I am about to loose my job.

Attachment, A-5(30)

I am also being denied my rights to proper medical treatment per Title 15 Section 3350.

State of California   *Attachment; A-6(i)*                    Department of Corrections

# INMATE/PAROLEE APPEALS SCREENING FORM

NAME: *Haskin*    NUMBER *B 96040*  SQP LOG No:_____

(OTHER LOG NO)_____    ISSUE:_____    AREA OF ORIGIN:_____

HOUSING UNIT ___*4417*___              NOTE_____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

_____ 1. The action or decision being appealed is not within the jurisdiction of the Department
          _____a. **BPT Issue**, file BPT 1040 form & submit to C&PR              _____b. Other, see comments

_____ 2. You have submitted a duplicate appeal on the same issue.  Check one:
          _____ Your first appeal was screened out on _____for _____
          _____ Your appeal is currently under review at the_____level.
          _____ Your first appeal has been completed at the _____ _____level.

_____ 3. You are appealing an action not yet taken.

_____ 4. You may not submit an appeal on behalf of another inmate.

_____ 5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.

| | |
|---|---|
| _____CDC-115 Hearing Officer's or Disciplinary Committee Results | _____Supplemental Reports to CDC-115. |
| _____CDC-115A with I.E./D.A. info.   _____CDC-128B1 Hearing Notif. | _____CDC-839/840 Class/Reclass Score Sheet |
| _____CDC-128G ICC/UCC Clas.Com.   _____CDC-128G Init. Clas. Com. | _____CDC-128G CSR Endorsement Chrono |
| _____Lab Results Sheet   _____CDC-114D Lock Up Order | _____CDC-1030 Confidential Disclosure |
| _____CDC-7219 Medical Report   _____Legal Status Summary | _____CDC-128C Medical Chrono |
| _____Board of Control Claim Form (attached) | _____Property Inventory Slip |
| _____Receipts:_____Qtr.Pkg. Inventory Slip   _____CDC-143 Property Transfer Slip | _____Cell Search Slip |
| _____You have failed to complete Section_____ | _____Sign & Date Section_____ |
| _____Other:_____ | |

_____ 6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

_____ 7. This issue has been appealed under the assigned SQP Appeal Log No._____. Per DOM section 54100.10.1,
          a copy of the reviewer's response:          _____Is attached          _____Will be forwarded to you upon completion

_____ 8. Abuse of the Appeal Procedure.  See Comments.

Comments: *Your appeal is not appropriate for formal level processing. You must provide proof of having received an informal level response*

*prior to submitting this appeal to the Appeals Office, for further processing. Reference CCR section 3084.2(c) which states: Place of Filing.*

*At the formal levels, the appeal shall be forwarded to the appropriate office or appeals coordinator within the time limits prescribed in*

*section 3084.6.  NOTE: as of 6/23/97, Appeals Office will not assign log numbers to informal appeals. Appeals will receive a log number*

*upon reaching the 1st formal level if necessary. Please take heed of this notice when preparing future appeals.* Send to *4*

*Medical Dept.*

R. CHANDLER-DACANAY               W. JEPPESON
CC-II, Appeals Coordinator          CC-II, Appeals Coordinator          Date *12-31-4*

This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this
form to the Appeals Coordinator with the necessary information.

### PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

Attachment, A-6(2)

*Please process under 3084.7 due to medical reasons, the continued lack of treatment.*

STATE OF CALIFORNIA

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location:  Institution/Parole Region      Log No.                    Category  8

1. _____    1. _____
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Washin, Leonard | B-96040 | PIA Chair Upholsterer | 9-A-171 |

A. Describe Problem: On 12-2-04 I was seen by Dr. Jeffrey L. Tanja for a Tele-Ortho consultation regarding x-ray results of my left shoulder and Cervical Spine. I informed him that due to severe chronic pain in my neck and left shoulder I had already missed approximately a little over a weeks worth of work and also my boss Jeff Scroggy needed paper work excusing me from work until I received some means of treatment. I was informed by Dr. Tanja that he would order physical Therapy

If you need more space, attach one additional sheet.

B. Action Requested: That this matter be immediately investigated by proper assigned staff. That all parties involved receive disciplinary action of the highest degree. That my initial Appeal be immediately granted. That I be compensated for all loss of pay!

Inmate/Parolee Signature: *Leonard Washin*                Date Submitted: 12-29-04

JAN 04 REC'D   DEC 31 REC'D

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____
_____
_____
_____
_____

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____
_____
_____
_____

Signature: _____        Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

Attachment, A-6(3)

treatment for my shoulder and to be placed on temporary medical leave from work. The Tele-Ortho Nurse took my boss's name and extension number from me and said he would receive the necessary paper work. On 12-3-04 after finding out that my boss didn't receive paper work, I went to M.T.A. Walker who said she was ask for my chart and take care of the problem. On 12-6-04 again finding that my boss hadn't received any paper work as yet, I went and asked M.T.A. Morrow to check into the matter. She, once again said she would ask for my chart and resolve the problem. On 12-7-04 when enquiring again with M.T.A. Morrow, she exclaimed that my chart was unavailable. After receiving the same answer for approximately (2) two weeks on a daily basis, I consulted with Lieutenant Eagan regarding the problems I was having. He said I should file an immediate Inmate Appeal to cover my tracks. On 12-17-04 I delivered my appeal to M.T.A. Morrow who was to hand deliver it to Chief Medical Officer Dr. Calvo that day. On 12-20-04, I asked M.T.A. Morrow if she delivered my Appeal, she informed me that it was delivered to the Appeal's Office. On a daily basis since 12-17-04 I have been asking if my Medical Chart has been located so I can receive medical treatment. I have been treated very disrespectfully by M.T.A. Morrow and Walker telling me there was nothing they would do until they received an answer on my appeal. On 12-29-04 since (12) twelve days had elapsed with no response, I asked M.T.A. Morrow once again what was happening. I received the same arrogant response, there is nothing

Attachment; A-6(A)

I will do until I receive an answer on your Appeal." The continued responses finally made me suspicious, that is when on 12-29-07 I brought the matter to the attention of Officer Brodi who contacted your Office.

The deliberate misdirection of an Appeal is serious business; considering the consequences that it can cause. The Inmate Appeal is a legal process and should be treated as such by all individuals who handle them. The deliberate misdirection or destroying of an Appeal should deem serious disciplinary actions to all parties involved.

One thing that I forgot to mention is that a copy of my Appeal was sent by myself directly to Dr. Calvo.

Attachment, A- (65)

---

**OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**RITY INMATE DUCAT** — CDC 129 (7/88)

| | | |
|---|---|---|
| S NAME: | CDC#: B96040 | HOUSING #: 04 H 017L |
| N | | |
| BY: | DATE: | PASS FROM: |
| SSEY. LT. | 5/26/2005 | H-UNIT |
| | DATE: | TIME: |
| T | 5/27/2005 | 1000 HRS |
| N: | | |
| CALL | | |
| ORIZED BY: | REQUESTED BY: MD | |
| TO: | TIME: | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS** — CDC 129 (7/88)

| | | |
|---|---|---|
| INMATE'S NAME: HASKIN | CDC #: B96040 | HOUSING #: 4H17 |
| ISSUED BY: | DATE: 2-7-05 | PASS FROM: |
| PASS TO: H-Unit Clinic | DATE: 2-7-05 | TIME: 0830 |
| REASON: SICK CALL | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: 0930 | RECORDED BY: |

---

**OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**IORITY INMATE DUCAT** — CDC 129 (7/88)

| | | |
|---|---|---|
| ATES NAME: SKIN | CDC#: B96040 | HOUSING #: 04 H 017L |
| ED BY: MASSEY, LT. | DATE: 6/17/2005 | PASS FROM: H-UNIT |
| S TO: UNIT | DATE: 6/20/2005 | TIME: 0830 HRS |
| SON: CK CALL | | |
| THORIZED BY: | REQUESTED BY: MD | |
| ART TO: | TIME: | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS** — CDC 129 (7/88)

| | | |
|---|---|---|
| INMATE'S NAME: HASKIN, L. | CDC #: B96040 | HOUSING #: 4H17L |
| ISSUED BY: MTA MCCLOSKEY | DATE: 1/9/05 | PASS FROM: DORM 4 |
| PASS TO: UCC TRIAGE | DATE: 1/10/05 | TIME: 0930 |
| REASON: Must be seen c̄ chart | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

---

**ATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**IORITY INMATE DUCAT** — CDC 129 (7/88)

| | | |
|---|---|---|
| ATES NAME: ASKIN | CDC#: B96040 | HOUSING #: 04 H 017L |
| ED BY: MASSEY, LT. | DATE: 6/21/2005 | PASS FROM: H-UNIT |
| S TO: UNIT | DATE: 6/22/2005 | TIME: 0815 HRS |
| SON: CK CALL | | |
| THORIZED BY: | REQUESTED BY: MD | |
| ART TO: | TIME: | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS** — CDC 129 (7/88)

| | | |
|---|---|---|
| INMATE'S NAME: HASKIN | CDC #: B96040 | HOUSING #: 4H17L |
| ISSUED BY: ARCHAMBEAU | DATE: 2-25-05 | PASS FROM: H-UNIT |
| PASS TO: O.I.C LAB | DATE: 2-25-05 | TIME: 11:20 |
| REASON: LAB TEST | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS** — CDC 129 (7/88)     B96040

| | | |
|---|---|---|
| INMATE'S NAME: HASKIN | CDC #: 6-21-05 | HOUSING #: 4H17L |
| ISSUED BY: ARCHAMBEAU | DATE: 6-21-05 | PASS FROM: H-UNIT |
| PASS TO: H-UNIT MEDICAL | DATE: 6-21-05 | TIME: 0900 |
| REASON: STAPH INFECTION ON L HAND | | |
| ARRIVAL TIME: | RECORDED BY: | |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**PRIORITY INMATE DUCAT** — CDC 129 (7/88)

| | | |
|---|---|---|
| INMATE'S NAME: HASKIN | CDC#: B96040 | HOUSING #: 04H017L |
| ISSUED BY: P. MASSEY, LT. | DATE: 4/21/2005 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY | DATE: 4/22/2005 | TIME: 0900 HRS |
| REASON: UROLOGY | | |
| AUTHORIZED BY: | | REQUESTED BY: GERSHBEIN |

Attachment A-7.

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **PRIORITY INMATE DUCAT** | CDC 129 |

| INMATES NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 9/13/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H UNIT | 9/14/2005 | 0900 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MD | |
| DEPART TO: | TIME: | RECORDED BY: |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **INMATE PASS** | CDC 129 (7/88) |

| INMATE'S NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| Haskin | B96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| J. Snowey | 7-5-05 | PIA |
| PASS TO: | DATE: | TIME: |
| H-Unit | 7-5-05 | 07:20 |
| REASON: | | |
| ARRIVAL TIME: | | RECORDED BY: |
| DEPART TO: | TIME: | RECORDED BY: |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **PRIORITY INMATE DUCAT** | CDC 129 (7/88) |

| INMATES NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 9/29/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 9/30/2005 | 1030 HRS |
| REASON: | | |
| NEUROLOGY | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MENDIUS | |
| DEPART TO: | TIME: 1100 | RECORDED BY: Bo |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **PRIORITY INMATE DUCAT** | CDC 129 (7/88) |

| INMATES NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT | 7/7/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 7/8/2005 | 0900 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MD | |
| DEPART TO: | TIME: | RECORDED BY: |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **INMATE PASS** | CDC 129 (7/88) |

| INMATE'S NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B-96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| ARCHAMBEAU | 12-23-05 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| T.T.A | 12-23-05 | 13:00 |
| REASON: | SEE LT BARKER 1/3/06 | |
| ARRIVAL TIME: | | RECORDED BY: |
| DEPART TO: | TIME: | RECORDED BY: |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **PRIORITY INMATE DUCAT** | CDC 129 (7/88) |

| INMATES NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT | 7/8/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 7/11/2005 | 0900 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MD | |
| DEPART TO: | TIME: | RECORDED BY: |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **INMATE PASS** | CDC 129 (7/88) |

| INMATE'S NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| ARCHAMBEAU | 12-23-05 | 4H-17L |
| PASS TO: | DATE: | TIME: |
| H-UNIT MEDICAL | 12-23-05 | 11:00 |
| REASON: | SEE MTA FORREST / MTA MAC approval | |
| ARRIVAL TIME: | | RECORDED BY: |
| DEPART TO: | TIME: | RECORDED BY: |

| STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS |
| --- | --- |
| **PRIORITY INMATE DUCAT** | CDC 129 (7/88) |

| INMATES NAME | CDC #: | HOUSING #: |
| --- | --- | --- |
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 9/12/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H UNIT | 9/13/2005 | 0845 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MD | |
| DEPART TO: | TIME: | RECORDED BY: |

JUN 15 2005 12:40 FR RA  MED IMAG  B05 541 4623 TO 45  :1          P.01/03

Attachment: A-8(i)

# RAYTEL
## MEDICAL IMAGING
An SHL Telemedicine Company

*This Center is Accredited by the American College of Radiology (ACR) for MRI*

### SAN FRANCISCO
*in association with SFRMI, RC*

4H17

## MAGNETIC RESONANCE IMAGING – CERVICAL SPINE

FILE

**PATIENT:**   HASKIN, LEONARD   BS6040
**EXAM DATE:**   6/15/2005   **DOB:** 11/14/1951   **ID#:** 59902
**REFERRED BY:**   E. Khoo, MD
Neumiller Infirmary-San Quentin Prison
San Quentin, CA  94964
Phone: 454-1460 Fax: 455-5011

per, mp
6/17/05

---

**IMPRESSION:**
1. Small central protrusion at C2-3 without significant effect on neural elements.
2. Small to moderate central protrusion at C3-4, with asymmetric degenerative joint disease and bilateral neural foraminal stenosis.
3. Broad based bulge and uncinate greater than facet hypertrophic changes at C4-5, with mild central stenosis and marked bilateral neural foraminal stenosis.
4. Broad based bulge and uncinate greater than facet degenerative changes at C5-6, with mild central stenosis and moderate bilateral neural foraminal stenosis.
5. Broad based disc/osteophyte complex and uncinate greater than facet degenerative changes at C6-7, with mild right and mild to moderate left neural foraminal stenosis.

---

**CLINICAL INFORMATION:** Bilateral upper extremity radiculopathy.

**COMPARISON:** None available.

**TECHNIQUE:** Sagittal spin echo T1 and fast spin echo T2. Axial fast spin echo T2 and fast gradient echo T1 weighted.

**EXAMINATION FINDINGS:** Vertebral body heights, alignment, lordosis and marrow signal intensity are normal.

Visualized posterior fossa elements are normal in structure and signal intensity. No tonsillar herniation, intradural soft tissue mass, or epidural fluid collection is present. Paravertebral soft tissues are unremarkable.

CONTINUED

---

*Specializing in Musculoskeletal, Neurological and Body Imaging*
3440 California Street, San Francisco, CA 94118-1837 ◆ Phone (415) 922-6767 ◆ Fax (415) 563-0468 ◆ www.raytel.com

JUN 15 2005 12:41 FR R:     _ MED IMAG     805 541 4623 TO 45   11        P.02/03

Attachment; A-8(2)

# RAYTEL
MEDICAL IMAGING

An SBL Telemedicine Company

SAN FRANCISCO

*in association with SFRMI, P.C.*

*This Center is Accredited by the American
College of Radiology (ACR) for MRI*

RE: HASKIN, LEONARD
MRI CERVICAL SPINE
6/15/2005
Page 2

## Findings at Specific Levels:

**C2-C3:**  Small annular tear and protrusion, without stenosis.

**C3-C4:**  Small to moderate central protrusion, which causes moderate effacement of the ventral CSF space, and abuts the ventral surface of the spinal cord without indenting it.  Moderate bilateral facet and mild bilateral uncinate hypertrophic changes are seen.  There is moderate left and mild right neural foraminal stenosis at this level.

**C4-C5:**  Moderate disc desiccation with mild to moderate broad based bulge, mild bilateral facet hypertrophic changes, and moderate to marked bilateral uncinate hypertrophic changes.  There is moderate effacement of the ventral CSF space, without flattening of the spinal cord.  Moderate to marked bilateral neural foraminal stenosis is seen at this level.

**C5-C6:**  Moderate to marked disc desiccation with moderate broad based bulge, moderate bilateral facet hypertrophic changes, and moderate to marked bilateral uncinate hypertrophic changes.  There is moderate effacement of the ventral CSF space, without flattening of the spinal cord.  Moderate bilateral neural foraminal stenosis is seen.

**C6-C7:**  Moderate disc desiccation with marked loss of disc height and moderate anterior disc/osteophyte complex. Mild to moderate posterior disc/osteophyte complex is seen, with mild bilateral facet and moderate bilateral uncinate hypertrophic changes.  There is mild effacement of the ventral CSF space, without flattening of the spinal cord.  Mild right and mild to moderate left neural foraminal stenosis is seen at this level.

CONTINUED

---

*Specializing in Musculoskeletal, Neurological and Body Imaging*

3440 California Street, San Francisco, CA 94118-1837  ◆  Phone (415) 922-6767  ◆  Fax (415) 563-0468  ◆  www.raytel.com

JUN 15 2005 12:41 FR R/  L MED IMAG    805 541 4623 TO 45    1    P.03/03

Attachment; A-8(3)

# RAYTEL
## MEDICAL IMAGING

An SHL Telemedicine Company

### SAN FRANCISCO
*in association with SFRML P.C.*

*This Center is Accredited by the American
College of Radiology (ACR) for MRI*

RE: HASKIN, LEONARD
MRI CERVICAL SPINE
6/15/2005
Page 3

**C7-T1:** Mild disc desiccation, without bulge or stenosis.

Thank you for your referral.

Scott A. Werden, MD
SAW/ams
DT: 6/15/2005

Attachment A-9.

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| MASSEY, LT. | 7/4/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 7/5/2006 | 0845 HRS |
| REASON: | | |
| PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: 1015 | RECORDED BY: BU |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 3/16/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H UNIT | 3/17/2006 | 1300 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: DR Line | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 8/13/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: 0900 |
| INFIRMARY | 8/14/2006 | 1300 HRS |
| REASON: | | PER PHYSICAL THERAPY I/M Haskin CHANGE TO 0900 |
| PHYSICAL THERAPY | | |
| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST | |
| DEPART TO: | TIME: 9:38 | RECORDED BY: |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 5/30/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H UNIT | 5/31/2006 | 1045 HRS |
| REASON: | | |
| H UNIT CLINIC | | |
| AUTHORIZED BY: | REQUESTED BY: DR Line | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 8/15/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 8/16/2006 | 0900 HRS |
| REASON: | | |
| PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: 0900 | RECORDED BY: BU |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| MASSEY, LT. | 6/27/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 6/28/2006 | 0945 HRS |
| REASON: | | |
| PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 8/29/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 8/30/2006 | 0830 HRS |
| REASON: | | |
| PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: 0810 | RECORDED BY: BU |

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)
PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 7/13/2006 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 7/14/2006 | 0915 HRS |
| REASON: | | |
| UROLOGY | | |
| AUTHORIZED BY: | REQUESTED BY: GUILLORY | |
| DEPART TO: | TIME: 1000 | RECORDED BY: BU |



Attachment; A-10(i)

DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 12/16/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 12/17/2007 | 1200 HRS |
| REASON: | | |
| NEUROSURGERY | | |
| AUTHORIZED BY | REQUESTED BY: | |
| | M.D. | |
| DEPART TO: | TIME: | RECORDED BY: |

Attachment; A -10(2)

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/14/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/15/2006 | 1000 HRS |

REASON:
PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |

| DEPART TO: | TIME: 9:27 | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/5/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/6/2006 | 0900 HRS |

REASON:
PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |

| DEPART TO: | TIME: 9:52 | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 11/16/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 11/17/2006 | 0800 HRS |

REASON:
PROSTHETIC CLINIC

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | M.D. |

| DEPART TO: H&E | TIME: 815 | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/7/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/8/2006 | 0900 HRS |

REASON:
PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/12/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/13/2006 | 0815 HRS |

REASON:
PODIATRY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | GRIFFITH |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| T.W. ROSSETTI, LT. | 3/12/2007 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 3/13/2007 | 0900 HRS |

REASON:
PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/12/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/13/2006 | 1000 HRS |

REASON:
PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |

| DEPART TO: | TIME: 9:00 | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| T.W. ROSSETTI, LT. | 3/12/2007 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 3/13/2007 | 0900 HRS |

REASON:
PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |

| DEPART TO: | TIME: 9:53 | RECORDED BY: |
|---|---|---|

Attachment, A-11

---

**Form 1:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 3/26/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 3/27/2007 | 1000 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |
| DEPART TO: | TIME: 10:30 | RECORDED BY: A.Hump.T. |

---

**Form 2:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| T.W. ROSSETTI, LT. | 3/14/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 3/15/2007 | 0900 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |
| DEPART TO: | TIME: 9:10 | RECORDED BY: A.Hump.T |

---

**Form 3:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 3/28/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 3/29/2007 | 1200 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |
| DEPART TO: | TIME: 12:45 | RECORDED BY: A.Hump T |

---

**Form 4:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 3/19/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 3/20/2007 | 0800 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |
| DEPART TO: | TIME: 8:36 | RECORDED BY: A.Hump.T |

---

**Form 5:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 4/2/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 4/3/2007 | 1100 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |
| DEPART TO: | TIME: 11:30 | RECORDED BY: A.Hump T |

---

**Form 6:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 3/29/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 3/30/2007 | 0930 HRS |

REASON: CLINIC

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | DR Line |
| DEPART TO: | TIME: | RECORDED BY: |

---

**Form 7:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 4/4/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 4/5/2007 | 1200 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THERAPIST |
| DEPART TO: | TIME: 12:28 | RECORDED BY: A.Honojuo.T |

---

**Form 8:**

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT | CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 3/21/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 3/22/2007 | 0900 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | PHYSICAL THER... |

Attachment; A-12(i)

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date    :   June 1, 2006

To      :   Jonathan L. Wolff
            Supervising Deputy Attorney General
            State of California Department of Justice

Subject:   **PRISON LAW OFFICE REQUESTS FOR REVIEW OF *PLATA* INMATE CONCERNS
           RELATING TO INMATE LEONARD HASKIN, B-96040**

Pursuant to the Stipulation For Injunctive Relief agreed to in re *Plata v. Schwarzenegger*, the
Health Care Manager at San Quentin State Prison (SQ) has provided the following
information in response to the questions asked by Alison Hardy of the Prison Law Office.

1.  Is Mr. Haskin currently prescribed Flomax?  If so, is it in his possession?  Please
    explain.
    *Dr. Williams personally visited with Mr. Haskin on May 25, 2006.    On
    April 25, 2006, Mr. Haskin received 30 Flomax with a renewal on May 25, 2006.*

2.  Please explain the delay in Mr. Haskin receiving his prostate medication.
    *A review of Mr. Haskin's UHR reveals that a physician did order Flomax through
    April 18, 2006.  His order was renewed on April 25, 2006.*

3.  Is Mr Haskin currently having trouble urinating?
    *Mr. Haskin states he does experience occasional difficulty urinating in the evening.*

4.  What is Mr. Haskin's current treatment plan?
    *A request for urology consult was submitted on May 25, 2006, to explore therapeutic
    options (medically or surgically).*

Thank you for your assistance in this matter.   Please do not hesitate to contact me at
(916) 327-1205, if you have any questions.

VICKI O'SHAUGHNESSY
Staff Services Manager II
Clinical Operations Support Section
Division of Correctional Health Care Services

cc:  Jessica Devencenzi, Staff Counsel, Legal Affairs Division (By Electronic Mail)
     Alison Hardy, Prison Law Office (By Electronic Mail)
     Karen Saylor, M.D., Health Care Manager (A), SQ
BK  Medical Appeals Analyst, SQ

Attachment; A-12(2)



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Rachel Farbiarz
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

12/7/2006

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin:

I write in response to our conversation on 11/30/06. In the conversation, you stated that you had an MRI done over a year ago, and that you were referred to a neurosurgeon, who said that he wanted an up-to-date MRI before performing surgery. You express your concern that it would take weeks or months to have this MRI performed.

I am sorry to hear about this situation. After reviewing the documents we have on file, we will unfortunately need for you to exhaust your administrative remedies on this issue before we can advocate on your behalf.

Until I hear from you again, I wish you the best.

Sincerely,

Sam Weiner
Litigation Assistant under Alison Hardy

Enclosures: None

Board of Directors

· Attachment; A-12(3)



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Keith Wattley

7/18/2006

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin,

As you know, we wrote to the Attorney General on 5/9/2006 under procedures set forth in the *Plata* Stipulation to request further information about your Flomax. I spoke with Dr. Saylor about your concern at a telephone conference on 7/14/2006. Please see the enclosed memo for further information that was provided to us.

Dr. Saylor said that you were seen on 7/14/06 by the urologist. I also spoke to you on 7/17/2006 and you confirmed this statement, as well as informing me that you are still taking Flomax.

During our phone conversation, you also informed me that you have been waiting over three months for results from an upper-GI. I understand that you are very frustrated because you have had to wait so long for these results, and it is inhibiting you from seeking further treatment from specialists. Unfortunately, our office is unable to assist you with this concern at this time. You must attempt to exhaust your administrative remedies before we can determine whether we can assist you.

If you have specific information or documents showing that the information told to us by prison officials is not correct, please contact us. Unless there is such information, we cannot take further action regarding your particular medical care concern, and we may not be able to take further action in any event, depending on the nature of your medical concern. We advise you to continue using the "sick call" process to bring your concerns to the attention of medical staff. If your concern is not resolved by medical staff, you should file and pursue a 602 administrative appeal unless you have already received a Director's Level response to an appeal. You can send this office any newly exhausted medical appeal (602 with Director's Level response).

I wish you the best.

Sincerely,

Nina Frank
Litigation Assistant under Alison Hardy

Enclosures: CDC faxed Memo; HB ch. 8; SASE

Board of Directors

*Attachment; A-12 (4)*



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Keith Wattley

6/12/2006

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin,

   As you know, we wrote to the Attorney General on 5/9/2006 under procedures set forth in the *Plata* Stipulation to request further information about your Flomax. I spoke with Dr. Williams about your concern at a telephone conference on 6/9/2006. Please see the enclosed memo for further information that was provided to us.

   Dr. Williams said that you now have your Flomax in your possession. He told us that the delay in receiving this medication was due to the prescribing doctor not drafting a follow-up order. He also informed us that when he spoke with you about a week ago, you told him that you are only having trouble urinating at certain times of the day. He told us that he suggested that you take your medications later in the morning to alleviate these symptoms. Dr. Williams also informed us that he submitted a request for you to see the urologist. During our next call, we plan to ask about the scheduling of this appointment.

   Since there are issues that are still unresolved, I intend to discuss your case with the Health Care Manager at SQ again during our next scheduled call on 7/14/06. I will contact you again once I receive further information. I would appreciate it if you would keep me updated regarding any treatment or pending treatment you receive. I am enclosing a postage-prepaid envelope for your convenience.

Sincerely,

Nina Frank
Litigation Assistant under Alison Hardy

Enclosures:  CDC faxed Memo; SASE

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President

Attachment; A-13(i)   CALIFORNIA MEDICAL FACILITY
RADIOLOGY REPORT

**NAME:** HASKIN, L.      **NO:** B-96040  **HSG:** X-102      **AGE:** 35

**TYPE OF X-RAY:** LUMBOSACRAL SPINE           **ORDERING M.D.:** DASSAH

**DATE OF X-RAY:** 7/10/87           **DATE OF REPORT:** 7/10/87

LUMBOSACRAL SPINE:

Five views of the lumbar spine show mild diffuse hypertrophic changes involving
the bodies and to a lesser degree the facets.  Loss of disc space height is
noted especially at L4-5.  There is partial sacralization of the L5, with
diminuative 12th ribs.

JB:pc

J. BRONK, M.D.
RADIOLOGSIT

GALIF. MED. FACILITY

JUL 15  4 51 PM '87

RECEIVED

---

SALINAS VALLEY RADIOLOGISTS, INC.
A MEDICAL GROUP
CLEAR MEDICINE, ULTRASOUND AND COMPUT... ...ED TOMOGRA
515 EAST ROMIE LANE
SALINAS, CALIFORNIA 93901

RADIOLOGY

Richard C. Hader, M.D.
Harold E. Rumbal, M.D.
James A. Kowalski, M.D.
Richard I. Matteson, M.D.
Donald A. Catalano, M.D.

PATIENT:   HASKINS, LEONARD  B-96040  LB-140 AGE:

REFER PHYSICIAN:   DUFFIELD                  DATE: 8-

IVP:  Preliminary film of the abdomen reveals several phleb
in the pelvis.  There is no evidence for organ enlargements o
soft tissue masses.

Following the intravenous infusion of contrast there is pro
and equal visualization of the kidneys.  The right kidney mea
12 cm in length, the left kidney measures 12 cm also.  Both l
have a normal contour.  The calices, pelves and ureters are
seen and have a normal appearance.

The urinary bladder is small, however, it empties nicely on
final film.

IMPRESSION:

Essentially normal IVP as noted abo

JAMES A. KOWALSKI, M.D.

JAK/v1
8-23-85

Attachment, A-1B(2)

# HIGH DESERT STATE PRISON

NAME:  HASKINS                    CDC#:  B96040     DOE:  10-31-97

REFERRING PHYSICIAN:  Efren Robinson, M.D.

CERVICAL SPINE:

DIAGNOSIS:  Degenerative and discogenic degenerative findings are noted.

COMMENT:  The alignment of the vertebral bodies is satisfactory. Degenerative findings are noted throughout the lower cervical spine with narrowing present at C6-C7, suggesting discogenic degenerative changes.  Minor uncovertebral degenerative changes are noted throughout the mid to lower cervical spine, more so on the right side.  The odontoid is intact.

Thank you for this consultation.

Justin F. Weiss, M.D.
TR\Med/By Design, Inc.
1601 N. Tucson Blvd., Ste. 5A
Tucson, AZ   85716

D:  11-21-97   JFW
T:  11-25-97   af



04/15/97  12:18  FAX 8481                                    HIGH DESI LAB

Attachment; A-13(3)

# HIGH DESERT STATE PRISON

## RADIOLOGY REPORT

Name: HASKIN, L.              Number: B96040      Date: 11/06/96

Exam Requested: LUMBAR SPINE   Housing: B1-208L    Doctor: GILKES

**LUMBAR SPINE, LIMITED:**

Lumbar spine examination demonstrates early interspace narrowing at L3-4, L4-5, and L5-S1
consistent with degenerative disk disease.  Very early posterior bone spurring is present at L4-
5.  Moderate anterior osteophyte formation is present at L4 and L5.  No fracture or dislocation
is noted.  The pedicles are intact.  The SI joints are open without diastasis.

IMPRESSION:     1.    Early degenerative disk disease at L3-4, L4-5 and L5-S1.

                2.    No fracture.

Thomas W. Maclennan, M.D. DABR

11/14/96 dac

'Attachment', A-13(4)

# X-RAY REPORT
## FOLSOM STATE PRISON

NAME __HASKIN, LEONARD__  NO. __B-96040__  DATE _____ 09/29/98

X-RAY OF __LUMBOSACRAL SPINE__  ORDERED BY _____ GEOFFREY HANSON, M.D.

CLINICAL DATA _____

Outside films of the lumbosacral spine dated 11/19/96 have become available for comparison with the study dated 06/23/98. The degenerative osteoarthritic changes have advanced slightly compared with the previous study and involve more joints. Rudimentary twelfth ribs were noted in both studies. The narrowing of the fourth lumbar vertebral interspace was noted in both studies with very little if any change. The latest study shows narrowing of the fifth lumbar vertebral interspace not mentioned in the report and appears narrower compared with the previous study. The third lumbar vertebral interspace appears well preserved to this observer with no significant change compared with the previous study. There is widening of the transverse processes of L-5.

IMPRESSION:

1.    Degenerative osteoarthritic changes and suggestive of degenerative disc disease, advanced, compared with the previous study.

JLM:  ml
D:    09/29/98
T:    10/06/98

JERRY L. MURPHY, D.O.
RADIOLOGIST

Attachment, A-13(5)

# X-RAY REPORT
## FOLSOM STATE PRISON

NAME  HASKIN, LEONARD    NO.  B-96040   DATE _____ 06/23/98

X-RAY OF  LUMBOSACRAL SPINE   ORDERED BY _____ MARION MC ARTHUR, M.D.

CLINICAL DATA _____

The examination reveals apparent partial lumbarization in the first sacral segment with an associated joint space narrowing although disc disease here cannot be excluded. I cannot exclude neural foraminal encroachment by posterior spurring at this level as well. There is also a slight narrowing of the fourth lumbar vertebral interspace and disc disease here cannot be excluded. Mild degenerative osteoarthritic changes are noted with anterior vertebral body lipping and osteophyte formation involving T-12, L-1, L-3, 4, and 5. The study is otherwise unremarkable.

JERRY L. MURPHY, D.O.
RADIOLOGIST

JLM:   ml
D:     06/23/98
T:     06/29/98

'Attachment A- 14 ⑴



STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95814
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson
JOHN CHIANG
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
KAREN McGAGIN
Executive Officer

Leonard Allen Haskin B96040
San Quentin Prison
San Quentin, CA 94974

October 2, 2007

RE:  Claim G567184 for Leonard Allen Haskin, B96040

Dear Leonard Haskin,

The Victim Compensation and Government Claims Board rejected your claim at its hearing on
September 25, 2007.

If you have questions about this matter, please mention letter reference 123 and claim number G567184 when
you call or write your claim technician or analyst at (800) 955-0045.

Sincerely,


Laura Alarcòn,  Program Manager
Government Claims Division
Victim Compensation and Government Claims Board

cc:  B-23 Corrections and Rehabilitation, Attn: Donna Corbin


                              Warning
Subject to certain exceptions, you have only six months from the date this notice was personally delivered or
deposited in the mail to file a court action on this claim.  See Government Code Section 945.6.  You may seek
the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you
should do so immediately.  PLEASE CONSULT GOVERNMENT CODE SECTION 955.4 FOR PROPER
SERVICE OF SUMMONS AND COMPLAINT.


Ltr 123 Claim Rejection

Attachment; A-14(2)

LEONARD HASKINS
B-96040
4 H 17
C.S.P.SAN QUENTIN
San Quentin, Ca
94964

CLAIMANT PRO SE


BEFORE THE GOVERNMENT CLAIMS BOARD
STATE OF CALIFORNIA


LEONARD HASKINS                          GOVERNMENT CLAIM

CLAIM

_____

        This claims stems from the delays , denial and obstruct
ions of the need medical treatment of the claimant , a
state prisoner at San Quentin State Prison.


        Claimant has sought to exhaust any available administra
tive remedies to no avail, his inmate appeal have not been allowed
to proceed by correctional staff.


        Claimant contends that the fact that he is unable to obta
in answers to his inmate appeals , he has exhausted any available
remedies. See **Boyd Vs Department of Corrections  32 Fed Appx
16(3rd Circuit 2003).**

        Attached to this claim are copies of the claimants variouss
inmate appeals and medical information.


        Claimant contends that the delays in treating his serious
medical conditions have allowed for further significant
injury to his health .

Attachment; A-14(3)

WHEREFORE  the claimant request that damages be awarded in the
amount of five million dollars against the defendants jointly
and severely and in both their individual and officials capavities

By _Leonard Allen Haskins_
    LEONARD ALLEN HASKINS
    CLAIMANT PRO SE

DATED April 11, 2007

Attachment A-15

January 13, 2005

Beginning of October, severe pain neck and left shoulder. Dr. Wilson ordered x-rays of both arms.

10-21-04, x-ray results consultation with Dr. Wilson. Told him that x-rays left shoulder not as bad as expected but right arm, right x-ray looks terrible. Second test ordered along with telesetho conference appointment request, plus a 30 day renewal. Medication prescribed (Bextra - Celebrex).

11-29-04, 30 day renew appointment for Dr. Wilson, already missed several days of work due to severe pain. Would reorder problems with Dr. Wilson. Unfortunately Dr. Wilson left early that day was seen by Dr. Stalker instead, nothing resolved. In urgent need of paper work for my back, I/We Group P.I.A. chair upholstery. 11-29-04, new request filed to be seen by Dr. Wilson.

12-2-04, Telesetho conference with Dr. Jarge of U.C. Davis sports clinic. Explained about severe pain to me and left shoulder to him, along with x-ray absent from my got for several days. He was very unable when I asked about my x-ray results, I was actually given almost no information. Although, paper work was to be sent to my by two temporarily placing me on medical hold, along with ordering physical therapy for my shoulder.

12-3-04, asked Mr.S.O. Merrow if paper work had been sent to my boss, no, but I will request your chart and take care of it.

12-6-04, again asked M.S.O. Merrow about my paper work plus my request to see

ATTACHMENT A-15 (2.)

Dr. Wilson. Once again, "I will request your chart and you will be seen."

12-6-04 - 12-17-04, I received a new reply, "We are unable to locate your chart."

12-17-04, I met with Lieutenant Logan and restained my problems. He told me to immediately file an Inmate Appeal to cover my faults, although it would "cover" for any disciplinary paperwork. My appeal was to be hand delivered by M.T.A. Moreno to Dr. Cabra.

12-20-04, when I inquired with M.T.A. Moreno regarding the delivery of my appeal, she reclaimed that she delivered it to the Appeals Office. I told her that wasn't the correct procedure, you can't bypass the informal level. "Oh well."

12-29-04, I asked Officer Brock to see the facility Captain because it had been 12 days with no reply from my appeal, the matter was becoming quite urgent. Also that on a similar basis from 12-17-04 - 12-29-04 when I asked M.T.A Moreno if my chart had been located, I need to be seen by the Doctor, I received a very arrogant reply. "We refuse to do anything until your appeal is answered." Officer Brock contacted Loretta in the Appeals Office who explained that I need to file a patch-up appeal explaining everything I have done up to date and panel it directly to her, which I did.

12-23-04, while this was taking place I was seen by Dr. Cagayodle. The Neurologist. My chart was still not

Attachment A-15 (3).

available, although he conducted some pulmonary test. He confirmed that I did have advanced stages of neuropathy, along with the need for an immediate M.R.I. He also asked me if I needed corrective surgery if I would allow it, yes, if the surgeon was highly qualified and to my liking only. I also learned that the issue of my neuropathy might well be at the T.B. Medication as I was given while at California Mens Colony from 1993-1995. He also confirmed advance stage of osteoarthritis.

1-3-05, I received through Institutional mail both appeals dated 12-17-04 and 12-29-04. The original appeal dated 12-17-04 showed a return date of 12-29-04 the date. By my second appeal, quite a coincidence. To reply I was given to start my shout was located, then a kind of arrogant remark "Thank you very much." But there was no reply to my able two requests paper work to my Supervisor (Jeff Scoggy) and to be seen by Dr. Wilson as soon as my shout was located. The appeal that was requested by Loretta in the appeals office dated 12-29-04 was also returned requesting processing for bypassing the informal level. The was in total disregard as to what it was told by Loretta to do.

1-3-04, both appeals were sent back together for re-processing with full explanations on my part.

1-5-04, both appeals were returned in time. The appeal dated 12-17-04 had attached to it a new letter compelling my appeal for being unwarranted

Attachment A-15(4)

reasons. The Appeal's Office illegally refused to process my appeals. See copies of both lower letters enclosed.

1-12-05, I inquired through M.T.A. Walker why I haven't been seen by Dr. Wilson since my chart was located on 12-29-04? She told me to file another request and it would be given priority to Nurse White. When I was returning to the H-Unit Clinic to turn in my request, I caught Nurse White outside the Administration Office door and explained my situation. She immediately returned to the clinic and gave my request to M.T.A. Morrow and told him to request my chart. I would be seen that day. At approximately 1:45 P.M. when she was leaving to go home, I stopped her at the front gate and asked what happened. I was to busy today. I have given Sloat you will be seen tomorrow.

1-13-05, when I tried to see M.T.A. Walker heading to the red gate at 12:30 this day what happened again, she completely ignored me.

This is when I met with Counselor Linehan. I have been maliciously denied medical treatment for these past months. Every anemia I have tried to use to needle this urgent matter has maliciously been thwarted.

All this information has been supplied to an attorney in Anthony Serair's Office.

Attachment, A-16(1)

January 7, 2005

Samuel Hacker B-98040
San Quentin State Prison 4-N-17L
San Quentin Calif. 94964

Mr. Reddy Dorr
Attorney at Law
506 Broadway
San Francisco Calif. 94133

Mr. Dorr:

While I was at High Desert State Prison from 1996-1998 I was beginning to suffer from acute pain within my arm and lower back. After my initial consultations with Medical Staff and the taking of x-rays I was diagnosed with the intermediate stages of osteoarthritis with disk degeneration.

Unfortunately as time has elapsed, the degeneration has repeatedly increased up to the present time when it has become critical! One of the reasons I am writing you is that I am not receiving any types of medical treatment as needed which I will expand on further in this letter.

During the years of 2002 while I was assigned to Quentin's Fire House, I was suffering from severe loss of feeling in both my feet. When seen by the fire doctor his diagnosis was that my boot size was a half size too small, although when I acquired a pair as directed of boots a half size larger the symptoms persisted.

Approximately four months later I was seen by another Doctor, Dr. Cleek, whose diagnosis was

ATTACHMENT, A-16 (2.)

that I had an advance case of neuropathy and that the foot doctor was an idiot. After running many blood test available, it was discover that there was no locatable cause for the illness. This is another part of the reason I am writing you.

There are now so previously stated two major medical conditions I am suffering from at the present time. Now let me bring you up to date.

Approximately 5 months ago I was transferred from the North Block Facility to the H-Unit Facility here at San Quentin. At that time my job assignment was also changed from Vocational Bookman Printer to Prison Industries Chair Upholstery.

For the first two months things were going very smoothly, I even earned a pay increase from my boss, but, I was starting to suffer more pain in my left shoulder and neck. Since the pain kept increasing and I was starting to have trouble performing my job assignment I requested an appointment with the H-Unit Doctor.

I was seen by Dr. Wilson and he ordered immediate x-rays of both areas. When I returned for limited consultation for my x-ray results on 10-27-04, I was informed that my x-ray results showed good and bad news. My shoulder wasn't as bad as expected, although my neck x-rays was trouble. Dr. Wilson even added how long has it been since I have had a second shot, which is five years, but it wasn't given one.

Attachment "A-16"(3)   Page 3

During that appointment Dr. Wilson ordered many tests to be conducted including a neurological exam also a tiberible compares with the orthopedist along with a thirty day review. The medications that he prescribed at that time were. (Robaxin 200 mg. two daily tabs (Baclofen 10 mg. at P.M. or needed.)

Unfortunately even with the medications the pain I was suffering was becoming more and more severe, my job performance was dropping. By the time my 30 day review day arrived, I already missed a couple days of work. My major objective has always been to find some means of treatment to get me back to work so I don't lose my job assignment and pay status.

I figured that on 11-29-04 when I was to see Dr. Wilson for my 30 day review, the opportunity to resolve these issues would be available. That wasn't going to be the case. On 11-29-04 the day of my appointment Dr. Wilson left early and another doctor was brought in to take his place. Since he refused to acquaint me in any way, except to re-request a neurological exam. The impact of his demands to assist me were devastating because I had no way now of getting paper work to my boss to excuse me from work.

Thank God that on 12-2-04 I appeared for my tiberible conference with the Dr. Tange the Orthopedist. Although he was very positive when I tried discussing the results of my exray with him, I thought I was to be lucky in two rounds. He was going to

Attachment, A-16(a)

order physical therapy for my shoulder, and paper work was to be issued to my boss placing me on temporary medical leave until something was done to get me back to work.

When I checked on 12-3-04 to see if medical had sent paper work to my boss yet, I was told that it wasn't but they would request my chest and take care of it. I also requested to be seen by Dr. Wilson since he wasn't at my initial review on 11-24-04, that would be taken care of with my next visit. On Monday 12-6-04 when I checked with M.T.A. Morrow again she said that she was going to request my chest x-ray again and take care of business. On the following day the story changed, my chart was nowhere to be found and nothing could be done without it. Every day up till the 17th of December this is the story I received from both M.T.A. Walker and Morrow.

On 12-17-04 I brought this matter to the attention of the 2nd. watch Lieutenant Eagan, who told me to file an inmate appeal to cover my tracks. I am enclosing a copy of my appeal with this letter. On that day the appeal was given to M.T.A. Morrow to hand deliver it to Chief Medical Officer, Dr. Sabo. When I questioned the following day, she exclaimed that she turned it into the inmate appeals office instead. That is not what I wanted because by the time the appeal wasn't been processed the informal level would first, it will not be processed.

Attachment A-16 (5)

and he sent back to the gender. I explained to M.T.A. Moreno all of this when leaving my appeal with her.

From 12-17-04 to 12-29-04 I choked on a daily basis. My chart had been braced, I need to be seen by the doctor. Now I was recovery a very arrogant reply, "M.T.A. Moreno mostly", we can't do anything without an answer on your appeal." On 12-24-04 since my absence from my job was becoming more serious and I was becoming suspicious of the lengthy delay, I approached Officer Brooks and requested to see the Facility Captain. I explained to him what my problem was and he contacted Youatt at the Appeal's Office who said to file another appeal explaining everything that's them place and send it directly to her Office, which I did.

On 12-23-04 a copy of X-rays prior to this I was seen by Dr. Capezzoli the Neurologist. At this time my client was still not found, although he did run some preliminary tests. First it was asked if I needed surgery would I submit to it. I replied yes to the individual performing the surgery was highly qualified and to my liking. Randy, the next two parts are very important regarding what I was told. First, that I show somewhat advance stages of neuropathy and a M.R.I. is needed. Next, when I asked of the cause of neuropathy, he said that since all my blood tests were negative

Attachment-(A-16(a)

done had to be some cause of the illness. This next part is the clincher. I was asked if I had ever taken the T.B. Medication because it causes neuropathy. Yes I had a positive test at California Mens Colony and had taken the medication for the required six months. Next he asked me if I was anyone at the time that the medication causes neuropathy. No I was not. They only told me that for men over the age of forty it can cause liver damage.

At this time Dr. Coppagodie informed me that the Department of Corrections Medical Staff who issued me this medication should be held accountable for their lack of knowledge displayed regarding the awareness of the side effects the medication could cause. The damage this medication can cause to internal organs and you should be made aware of this factor prior to taking the medication.

Remedy, my hands are my major cause of supporting myself with a way of being. I have extensive training in the printing industry, auto mechanic industry, etc. etc. The loss of feeling in my hands is devastating then I am must consider this illness as having caused other area of my body, as previously mentioned my feet also. My symptoms are not a natural occurance. They are caused by an irresponsible outside source. You can't immagine the mental anguish that a daily loss of feeling in means of my limbs create!

Attachment A-26(3)

Someone needs to be held accountable for the serious loss I've suffered from. The continued day to day abuse that this condition causes is extensive. The continued numbness in my hands and feet drives me crazy with anger. Every night when I try to go to sleep, I have to live with the feeling that my toes have been cut off, sometimes these feelings do tend to drive me crazy.

Rarely, this condition is very hard to live with on a daily basis, especially when considered how far it might spread. Many nights even my mouth was so young numb if goes just like after leaving the dentist.

Another like issue is that I was prescribed (Celebrex) approximately five months ago. Several Staff Members along with myself agree that the Medicals Staff were aware of the serious side effects the medication was causing. They also feel myself included, that this medication should not have been prescribed. Since taking this medication, I have suffered abortions of health, severe stomach pain, intestinal discomfort, and difficulty in urinating. Just recently this medication was recalled by the manufacturer.

Lastly, as previously stated I am enclosing copies of both inmate appeals I recently submitted. They should help to explain some of the problems I have been also facing.

Please note the cover page copy attached

Attachment, A-16(a)

To the appeal dated December 17th. which shows the illegal cancelation of my appeal. Now am I to send paper work to my supervisor unless medical staff wants it? Also. I have not to the date of this writing been seen by Dr. Wilson with my chart present. Secondly, there was no one insure added to the appeal. As previously mentioned, Lieutenant began agree that there was no grounds to cancel this appeal.

The other appeal 1099 enclosed dated 12-29-04 is the follow-up appeal I filed to back my first appeal. If you note the 100% page attached to this appeal, it was also medical processing even after it was argued by Officer Brodie that he was informed by Loretta in the Appeals Office to send it directly. The notice that on the first appeal dated 12-17-04, the return date just happens to be 12-29-04, the date on the second appeal. Quite a coincidence. 12 months.

Randy, as of this writing I have not received any means of treatment whatsoever to assist me to get back to my job assignment. I have not been seen by Dr. Wilson, even after my chart was found on 12-29-04. The physical therapy which was to be ordered by the Orthopedist on 12-1-04 hasn't been started. I was never brought in to be seen by Dr. Wilson to refill the medication. (Ultram) which was recalled. At most the only thing I have received from the expected medical

professionals at the institution is an arrogant attitude.

Randy, I will deeply appreciate your legal assistance in this matter. Many of the more caring staff members I've spoken with, agree that I deserve monitory compensation for the damages that I've suffered at their hands. The irresponsible issuance of medication causing me permanent too, to the lack of medical treatment. The continued abuse I have to suffer with the adverse stage of neuropathy, along with the pain and suffering from the Osteoarthritis with no treatment.

Another idea which was brought to my attention from some more concerned staff members along with receiving monitory compensation was this. Even though I have been in and out of prison quite a few times, the lack of severity of my crime being such that the minimal. Along with the reconsideration of my age factored in also. The suggestion was to broach my continuing Judge in Long Beach, (Judge Pyman) and concerns through the severity of my medical needs, to suspend the balance of my sentence and allow me to seek proper medical treatment through the Veterans Hospital.

If necessary I would locate in the Los Angeles area, check in regularly with Judge Pyman, and

Attachment, A-1660

Attachment: A-16(a)

consider any other reasonable stipulations. By using the grounds of a dispute and having the bargaining power on our side, several people feel along with myself that we should be able to reach some agreement.

Please accept my apology for such a lengthy letter, although I wanted to be thorough in my explanation. Also accept my apology for the somewhat sloppy writing, with the numbness in my hand it is difficult to write.

I am hoping you find it in your heart to help! Even though I am fully aware I am definitely no Saint do you say, these people still shouldn't be allowed to get away with medical negligence. If you check my family's background, you will discover that from the early 1920s to 1985 we owned a very famous bakery in San Francisco by the name of (California Printing Co.)

Once again I will deeply appreciate your help and friendship in this matter.

Thanking you in advance.

Respectfully,
Leonard Nadon

Attachment; A-17



PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Rachel Farbiarz
Penny Godbold
Megan Hagler
Alison Hardy
Vibeke Martin
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

2/21/2008

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin:

I am writing to let you know that based on the phone conversation we had on 2/1/08, we will be re-opening your file   Nonetheless, in order to document your concerns, I still encourage you to continue to pursue this matter through the 602 appeals process as well.

We will discuss your medical care and health concerns at our next scheduled HCM conference call. We will contact you again once the call has taken place. We have submitted the following to the Attorney General's Office:

On 2/1/2008 we received a call from Mr. Haskin. At that time he informed us that in November he underwent surgery to address urological problems. He states that he received a number of post-surgical recommendations, including urinalysis and a prescription for Paradione. However, Mr. Haskin informs us that he did not receive these treatments, and states that San Quentin medical staff told him they have not been able to locate any post surgical recommendations. He states that he saw his PCP on 1/14, and she said that she would inquire about this issue, but as of 2/1 he has not received a response.

1. Please briefly describe Mr. Haskin's November surgery, post-operative care at San Quentin and current medical status.

2. What post-operative recommendations, if any, has San Quentin medical staff received following Mr. Haskin's surgery?

3. Has Mr. Haskin been seen regularly by his PCP following his surgery? Is it appropriate that he be seen regularly? Please explain.

Sincerely,

Tobias Smith
Litigation Assistant under Alison Hardy

Enclosures: PI:

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
. . . • . . . Marcum • Michael Marcum • Ruth Morgan • Dennis Roberts

# DECLARATION OF SERVICE BY MAIL

I, Leonard A. Haskins , the undersigned, declare:
Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not a party to the cause within.  My residence address is:

CDC No. B-96040    Housing 4-H-
San Quentin State Prison
San Quentin, CA 94974

On 04-03 , 2008 , I served the following document(s):
Month/Day    Year

1 - United States District Court For the Northern
District of California Writ of Habeas Corpus
By a Person in State Custody Under 28 U.S.C. 2254
78 pages / 3 copies pluse one envelope with
Stamps for mailing my copy back to me.

on the parties and at the addresses described below by placing the pleadings in a sealed envelope, with postage fully prepaid, and presented said item(s) to Corrections Department staff for mailing in the United States Mail as per the rules and regulations governing outgoing legal mail at San Quentin State Prison.

State of California Court of Appeal
First Appeallate District, Division Two
350 McAllister St. San Francisco CA.
Zip Code 94102-4712

I swear under penalty of perjury that the foregoing is true of my own personal knowledge.  Executed on this 3 day of April , 2008 , at San Quentin, CA, County of Marin.

Signature of declarant

Marc Evan O'Dell

# DECLARATION OF SERVICE BY MAIL

I, <u>Leonard A. Haskins</u>, the undersigned, declare:
      Printed Name of Declarant

I am over the age of 18 years, a citizen of the United States of America, and am not
a party to the cause within.  My residence address is:

CDC No. <u>B-96040</u>   Housing <u>A-H-17L</u>
San Quentin State Prison
San Quentin, CA 94974

On <u>04-20-</u>, <u>2008</u>, I served the following document(s):
   Month/Day          Year

<u>one Petition For A writ of Hebeas Corpus By a</u>
<u>person in state custody = Hebeas L.R. §2254, and</u>
<u>Exhibits. A total of 110 pages</u>

on the parties and at the addresses described below by placing the pleadings in a
sealed envelope, with postage fully prepaid, and presented said item(s) to
Corrections Department staff for mailing in the United States Mail as per the rules
and regulations governing outgoing legal mail at San Quentin State Prison.

<u>United States District Court Northern</u>
<u>District Courthouse</u>
<u>450 Goldengate Ave.</u>
<u>San Francisco, CA. 94102-3483</u>

I swear under penalty of perjury that the foregoing is true of my own personal
knowledge.  Executed on this <u>20</u> day of <u>April</u>, <u>2008</u>, at
San Quentin, CA, County of Marin.

_____
      Signature of declarant

marc E. O'Dell

Leonard Haskin B-96040 4-H-17L
San Quentin State Prison
San Quentin, Ca. 94974

RECEIVED

APR 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California
450 Goldengate Ave.
San Francisco, Ca. 94102-3483

Confidential Legal Mail

Confidential Legal Mail



UNITED STATES POSTAGE
$ 04.60°
MAILED FROM ZIP CODE 94974