**ORIGINAL**

1 | **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2 | Name _Haskin        Leonard        A_

3 |      (Last)             (First)           (Initial)

4 | Prisoner Number _B-96040_

5 | Institutional Address _San Quentin, Ca. 94974_

6 | ===================================================

7 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8 | _Leonard Allen Haskin_
9 | (Enter the full name of plaintiff in this action.)    )
10 |          vs.            )   Case No. **CV 08 0226 CW (PR)**
11 | _Robert Ayers, Jr. et. al.,_   )  (To be provided by the Clerk of Court)

08-2226 CW

12 |                  )  **COMPLAINT UNDER THE**
  **CIVIL RIGHTS ACT,**
13 |                  )  **Title 42 U.S.C § 1983**
14 |                  )
15 | (Enter the full name of the defendant(s) in this action)  )

16 | *[All questions on this complaint form must be answered in order for your action to proceed..]*

17 | I.   Exhaustion of Administrative Remedies.

18 |    [**Note:** You must exhaust your administrative remedies before your claim can go

19 |    forward. The court will dismiss any unexhausted claims.]

20 |    A.   Place of present confinement _San Quentin_

21 |    B.   Is there a grievance procedure in this institution?

22 |          YES (**X**)    NO ( )

23 |    C.   Did you present the facts in your complaint for review through the grievance

24 |    procedure?

25 |          YES (**X**)    NO ( )

26 |    D.   If your answer is YES, list the appeal number and the date and result of the

27 |    appeal at each level of review. If you did not pursue a certain level of appeal,

28 |    explain why. **RECEIVED**

COMPLAINT        JUL 2 8 2008  1 -

1    1. Informal appeal *See attached exibits, they*

2    *will explain in full every avenue taken*

3    *to exhaust administrative remedies.*

4    2. First formal level *The Case of (Boyd vs. Department*

5    *of Corrections) thoroughly explains that if*

6    *the Appeals Coordinators refuse to properly*

7    3. Second formal level *process our Appeals, then*

8    *our administrative remedies have been*

9    *exhausted. I even contacted the Prison*

10   4. Third formal level *Law Office regarding the*

11   *Appeals Coordinators not properly process-*

12   *ing our appeals. This is an ongoing issue.*

13   E.    Is the last level to which you appealed the highest level of appeal available to

14   you?

15        YES ( )    NO ( )

16   F.    If you did not present your claim for review through the grievance procedure,

17   explain why._____

18   _____

19   _____

20   II.   Parties.

21   A.    Write your name and your present address.  Do the same for additional plaintiffs,

22   if any.

23   *Leonard Allen Haskin (B-96040) San Quentin*

24   *State Prison, San Quentin, Ca. 94974. 4-H-17L*

25   _____

26   B.    Write the full name of each defendant, his or her official position, and his or her

27   place of employment.

28   *Robert L. Ayers Jr. (Warden) San Quentin, Physician*

COMPLAINT                    - 2 -

1  Martin San Quentin State Prison, Physician Wilson San

2  Quentin State Prison, Physician Bui San Quentin State Prison,

3  Chief Physician Williams San Quentin, Neurologist Dr.

4  Capozoli San Quentin, Urologist Dr. Gershbein San Quentin.

   Neurologist Dr. Mendius San Quentin, Physician Udenhi San Quentin

5  III.    Statement of Claim.    C.O. Perry San Quentin, Sgt. Nguyen San Quentin

6      State here as briefly as possible the facts of your case.  Be sure to describe how each

7  defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8  cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9  separate numbered paragraph.

10   See attached Statement of Claim.

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  IV.    Relief.

24      Your complaint cannot go forward unless you request specific relief.  State briefly exactly

25  what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

26   See attached prayer for relief.

27  _____

28  _____

COMPLAINT                           - 3 -

1

2

3

4

5    I declare under penalty of perjury that the foregoing is true and correct.

6

7    Signed this **16th.** day of **July** , 20 **08**

8

9        *Leonard A. Haskin*

10                              (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                    - 4 -

AMENDED COMPLAINT FROM HABEAS CORPUS
TO 42 U.S.C . 1983

IN THE MATTER OF CASE # C08-02226 CW  (PR)

ORIGINALLY FILED JULY 8, 2008
BY:

LEONARD A. HASKINS  / B96040 - Petitioner

v.

ROBERT AYERS JR. et., al. - Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LEONARD HASKINS-B96040,

        Petitioner,

    and

ROBERT AYERS, JR. et.,al.,

        Respondent.

Case No.: CV 08-02226 CW (PR)

AMENDED COMPLAINT FROM HABEAS CORPUS TO § 42 U.S.C. 1983

This case began erroneously as a Writ of Habeas Corpus, which was improper. In this Amended Complaint under §42 U.S.C 1983 Petitioner alleges that his Eighth and Fourteenth Amendment Right to be free from Cruel and Unusual Punishment and Equal Protection Under the Law Rights have been violated by the Defendants mentioned in this complaint. [Both Rights are secured by the U.S. Constitutional Laws of the United States].

The Petitioner amends this complaint to prove that each defendant herein this complaint, also committed Civil Right Violations in their professional capacities, by acting unethically, and unprofessionally and that those professional adversities affected the welfare of the Plaintiff, and subsequently deprived the Plaintiff of Federally Protected Rights.

1    The Plaintiff now wishes to modify the complaint per directive.

2

3    The Plaintiff still alleges San Quentin Medical Staff's neglect to appropriately

4    acknowledge or treat his medical condition and San Quentin Medical Staff's deliberate

5    indifference to his serious medical conditions led to prolonged, severe, and unwarranted

6    pain and suffering.

7

8    Plaintiff still contends each named San Quentin Prison Medical Staff Member /

9    Defendants were acting under the color of authority while under the employ of the State

10   of California Department of Corrections at san Quentin state Prison; and while under the

11   *direct supervision* of the primary defendant Robert Ayers Jr.; - Warden at San Quentin

12

13   State Prison. The Plaintiff further alleges that each defendant by deliberately showing

14   indifference to his medical need(s), did in fact violate his Eighth and Fourteenth

15   Amendment Rights, and that the following is a synopsis of each defendant's Act of

16   Liability:

17

18   On or about October 21, 2003, Physician Martin at San Quentin State Prison did willfully

19   and with deliberate indifference to my serious medical need neglected to order

20   treatment after being made aware of my complaints of severe pain and discomfort. My

21

22   condition concerns a chronic need medically defined as Spinal Arthritic Disk

23   Degeneration.  Dr. Martin was aware of my diagnosis and the prognosis of another

24   California Department of Corrections Physician (Dr. Leong of the California State Prison

25   at Delano). The information attesting to my condition is also contained in my medical

26   file. Dr. Martin's deliberate indifference and lack of appropriate care has therefore

27

28

deprived me of my Constitutional Right to be free from Cruel and Unusual Punishment [a violation of the Eighth Amendment], and deprived me of my Fourteenth Amendment Right of Equal Protection Under the Law.

Again, on or about March 1, 2004, I went to see Dr. Martin to get treatment for swelling of my knee, which also caused me serious, lower back pain, I was given a follow-up appointment, for 7-20-2004, and at the latter appointment, Dr. Martin discovered a large swelled area on the left knee, and referred me to a Tele-Ortho Doctor, where I received a diagnosis for  what had become a "Bakers Cyst" on my left knee.[See attachment A-1 & A-2]

On or about October 01,2004 I was seen by San Quentin H-Unit Physician Dr. Wilson for Spinal Arthritic Disk Generation, and at this time, I told Dr. Wilson, that in addition to the severe pain and the loss of feeling in my hands and feet, and also of pain in my shoulder. Dr. Wilson referred me to a Teleortho Doctor. On December 2, 2004, the Teleortho Doctor told me I would be starting therapy for my shoulder [See Attachment A-3].

From December 2, 2004 until approximately March 1, 2005, I complained to Dr.'s Wilson and Bui in the H-Unit Infirmary of urological problems, and neither Dr. ordered any treatment. On or about April 1, 2005 Dr. Bui ordered antibiotics for my enlarged prostrate. However, the medication did not work. [See Attachments A-6(2), (5), and (7)].

On December 2, 2004 according to Physicians in San Quentin's H-Unit, my Medical Chart was lost. Because of my severe medical; issues, I was sent to Dr. Williams (Chief

Physician). Dr. Williams said he would be sending me to Urology, but never followed through with the appointment.

On or about December 3, 2004 I spoke with Lieutenant Eagan about my medical needs and my lost medical chart. Lieutenant Eagan made many phone calls but without prevailing.

During this time, CCI Linehan became involved, but was unable to help me [See Attachment A4 (a) and five]. CCI Linehan ailed a report of her findings to Warden Jill Brown. The report however, the report apparently never found its way to her office, but was instead re-routed to the Appeal Coordinator's Office. [See attachment A15 (1)].

On or about December 17, 2004 I wrote a grievance about lack of treatment in San Quentin H-Unit medical and losing my medical chart [See attachment A-5(27)].

On December 12-29-2004 The Appeals coordinator's secretary told me to send a second 602 (Grievance form) directly to her office, because the earlier one had been misplaced or lost. The second appeal (602) was returned on December 31, 2004 directing me to mail it to the medical department. [See Attachment A-(1)].

On December 30, 2004 my 12/17/2004 (602) was returned and I resubmitted it on 1-03-2005. It was returned on 1/4/2005. Stamped "Cancelled"[See Attachment A-5(27)].

On December 24, 2004, I was seen by the San Quentin Neurologist Dr. Capozoli, who said I would receive an immediate M.R.I., and follow-up treatment. The M.R.I follow-up never took place. [See Attachment A-3].

On April 22, 2005 in san Quentin H-Unit Medical, I saw Urologist Dr. Gershein. He prescribed me seven days of valium and said that my symptoms (An X-RAYED ENLARGED PROSTATE) are psychosomatic. I continued to complain to H-Unit Doctors until I prescribed Flomax [See Attachment - A6(5)].

On or about May 1, 2005 to H-Unit medical staff I complained of severe pain in my left shoulder, and acute pain in my lower back and neck, with loss of feeling in my hands and feet. [See Attachment].On June 15, 2005, An M.R.I ordered by Dr. Khoo was ordered and taken [See Attachment A-8(1)].

On September 2005 I spoke to Lieutenant Barker who was at that time was the Medical Supervising Facilitator in H-Unit. I was referred by neurologist Dr. Mendius and was referred for surgery, but no follow-up was ever performed [See Attachment A-7].

On or about January 1, 2006 my foot pain became acute. I complained of this pain to San Quentin doctors and the R.N. I was not seen by a Podiatrist, Dr. Griffith until June 28, 2006. [See Attachment A-9] I again saw Doctor Griffith on July 5, 2006, and he told me that I had excessively high arches and needed an arch support [See Attachment A-9].On August 16, 2006, I saw Dr. Griffith and Castings of both my feet were taken to make prosthetic arch supports. On August 30, 2006, Dr, Griffen checked the arch supports, and said I would need specially fitted shoes, and referred me to a Prosthetic Doctor [See attachment A-9]. On September 13, 2006, I saw Doctor Griffith, and he confirmed my Prosthetic Doctor appointment. [See attachment A-10(2)].

On November 17, 2006, I saw the prosthetic Doctor and received said shoes. [A-10(2)].

On August 14th, 2006, I began therapy for my back and spinal degeneration disorder. I first requested treatment on October 21st, 2003. At this appointment the therapist said that I had a Chronic Cervical Lumbar arthritic degeneration and that I was beyond physical therapy until August 13, 2006, then I was referred to a neuro -surgery clinic at U.C.S.F. Hospital, and then referred back to San Quentin's medical physical therapist for another probationary period of light traction for Cervical Spine Disorder. On April 5, 12007 this traction probationary period ended and the physical therapist referred me back to the neuro surgeon. From April 5, 2007 until approximately December 17, 2007, I received no follow-up treatments. [See attachment A- 10(1)].

On July 14, 2006, San Quentin medical sent me to see a Urologist. After a minimal case review, a Urologist never saw me again until approximately December 12, 2008. [See attachment A-9].

On or about December 2005 I wrote a letter to the prison law office, explaining my medical issues and medical neglect by San Quentin Medical department. Since the above date, I have contacted said law office off and on with no legal help offered or rendered. [See attachment A-12 (1), (2), (3), and (4).

Shortly thereafter, I tried to mail a letter outlining my medical needs and medical neglect to San Quentin H- Unit medical personnel via the institutional mail system, and it was misdirected to the Appeals Coordinator's Office. The letter was written to the warden (Jill Brown). [See Attachment A-15 (1)].

On or about September 1, 2007 San Quentin H-Unit medical sent me to doctors Hospital. Urology specialist Dr. Brown saw me.

Dr. Brown said that he was making an appointment for surgery, and that he would be my surgeon. I on or about Tuesday October 16, 2007, I was admitted into doctors hospital for surgery on my prostate. On Wednesday, October 17, 2007, I was discharged and returned to San Quentin TTA Clinic, then sent back to my housing unit with no follow-up treatment or pain medications ordered by Dr. Brown.

On October 18, 2007, my Dorm Officer (Archembeau) made multiple phone calls trying to obtain said medication for pain and treatment.

On October 18, 2007 at 1700 hours, I was transported to via med. 1 to said TTA Clinic in severe pain, where I received pain Medication and antibiotics, and a follow-up treatment, which included cleaning my exterior catheter. I was then made to walk back to my housing unit. On October 19, 2007, I forced my way into San Quentin H-Unit Medical Unit and was seen by doctor Udenhi, and she exclaimed:"Oh my God, your Catheter was supposed to be removed' in 48 hours. Jesus, we're a day late already, R.N. get him sent to the TTA A.S.A.P. to get this (the catheter) removed"!

On October 19, 2007 at 1500 hours said TTA Doctor removed said catheter and I was told to walk back to my housing unit.

On or about October 21, 2007 I began suffering complications from my prostrate surgery, which caused acute pain in my prostrate area, my urinary retention and burning when I urinated.

Beginning in October 2007 I complained to San Quentin medical staff of said complications, and requested to be seen by Dr. Brown or for Dr. Brown too be called my request was ignored.

After two weeks of complaining of said complications to the San Quentin H-Unit medical Staff, I called my mother (Ms. Judy Butler) for help. My Mother called the Inspector General's Office three times and explained my medical needs and problems at San Quentin, and requested that their office interview me. To no avail.

On November 20, 2007 in severe pain from said complications, I was transported to Doctors Hospital where Dr. Brown saw me.

On November 20, 2007, I was returned to San Quentin TTA Clinic accompanied by strict treatment orders. I was refused said treatment.

On or about December 10, 2007 San Quentin H-Unit medical Doctor Udenhi told me that all of Dr. Brown's treatment orders of November 20, 2007 were lost out of my medical file. Dr Udenhi then said that she would call Dr. Brown, and ask him what treatment he prescribed. Later Dr, Udenhi prescribed me one milligrams of Terazosin one time per day.

This dosage did nothing for my pain or systems. Dr. Udenhi then started increasing said medications.

On February 14, 2008 in San Quentin medical unit, one Dr. David saw me. Where she said that she had spoken to Dr. Brown, and per her instructions, I was given a new treatment procedure. I was prescribed Terazosin, and Oxybuyutin 5 mgs. One time daily.

On or about February 18, 2008, I again contacted the prison law office and explained all of the above medical and lack of treatment after my recent prostate surgery. On February 21, 2008, I received a letter from Dr.Tobias at the prison law office.

At this time, Mr. Tobias said that my case concerning medical neglect was being reopened. [See attachment A -17].

On or about December 17, 2007 Dr. Papas (a spinal surgeon whose care I was not under) saw me in San Quentin medical. Dr. Papas saw me for A Spinal Degenerative Disorder and began me on Facet Spinal Injections for my Cerevical spine Disorder. I am now under his care, [See Attachment A-10].

Lastly, on March 28, 2008 in San Quentin medical I was seen by one Dr. David where she referred me back to Dr. Brown (Urologist) due to complications from my on going medical need in that area. Dr. David also ordered an M.R.I of my Lumbar Spine, which I waited three years to have looked into.

On December 24, 2006 at 1900 hours, I became deathly ill, and I began to vomit every 30 minutes. At approximately 0100 hours, I approached Officer Perry in my dorm at San Quentin's H-Unit, and requested immediate medical treatment, called "Man-down". Instead of ordering the "Man-Down ", officer Perry called the first watch Sergeant, who refused me thee "man-down" order. At approximately 0300 hours, I again approached Officer Perry and told him that I was continually experiencing vomiting and diarrhea. Officer Perry once again called the Sergeant on duty, and once again, the Sergeant refused to order a "man-down" medical emergency call.

At 0520 hours I again approached Officer Perry in my dorm and said;" For God Sakes, I'm literally dying, what do have to do to get some medical attention"? Officer Perry finally wrote me a pass to get to the TTA clinic.

To get a clearance to go to said TTA Clinic I first had to walk to San Quentin Administration Building, and on the way there, I was approached by the third watch Officer (Lee) who said to hold on, and he would issue a man - down call, which the R/N agreed to.

As I waited to be picked up. An Officer Johnston approached  me and ordered me to go back to my dorm. About one hour later, I saw Sergeant Collier, and he ordered that I be escorted to said clinic. At the TTA clinic, R/N said that if I did not come in when I did, that I would have died of dehydration.

I Leonard A. Haskins believe that all of the above attachments B-1 through B-2 6, along with attachments C-1 through C-5 demonstrate the dangerous lack of medical care to

my person, at San Quentin Prison, and that all references to san Quentin medical staff are apparent in their omissions to act and to provide me with adequate medical care and treatment due to indifferences to my very serious medical condition(s), which directly violated my Eighth Amendment Right to be  free from Cruel and Unusual Punishment, and my Fourteenth Amendment Right assuring Equal Protection Under the Law as guaranteed by the U.S. Constitution.

Further, that these San Quentin Medical staff members acted irresponsibly, and with callous disregard for my health and safety while acting under the color of authority.

PRAYER FOR RELIEF

The petitioner prays for in the amount of ten million dollars in punitive damages for pain and suffering caused as a result of each parties inddifference to the petitioner's serious medical needs, inappropriate care, and for violating the Petitioner's Eighth and Fourteenth Amendment Rights.

Dated this 21st day of July 2008.

Leonard A. Haskins - B96040
San Quentin State Prison,
San Quentin, CA 94974
Petitioner - Pro se

STATE OF CALIFORNIA                                        DEPARTMENT OF CORRECTIONS

## MEDICAL/DENTAL LAY-IN ORDER

| INMATE'S NAME _Haskin, L_ | CDC NUMBER _B96040_ | HOUSING _4H17L_ |

ABOVE SUBJECT MUST BE CONFINED TO BED FOR MEALS, MEDICATION, AND SICK CALL.

LAY-IN NUMBER
_Lay in for 2/28, 3/1, 3/2, 3/3 due to chronic injury._

SIGNATURE OF M.D., R.N., M.T.A., D.D.S., R.D.A.
_MTA RJ McCluskey        R. Just    x 6955_

C.C. WORK ASSIGNMENT SUPERVISOR
HOUSING UNIT

CDC 7257 (Rev 6/97)

---

A-1

| INMATE: HASKIN | CDC NUMBER: B96040 | HOUSING: FD-B2-128U |

**Work restriction: NO LIFTING.**

CC: C-File  (Original)
     Medical File
     Assignment Lieutenant
     Unit Sergeant
     Housing Officer
     Inmate

PHYSICIAN: Dr. LEONG, A

ARRIVAL DATE : 9/10/03

DATE : **9/12/2003**    N K S P    M E D I C A L    C H R O N O    CDC-128-C

'' Attachment A

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC 7393 (11/02)

## NOTIFICATION OF DIAGNOSTIC TEST RESULTS

| NAME _Hawkins, Leo_ | CDC NUMBER _P-74060_ |
|---|---|
| INSTITUTION _SQ_ | HOUSING _5413_ |
| TYPE OF TEST _Left knee X-ray, Low back_ | DATE OF TEST _6/25/04_ |

### YOUR TEST RESULTS HAVE BEEN EVALUATED BY A PHYSICIAN AND THE FOLLOWING HAS BEEN DETERMINED:

☐ Your test results are essentially within normal limits or are unchanged and no physician follow up is required.

☒ You are being scheduled for a follow up medical appointment. You will be receiving a ducat indicating your appointment time.

☐ A repeat test will be ordered. You will be ducated for this test.

☐ A chronic care appointment has been scheduled for you. You will be receiving a ducat indicating your appointment time.

_T. Makt M_
NAME / TITLE

_____
PHYSICIAN SIGNATURE

_7/20/04_
DATE

ORIGINAL - File in UHR          CANARY - Scheduler          PINK - Patient

---

## CDC 128 C - TEMPORARY COPY

NAME_____ NUMBER_____ HOUSE_____ DATE_____

REQUEST _____ not available

_____

_____

MEDICAL REASON: _____

SIGNED _____ M.D.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**PRIORITY INMATE DUCAT**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| D. ALLEN, LT. | 12/23/2004 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 12/24/2004 | 0900 HRS |

| REASON: | | |
|---|---|---|
| NEUROLOGY | | |

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | CAPOZZOLI |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**PRIORITY INMATE DUCAT**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 3 N 067U |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| D. ALLEN, LT. | 8/10/2004 | NORTH BLOCK |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 8/11/2004 | 1430 HRS |

| REASON: | | |
|---|---|---|
| TELEORTHO | | |

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | MACAALAY |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskins | B96040 | |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| Wallen | 4/27/05 | |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| IH | | 1215 |

REASON: RN Triage unable to urinate painful

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskin | B96040 | 4 H 17L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| J. Suovg | 11-3-04 | PIA |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| H-Unit | 11-3-04 | 1215 |

| REASON: | | |
|---|---|---|
| Medical | | |

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 4H17 |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| MA | 2-22-05 | |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 2-22-05 | AM |

| REASON: | | |
|---|---|---|
| LAB | | |

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**PRIORITY INMATE DUCAT**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| D. ALLEN, LT. | 11/28/2004 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| H-UNIT | 11/29/2004 | 0800 HRS |

| REASON: | | |
|---|---|---|
| H-UNIT CLINIC | | |

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | SUMLER |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKINS | B96040 | 4H17 |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| MA | 2-2-05 | |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| H-Unit Clinic | 2-2-05 | 0830 |

| REASON: | | |
|---|---|---|
| M Triage | | |

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

**INMATE PASS**

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskins | B96040 | 4H17L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| J. Brodie | 12-2-04 | H UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| DIC | 12-3-04 | 0945 |

| REASON: | | |
|---|---|---|
| Medical Phone Conference | | |

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|
| H Unit | 1020 | |

# INMATE/PAROLEE APPEALS SCREENING FORM

NAME: _Haskin_ NUMBER _B 96040_ SQP LOG No:_____

(OTHER LOG NO)_____ ISSUE:_____ AREA OF ORIGIN:_____

HOUSING UNIT _4H17_ NOTE_____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

1. The action or decision being appealed is not within the jurisdiction of the Depart and
   ____a. **BPT issue**, file BPT 1040 form & submit to C&PR ____b. Other, see comments

____2. You have submitted a duplicate appeal on the same issue. Check one:
   ____Your first appeal was screened out on _____for _____
   ____Your appeal is currently under review at the_____level.
   ____Your first appeal has been completed at the _____level.

____3. You are appealing an action not yet taken.

____4. You may not submit an appeal on behalf of another inmate.

____5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.
   ____CDC-115 Hearing Officer's or Disciplinary Committee Results ____Supplemental Reports to CDC-115.
   ____CDC-115A with I.E./D.A. info. ____CDC-128B1 Hearing Notif. ____CDC-839/840 Class/Reclass Score Sheet
   ____CDC-128G ICC/UCC Clas.Com. ____CDC-128G Init. Clas. Com. ____CDC-128G CSR Endorsement Chrono
   ____Lab Results Sheet ____CDC-114D Lock Up Order ____CDC-1030 Confidential Disclosure
   ____CDC-7219 Medical Report ____Legal Status Summary ____CDC-128C Medical Chrono
   ____Board of Control Claim Form (attached) ____Property Inventory Slip
   ____Receipts:____Qtr.Pkg. Inventory Slip ____CDC-143 Property Transfer Slip ____Cell Search Slip
   ____You have failed to complete Section_____ ____Sign & Date Section_____
   ____Other:_____

____6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

____7. This issue has been appealed under the assigned SQP Appeal Log No._____. Per DOM section 54100.10.1,
   a copy of the reviewer's response: ____Is attached ____Will be forwarded to you upon completion

____8. Abuse of the Appeal Procedure. See Comments.

Comments: _Your appeal is not appropriate for formal level processing. You must provide proof of having received an informal level response_
_prior to submitting this appeal to the Appeals Office, for further processing. Reference CCR section 3084.2(c) which states: Place of Filing._
_At the formal levels, the appeal shall be forwarded to the appropriate office or appeals coordinator within the time limits prescribed in_
_section 3084.6._ **NOTE:** _as of 6/23/97, Appeals Office will not assign log numbers to informal appeals. Appeals will receive a log number_
_upon reaching the 1st formal level if necessary. Please take heed of this notice when preparing future appeals._ Send to 4k
Medical Dept.

W Jeppeson

**R. CHANDLER-DACANAY** **W. JEPPESON**
CC-II, Appeals Coordinator CC-II, Appeals Coordinator Date _12-31-4_

This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this
form to the Appeals Coordinator with the necessary information.

## PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

_Was requested through Lt. Eagan from appeals to_
_send directly to their Medical._

CDC-695 (REVISED 9/03)

*due process under 3084.7 due to medical reasons, the continual lack of treatment*

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE
# APPEAL FORM

CDC 602 (12/'87)

Location: Institution/Parole Region        Log No.              Category   8

1. _____      1. _____
2. _____      2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Washington Leonard | | | |

A. Describe Problem: On 12-2-04 I was seen by Dr. Jeffrey S. Tanji for a Tele-Ortho consultation regarding x-ray results of my left shoulder and cervical spine. I informed him that due to severe chronic pain in my neck and left shoulder I had already missed approximately a little over a weeks worth of work and also my boss Jeff Scroggy needed paper work excusing me from work until I received some means of treatment. I was informed by Dr. Tanji that he would order physical Therapy

If you need more space, attach one additional sheet.

B. Action Requested: That this matter be immediately investigated by proper assigned Staff. That all parties involved receive disciplinary action of the highest degree. That my initial Appeal be immediately granted. That I be compensated for all loss of pay!

Inmate/Parolee Signature: Leonard Washington          Date Submitted: 12-29-04

JAN 04 REC'D  DEC 31 REC'D

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____   Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____            Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

_____

treatment for my shoulder, and to be placed on temporary medical leave from work. The Tele-Battle Nurse took my boss's name and extension number from me and said he would receive the necessary paper work. On 12-3-04 after finding out that my boss didn't receive paper work, I went to M.T.A. Walker who said she was ask for my chart and take care of the problem. On 12-6-04 again finding that my boss hadn't received any paper work as yet, I went and asked M.T.A. Morrow to check into the matter. She, once again said she would ask for my chart and resolve the problem. On 12-7-04 when enquiring again with M.T.A. Morrow, she exclaimed that my chart was unavailable. After receiving the same answer for approximately (2) two weeks on a daily basis, I consulted with Lieutenant Eagan regarding the problems I was having. He said I should file an immediate Inmate Appeal to cover my tracks. On 12-17-04 I delivered my appeal to M.T.A. Morrow who was to hand deliver it to Chief Medical Officer Dr. Calvo that day. On 12-20-04, I asked M.T.A. Morrow if she delivered my Appeal, she informed me that it was delivered to the Appeal's Office. On a daily basis since 12-17-04 I have been asking if my Medical Chart has been located so I can receive medical treatment. I have been treated very disrespectfully by M.T.A. Morrow and Walker telling me there was nothing they would do until they received an answer on my Appeal. On 12-29-04 since (12) twelve days as elapsed with no response, I asked M.T.A. Morrow once again what was happening. I received the same arrogant response, "there is nothing

Attachment, A-6(2)

I will do until I receive an answer on your Appeal". The continued responses finally made me suspicious, that is when on 12-24-07 I brought the matter to the attention of Officer Brodi who contacted your Office.

The deliberate misdirection of an Appeal is serious business; considering the consequences that it can cause. The Inmate Appeal is a legal process and should be treated as such by all individuals who handle them. The deliberate misdirection or destroying of an Appeal should deem serious disciplinary actions to all parties involved.

One thing that I forgot to mention is that a copy of my Appeal was sent by myself directly to Dr. Calvo.

**Form 1 (top left):**

...RITY INMATE DUCAT
DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

| ...'S NAME | CDC #: B96040 | HOUSING #: 04 H 017L |
| ... BY: ...SSEY, LT. | DATE: 5/26/2005 | PASS FROM: H-UNIT |
| ... | DATE: 5/27/2005 | TIME: 1000 HRS |

... CALL

| ...RIZED BY: | REQUESTED BY: MD |
| ... TO: | TIME: | RECORDED BY: |

**Form 2 (top right):**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE PASS
CDC 129 (7/88)

| INMATE'S NAME: HASKIN | CDC #: B96040 | HOUSING #: 4H17 |
| ISSUED BY: MTA | DATE: 2-7-05 | PASS FROM: |
| PASS TO: H-Unit Clinic | DATE: 2-7-05 | TIME: 0830 |
| REASON: SICK CALL | | |
| ARRIVAL TIME: | RECORDED BY: |
| DEPART TO: | TIME: 0930 | RECORDED BY: |

**Form 3 (middle left):**

...TE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
...IORITY INMATE DUCAT
CDC 129 (7/88)

| ...TE'S NAME ...SKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
| ...ED BY ...MASSEY, LT. | DATE: 6/17/2005 | PASS FROM: H-UNIT |
| ...NIT | DATE: 6/20/2005 | TIME: 0830 HRS |
| ...SON: ...CK CALL | | |
| ...THORIZED BY: | REQUESTED BY: MD |
| ...PART TO: | TIME: | RECORDED BY: |

**Form 4 (middle right):**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE PASS
CDC 129 (7/88)

| INMATE'S NAME: HASKIN, L. | CDC #: B96040 | HOUSING #: 4H17L |
| ISSUED BY: MTA MCCLOSKEY | DATE: 1/9/05 | PASS FROM: DORM 4 |
| PASS TO: UCC TRIAGE | DATE: 1/10/05 | TIME: 0930 |
| REASON: Must be seen ē chart | | |
| ARRIVAL TIME: | RECORDED BY: |
| DEPART TO: | TIME: | RECORDED BY: |

**Form 5 (lower middle left):**

...ATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
...RIORITY INMATE DUCAT
CDC 129 (7/88)

| ...TE'S NAME ...ASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
| ...UED BY: ...MASSEY, LT. | DATE: 6/21/2005 | PASS FROM: H-UNIT |
| ...SS TO: ...UNIT | DATE: 6/22/2005 | TIME: 0815 HRS |
| ...ASON: ...CK CALL | | |
| ...THORIZED BY: | REQUESTED BY: MD |
| ...PART TO: | TIME: | RECORDED BY: |

**Form 6 (lower middle right):**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE PASS
CDC 129 (7/88)

| INMATE'S NAME: HASKIN | CDC #: B96040 | HOUSING #: 4H17L |
| ISSUED BY: ARCHAMBEAU | DATE: 2-25-05 | PASS FROM: H-UNIT |
| PASS TO: D.I.C LAB | DATE: 2-25-05 | TIME: 11:20 |
| REASON: LAB TEST | | |
| ARRIVAL TIME: | RECORDED BY: |
| DEPART TO: | TIME: | RECORDED BY: |

**Form 7 (bottom left):**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE PASS
CDC 129 (7/88)

B96040

| INMATE'S NAME: HASKIN | CDC #: 6·21·05 | HOUSING #: 4H17L |
| ISSUED BY: ARCHAMBEAU | DATE: 6·21·05 | PASS FROM: H-UNIT |
| PASS TO: H-UNIT MEDICAL | DATE: 6·21·05 | TIME: 0900 |
| REASON: STAPH INFECTION ON LEFT HAND | | |
| ARRIVAL TIME: | RECORDED BY: |
| DEPART TO: | TIME: 1350 | RECORDED BY: M. Ackmer |

**Form 8 (bottom right):**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
PRIORITY INMATE DUCAT
CDC 129 (7/88)

| INMATE'S NAME: HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
| ISSUED BY: P. MASSEY, LT. | DATE: 4/21/2005 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY | DATE: 4/22/2005 | TIME: 0900 HRS |
| REASON: UROLOGY | | |
| AUTHORIZED BY: | REQUESTED BY: GERSHBEIN |
| DEPART TO: | TIME: 1020 | RECORDED BY: BU |

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                                         PAGE   1   OF   1

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| B-96040 | HASKIN | 05-3B-01-101 | SQSP | 2-21-05 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES: | ☒ HEARING | ☐ IE REPORT | ☐ OTHER |
|---|---|---|---|---|---|

**Hearing:** The hearing was convened on 2-13-05, at approximately 1000 hours when I introduced myself to HASKIN as the Hearing Officer for this disciplinary. HASKIN stated he was in good health with normal vision and hearing. HASKIN acknowledged that he received a copy of the following document more than 24 hours in advance of the hearing; CDC 115. This report as well as the disciplinary charge of REFUSAL TO WORK were reviewed with HASKIN in the hearing. He stated that he understood both and that he was prepared to begin the hearing.

**Due Process:** The disciplinary was served on the inmate within 15 days of discovery and the hearing was held within 30 days of service. The inmate received his copies of all documents more than 24 hours in advance of the hearing. There are no due process issues.

**Staff Assistant:** HASKIN was not assigned a Staff Assistant as the issues are not complex, does not meet criteria in CCR 3315 (d) (2)

**Investigative Employee:** HASKIN was not assigned an investigative Employee, incident does not meet criteria in CCR 3315 (d) (1)

**Request for Witnesses:** HASKIN waived all witnesses and the SHO requested MTA's Walker and McCloskey and CMO Dr. Williams.

**Plea:** GUILTY WITH AN EXPLANATION.

**Hearing testimony:** HASKIN gave the following testimony as his defense: I have been trying to get medical treatment regarding pain in my shoulder. I have filed Appeals and they have been returned. CCI Linehan has been attempting to assist me. Hearing postponed pending availability of witness. HASKIN explained that he could not work due to chronic pain in his neck and shoulder due to osteoarthritis.

2-16-05 hearing reconvened with CCI Linehan present. Linehan had a packet of papers. She stated that she had been assisting HASKIN in resolving his medical issues. She had advised him to submit a copy to the CDW and one to the Warden. HASKIN received a notice back, which stated they do not except copies of Appeals. A blank 602 was attached. Neither Linehan nor HASKIN understood where the notice came from. HASKIN went on to explain that he has been attempting to resolve his medical issue for 2 months. Around 10-29-04 a Dr Wilson read some x-rays and stated that the deterioration was worse in his neck than he thought. Dr. Wilson scheduled HASKIN for additional test and asked him about cortisone shots. HASKIN explained that he had a shot about 4-5 years ago. The problem started when medical discovered that his medical file was missing around 12-2-04 and they said they could not treat him because he did to have a medical file. The file was located on 12-29-05. Since then he was treated by Dr. Bui but only for a change in prescription. HASKIN claims to have been referred to CMO Dr. Williams by MTA's Walker and McCloskey, Nurse Daniels and another nurse. On 2-16-05 SHO left a message with the CMO's secretary.

On 2-17-05 SHO contacted the CMO, Dr. Williams. All of the above information was relayed to Dr. Williams. Dr. Williams had a nurse White write a 3-day lay-in for HASKIN. The lay-in was written pending a proper medical review of the issues claimed by HASKIN.

**Finding:** NOT GUILTY of the Div. F (3) (California Code of Regulations, Title 15, Section 3315 (a)(3)(J)) offense REFUSAL TO REPORT TO WORK. This finding is based upon the following preponderance of evidence:

1. HASKIN claimed of having chronic pain from October.
2. HASKIN medical files were lost from 12-2-04 to 12-29-04

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| R. EGAN | | Correctional Lieutenant | 2/21/05 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |

Attachment, A-25(w)

January 13, 2005

Beginning of October, severe pain neck and left shoulder. Dr. Wilson ordered xrays of both areas.

10-27-04, xray results consultation with Dr. Wilson. Good news, bad news. Left shoulder not as bad as expected, bad news, neck xray looks terrible. Several tests ordered along with teleortho conference appointment request, plus a 30 day review. Medication prescribed (Bextra-Celebrex).

11-29-04, 30 day review appointment for Dr. Wilson, already missed several days of work due to severe pain. Would resolve problems with Dr. Wilson. Unfortunately Dr. Wilson left early that day, was seen by Dr. Striker instead, nothing resolved. I'm urgent need of paper work for my loss," Jeff Scoozy, P.I.A. Chair Upholstery.

11-29-04, new request filed to be seen by Dr. Wilson.

12-2-04, Teleortho conference with Dr. Tangi of U.C. Davis sports clinic. Explained about severe pain in neck and left shoulder to him, along with being absent from my job for several days. He was very evasive when I asked about my xray results, I was actually given almost no information. Although, paper work was to be sent to my by boss temporarily placing me on medical hold, along with ordering physical therapy for my shoulder.

12-3-04, asked M.T.A. Morrow if paper work had been sent to my boss, no, but I will request your chart and take care of it.

12-6-04, Again asked M.T.A. Morrow about my paper work plus my request to see

Dr. Wilson. Once again, "I will request your chart and you will be seen."

12-6-04 – 12-17-04, I received a new reply, "We are unable to locate your chart."

12-17-04, I met with Lieutenant Eagan and explained my problems. He told me to immediately file an Inmate Appeal to cover my tracks, although he would watch for any disciplinary paperwork. My appeal was to be hand delivered by M.T.A. Morrow to Dr. Calvo.

12-20-04, when I inquired with M.T.A. Morrow regarding the delivery of my appeal, she exclaimed that she delivered it to the Appeal's Office. I told her that wasn't the correct procedure; you can't bypass the informal level. "Oh well."

12-29-04, I asked Officer Brodi to see the facility Captain because it had been 12 days with no reply from my appeal, the matter was becoming quite urgent. Also that on a daily basis from 12-17-04 – 12-29-04 when I asked M.T.A. Morrow if my chart has been located, I need to be seen by the Doctor, I received a very arrogant reply. "We refuse to do anything until your appeal is answered." Officer Brodi contacted Loretta in the Appeals' Office who explained that I need to file a back-up appeal ~~explaining~~ explaining everything I have done up to date and send it directly to her, which I did.

12-23-04, while this was taking place I was seen by Dr. Cappozolli, the Neurologist. My chart was still not

available, although he conducted some preliminary
tests. He confirmed that I did have advance
stages of neuropathy, along with the need
for an immediate M.R.I. He also asked me
if I needed corrective surgery if I would allow
it. "yes, if the Surgeon was highly qualified
and to my liking only." I also learned that
the cause of my neuropathy might well be
the T.B. Medication was given while at
California Men's Colony from 1993-1995. He
also confirmed advance stages of osteoarthritis
1-3-05, I received through Institutional mails
both Appeals dated 12-17-04 and 12-29-04. The
original appeal dated 12-17-04 showed a
return date of 12-29-04 the date of my
second appeal, quite a coincidence. The reply
I was given is that my chart was located,
then a kind of arrogant remark, "Thank you
very much." But! there was no reply to
my other two requests, paper work to my
Supervisor (Jeff Scoozy) and to be seen
by Dr. Wilson as soon as my chart
was located. The appeal that was requested
by Loretta in the Appeal's Office dated
12-29-04 was also returned refusing
processing for bypassing the informal
level. This was in total disregard
as to what I was told by Loretta to
do!
1-3-04, both appeals were sent back
together for re-processing with full
explanations on my part.
1-5-04, both appeals were returned to me.
The appeal dated 12-17-04 had attached
to it a cover letter cancelling my
appeal for unrelated unsubstantial

reasons. The Appeal's Office illegally refused to process my appeals. See copies of both cover letters enclosed.

1-12-05, I inquired through M.T.A Walber why I haven't been seen by Dr. Wilson since my chart was located on 12-29-04? She told me to file another request and it would be given directly to Nurse White. When I was returning to the H-Unit Clinic to turn in my request, I caught Nurse White outside the Administration Office door and explained my situation. She immediately returned to the clinic and gave my request to M.T.A. Morrow and told her to request my chart, I would be seen that day. At approximately 1:45 P.M. when she was leaving to go home, I stopped her at the ped-gate and asked what happened. "I was to busy today, I have your chart, you will be seen tomorrow."

1-13-05, When I tried to ask M.T.A. Walber heading to the ped-gate at 12:30 that day what happened again, she completely ignored me.

This is when I met with Counselor Linehan. I have been maliciously denied medical treatment for close too three months. Every avenue I have tried to use to resolve this urgent matter has maliciously been thwarted.

All this information has been supplied to an Attorney in Anthony Serra's Office.

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                        PAGE    2    OF    2

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| B-96040 | HASKIN | 05-3H-01-101 | SQSP | 2-21-05 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☒ HEARING | ☐ I.E. REPORT | ☐ OTHER |
|---|---|---|---|---|---|

3.  HASKIN repeatedly signed up for sick call to have the chronic pain addresses.
4.  MTA's Walker, Daniels and McCloskey referred HASKIN to CMO DR. Williams.
5.  CCI Linehan attempted to resolve the medical issue via Inmate Appeals. The appeals were returned with notations but they did know who returned the appeals.
6.  Dr. Wilson reviewed x-rays and stated to HASKIN that the deterioration of his neck was worse that he thought.
7.  HASKIN's medical file was lost preventing him from prescribing medication.
8.  ON 2-18-05 CMO, Dr. Williams determined due to the medical problems HASKIN was issued a 3-day lay-in.

Disposition: Dismissed

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED | |
|---|---|---|---|
| R. EGAN | Correctional Lieutenant | 2-21-05 | |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |

State of California    *Attachment; A-5 (27.)*    Department of Corrections

## INMATE/PAROLEE APPEALS SCREENING FORM

NAME: ___Haskin___    NUMBER _B96040_    SQP LOG No: _____

(OTHER LOG NO)_____    ISSUE:_____    AREA OF ORIGIN:_____

HOUSING UNIT _4 - H 17_    NOTE_____

### YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

____1. The action or decision being appealed is not within the jurisdiction of the Department.
    ____a. **BPT Issue, file BPT 1040 form & submit to C&PR**    ____b. Other, see comments

____2. You have submitted a duplicate appeal on the same issue.    Check one:
    ____Your first appeal was screened out on _____ for _____
    ____Your appeal is currently under review at the_____level.
    ____Your first appeal has been completed at the _____level.

____3. You are appealing an action not yet taken.

____4. You may not submit an appeal on behalf of another inmate.

____5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.

| | | |
|---|---|---|
| ____CDC-115 Hearing Officer's or Disciplinary Committee Results | | ____Supplemental Reports to CDC-115. |
| ____CDC-115A with I.E./D.A. info. | ____CDC-128B1 Hearing Notif. | ____CDC-839/840 Class/Reclass Score Sheet |
| ____CDC-128G ICC/UCC Clas.Com. | ____CDC-128G Init. Clas. Com. | ____CDC-128G CSR Endorsement Chrono |
| ____Lab Results Sheet | ____CDC-114D Lock Up Order | ____CDC-1030 Confidential Disclosure |
| ____CDC-7219 Medical Report | ____Legal Status Summary | ____CDC-128C Medical Chrono |
| ____Board of Control Claim Form (attached) | | ____Property Inventory Slip |
| ____Receipts:____Qtr.Pkg. Inventory Slip | ____CDC-143 Property Transfer Slip | ____Cell Search Slip |
| ____You have failed to complete Section_____ | | ____Sign & Date Section_____ |
| ____Other:_____ | | |

____6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

____7. This issue has been appealed under the assigned SQP Appeal Log No._____.  Per DOM section 54100.10.1, a copy of the reviewer's response:    ____Is attached    ____Will be forwarded to you upon completion

____8. Abuse of the Appeal Procedure. See Comments.

Comments: _You requested your medical chart be found ; be seen by a doctor. You were seen. Now you are adding on issues and changing the appeal which you cannot do. Appeal cancelled. It is your responsibility to get the paperwork to your work supervisor NOT medical!_

~~R. CHANDLER-DACANAY~~
**R. CHANDLER-DACANAY**
CC-II, Appeals Coordinator

~~W Jepperson~~
**W. JEPPESON**
CC-II, Appeals Coordinator    Date __1-4-5__

This screening action may not be appealed unless you allege that the above reason is inaccurate.  In such case, please return this form to the Appeals Coordinator with the necessary information.

### PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

_Lt. Egan confirmed that appeal issues were not changed, appeal should not be cancelled_

CDC-695 (REVISED 9/03)

STATE OF CALIFORNIA                                                                                              DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

| | Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|---|
| | 1. | | 1. | | |
| | 2. | | 2. | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Haskin Leonard | B-91040 | PT 4 Chair Unl-2 Toren | 4-H-171 |

**A. Describe Problem:** Approximately 3 months ago I was seen by Dr. Wilson with the complaint of severe pain within my neck and left shoulder. At that time he ordered an x-ray exam to be conducted of both areas. On 10-27-04 I was once again seen by Dr. Wilson for a consultation regarding my x-ray results. I was informed that the x-rays of my neck showed some serious problems and he ordered several tests to be conducted along with a tele-Ortho conference. Since my

If you need more space, attach one additional sheet.

**B. Action Requested:** That my medical chart be immediately located! That the necessary paper work be issued to by by boss excusing me for the days I've missed work! That I receive proper medical treatment immediately so I may return to work.

Inmate/Parolee Signature: _Leonard Haskin_                               Date Submitted: _12-17-04_

**C. INFORMAL LEVEL** (Date Received: _12/29/04_ )

Staff Response: I found your chart it is in Medical records Thanking very much.

Staff Signature: _Lillian Jimenez MA_                                      Date Returned to Inmate: _12/29/04_

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Since my chart was located on Wed. 12-29-04 and one of the main reasons for finding my chart was to be seen immediately by Dr. Wilson, and considering that todays date is Jan. 3, 2005, then one of the major actions

Signature: _Leonard Haskin_                                                 Date Submitted: _1-3-05_

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

JAN 0 4 REC'D

see second attached sheet

initial appointment on 10-27-04, I have run into serious trouble in performing my job assignment due to severe pain. On 11-3-04 I even returned to H-Unit at 12:15 because of severe pain. On 11-29-04 I was called out on to medical by Dr. Wilson for a 30 day review. At this time I was going to discuss the problems I was having regarding pain and ask to be given a steroid shot so I could properly perform my job assignment. Unfortunately, since Dr. Wilson left early that morning, I had to be seen by another Dr. who was unfamiliar with my case, and was basically unable to resolve any issue. On 12-2-04 I was seen by the Tele-Ortho physician and explained to him of the problems I was having and that I had been unable to report to my job assignment for approximately a little over a week already. At that time the Doctor was going to request that I start physical therapy and I was to be placed on temporary medical hold until I was able to return to work. Also paper work was to be sent to my supervisor Jeff Scoozy with a full explanation, I don't want to loose my job assignment! On 12-3-04, I asked M.T.A. Walker if my paper work was sent to my boss, "no, but I'll ask for your chart so it can." On 12-6-04 I asked M.T.A. Morrow if my paper work had been sent to my boss, "no, but I will ask for your chart once again." Every day to date (12-17-04) I have been asking to be seen by Dr. Wilson and my response is no chart, you can not be seen without a chart. Because of this charade, I am about to loose my job assignment and receive disciplinary action.

Attachment, A-5(27)

I am also being denied my rights to proper medical treatment per Title 15 Section 3350.

Attachment; A-8(i)

# RAYTEL
## MEDICAL IMAGING
An **SHL** Telemedicine Company
### SAN FRANCISCO
*in association with SFRMI, RC.*

*This Center is Accredited by the American College of Radiology (ACR) for MRI*

(4H 17)

FILE

## MAGNETIC RESONANCE IMAGING – CERVICAL SPINE

**PATIENT:**   **HASKIN, LEONARD**   B 96040
**EXAM DATE:**   6/15/2005   **DOB:** 11/14/1951   **ID#:** 59902
**REFERRED BY:**   E. Khoo, MD
Neumiller Infirmary-San Quentin Prison
San Quentin, CA  94964
Phone: 454-1460 Fax: 455-5011

per, mp)
6/17/05

---

**IMPRESSION:**
1. Small central protrusion at C2-3 without significant effect on neural elements.
2. Small to moderate central protrusion at C3-4, with asymmetric degenerative joint disease and bilateral neural foraminal stenosis.
3. Broad based bulge and uncinate greater than facet hypertrophic changes at C4-5, with mild central stenosis and marked bilateral neural foraminal stenosis.
4. Broad based bulge and uncinate greater than facet degenerative changes at C5-6, with mild central stenosis and moderate bilateral neural foraminal stenosis.
5. Broad based disc/osteophyte complex and uncinate greater than facet degenerative changes at C6-7, with mild right and mild to moderate left neural foraminal stenosis.

---

**CLINICAL INFORMATION:** Bilateral upper extremity radiculopathy.

**COMPARISON:** None available.

**TECHNIQUE:** Sagittal spin echo T1 and fast spin echo T2. Axial fast spin echo T2 and fast gradient echo T1 weighted.

**EXAMINATION FINDINGS:** Vertebral body heights, alignment, lordosis and marrow signal intensity are normal.

Visualized posterior fossa elements are normal in structure and signal intensity. No tonsillar herniation, intradural soft tissue mass, or epidural fluid collection is present. Paravertebral soft tissues are unremarkable.

CONTINUED

---

*Specializing in Musculoskeletal, Neurological and Body Imaging*
3440 California Street, San Francisco, CA 94118-1837 ◆ Phone (415) 922-6767 ◆ Fax (415) 563-0468 ◆ www.raytel.com

Attachment, A-8(1)

# RAYTEL
## MEDICAL IMAGING

An SHL Telemedicine Company

### SAN FRANCISCO
in association with SFRMI, P.C.

*This Center is Accredited by the American College of Radiology (ACR) for MRI*

RE: HASKIN, LEONARD
MRI CERVICAL SPINE
6/15/2005
Page 2

### Findings at Specific Levels:

**C2-C3:** Small annular tear and protrusion, without stenosis.

**C3-C4:** Small to moderate central protrusion, which causes moderate effacement of the ventral CSF space, and abuts the ventral surface of the spinal cord without indenting it. Moderate bilateral facet and mild bilateral uncinate hypertrophic changes are seen. There is moderate left and mild right neural foraminal stenosis at this level.

**C4-C5:** Moderate disc desiccation with mild to moderate broad based bulge, mild bilateral facet hypertrophic changes, and moderate to marked bilateral uncinate hypertrophic changes. There is moderate effacement of the ventral CSF space, without flattening of the spinal cord. Moderate to marked bilateral neural foraminal stenosis is seen at this level.

**C5-C6:** Moderate to marked disc desiccation with moderate broad based bulge, moderate bilateral facet hypertrophic changes, and moderate to marked bilateral uncinate hypertrophic changes. There is moderate effacement of the ventral CSF space, without flattening of the spinal cord. Moderate bilateral neural foraminal stenosis is seen.

**C6-C7:** Moderate disc desiccation with marked loss of disc height and moderate anterior disc/osteophyte complex. Mild to moderate posterior disc/osteophyte complex is seen, with mild bilateral facet and moderate bilateral uncinate hypertrophic changes. There is mild effacement of the ventral CSF space, without flattening of the spinal cord. Mild right and mild to moderate left neural foraminal stenosis is seen at this level.

CONTINUED

*Specializing in Musculoskeletal, Neurological and Body Imaging*

Attachment: A-8(l)



**RAYTEL**
MEDICAL IMAGING

An SHL Telemedicine Company

SAN FRANCISCO
*in association with SFRML P.C.*

*This Center is Accredited by the American College of Radiology (ACR) for MRI*

RE: HASKIN, LEONARD
MRI CERVICAL SPINE
6/15/2005
Page 3

<u>C7-T1</u>: Mild disc desiccation, without bulge or stenosis.

Thank you for your referral.

Scott A. Werden, MD
SAW/ams
DT: 6/15/2005

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 9/13/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H UNIT | 9/14/2005 | 0900 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: MD | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskin | B96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| J. Snuley | 7-5-05 | PIA |
| PASS TO: | DATE: | TIME: |
| H-Unit | 7-5-05 | 0720 |
| REASON: | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 9/29/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 9/30/2005 | 1030 HRS |
| REASON: | | |
| NEUROLOGY | | |
| AUTHORIZED BY: | REQUESTED BY: MENDIUS | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 7/7/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 7/8/2005 | 0900 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: MD | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| ARCHAMBEAU | 12-23-05 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| T.T.A | 12-23-05 | 1300 |
| REASON: SEE LT BARKER | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 7/6/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 7/11/2005 | 0900 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: MD | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| ARCHAMBEAU | 12-23-05 | 4H-17L |
| PASS TO: | DATE: | TIME: |
| H-UNIT MEDICAL | 12-23-05 | 11:00 |
| REASON: SEE MTA FORREST / MTA MAC APPROVAL | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 9/12/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H UNIT | 9/13/2005 | 0845 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: MD | |
| DEPART TO: | TIME: | RECORDED BY: |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 7/4/2006 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY | DATE: 7/5/2006 | TIME: 0845 HRS |
| REASON: PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: 1015 | RECORDED BY: |

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 3/16/2006 | PASS FROM: H-UNIT |
| PASS TO: H UNIT | DATE: 3/17/2006 | TIME: 1300 HRS |
| REASON: SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: DR Line | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 8/13/2006 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY GRIFEN | DATE: 8/14/2006 | TIME: 1300 HRS 0900 |
| REASON: PHYSICAL THERAPY | PER PHYSICAL THERAPY I/M HASKIN CHANGE TO 0900 | |
| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST | |
| DEPART TO: | TIME: 9:38 | RECORDED BY: RiHomp,P.T. |

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 5/30/2006 | PASS FROM: H-UNIT |
| PASS TO: H UNIT | DATE: 5/31/2006 | TIME: 1045 HRS |
| REASON: H UNIT CLINIC | | |
| AUTHORIZED BY: | REQUESTED BY: DR Line | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 8/15/2006 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY | DATE: 8/16/2006 | TIME: 0900 HRS |
| REASON: PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: 0100 | RECORDED BY: |

---

PRIORITY INMATE DUCAT — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME KIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: ASSEY, LT. | DATE: 6/27/2006 | PASS FROM: H-UNIT |
| PASS TO: MARY | DATE: 6/28/2006 | TIME: 0945 HRS |
| REASON: PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 8/29/2006 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY | DATE: 8/30/2006 | TIME: 0830 HRS |
| REASON: PODIATRY | | |
| AUTHORIZED BY: | REQUESTED BY: GRIFFITH | |
| DEPART TO: | TIME: | RECORDED BY: |

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

## PRIORITY INMATE DUCAT

| INMATE'S NAME HASKIN | CDC #: B96040 | HOUSING #: 04 H 017L |
|---|---|---|
| ISSUED BY: P. MASSEY, LT. | DATE: 7/13/2006 | PASS FROM: H-UNIT |
| PASS TO: INFIRMARY | DATE: 7/14/2006 | TIME: 0915 HRS |
| REASON: UROLOGY | | |
| AUTHORIZED BY: | REQUESTED BY: GUILLORY | |
| DEPART TO: | TIME: | RECORDED BY: |

**Form 1 (top left)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/14/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/15/2006 | 1000 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST |
|---|---|
| DEPART TO: | TIME: 9:27 | RECORDED BY: Nittauft |

**Form 2 (top right)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/5/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/6/2006 | 0900 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST |
|---|---|
| DEPART TO: | TIME: 9:52 | RECORDED BY: Ai Honodvft |

**Form 3 (middle left)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 11/16/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 11/17/2006 | 0800 HRS |

REASON: PROSTHETIC CLINIC

| AUTHORIZED BY: | REQUESTED BY: M.D. |
|---|---|
| DEPART TO: H.E. | TIME: 815 | RECORDED BY: |

**Form 4 (middle right)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/7/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/8/2006 | 0900 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST |
|---|---|
| DEPART TO: | TIME: | RECORDED BY: |

**Form 5 (lower right of middle)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/12/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/13/2006 | 0815 HRS |

REASON: PODIATRY

| AUTHORIZED BY: | REQUESTED BY: GRIFFITH |
|---|---|
| DEPART TO: | TIME: | RECORDED BY: |

**Form 6 (lower left)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| T.W. ROSSETTI, LT. | 3/12/2007 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 3/13/2007 | 0900 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST |
|---|---|
| DEPART TO: | TIME: | RECORDED BY: |

**Form 7 (bottom left)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| T.W. ROSSETTI, LT. | 3/12/2007 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 3/13/2007 | 0900 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST |
|---|---|
| DEPART TO: | TIME: 9:53 | RECORDED BY: Ai bnoT |

**Form 8 (bottom right)**

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
CDC 129 (7/88)

# PRIORITY INMATE DUCAT

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| P. MASSEY, LT. | 9/12/2006 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 9/13/2006 | 1000 HRS |

REASON: PHYSICAL THERAPY

| AUTHORIZED BY: | REQUESTED BY: PHYSICAL THERAPIST |
|---|---|
| DEPART TO: | TIME: 9:00 | RECORDED BY: Ai tnofhRiT |

Attachment

**PRIORITY INMATE DUCAT**

CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| D.GRAHAM, LT. | 12/16/2007 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 12/17/2007 | 1200 HRS |
| REASON: | | |
| NEUROSURGERY | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | M.D. | |
| DEPART TO: | TIME: | RECORDED BY: |

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date    :    June 1, 2006

To      :    Jonathan L. Wolff
             Supervising Deputy Attorney General
             State of California Department of Justice

Subject:    **PRISON LAW OFFICE REQUESTS FOR REVIEW OF *PLATA* INMATE CONCERNS
            RELATING TO INMATE LEONARD HASKIN, B-96040**

Pursuant to the Stipulation For Injunctive Relief agreed to in re *Plata v. Schwarzenegger*, the
Health Care Manager at San Quentin State Prison (SQ) has provided the following
information in response to the questions asked by Alison Hardy of the Prison Law Office.

1. Is Mr. Haskin currently prescribed Flomax?  If so, is it in his possession?  Please
   explain.
   *Dr. Williams personally visited with Mr. Haskin on May 25, 2006.    On
   April 25, 2006, Mr. Haskin received 30 Flomax with a renewal on May 25, 2006.*

2. Please explain the delay in Mr. Haskin receiving his prostate medication.
   *A review of Mr. Haskin's UHR reveals that a physician did order Flomax through
   April 18, 2006. His order was renewed on April 25, 2006.*

3. Is Mr Haskin currently having trouble urinating?
   *Mr. Haskin states he does experience occasional difficulty urinating in the evening.*

4. What is Mr. Haskin's current treatment plan?
   *A request for urology consult was submitted on May 25, 2006, to explore therapeutic
   options (medically or surgically).*

Thank you for your assistance in this matter.  Please do not hesitate to contact me at
(916) 327-1205, if you have any questions.


VICKI O'SHAUGHNESSY
Staff Services Manager II
Clinical Operations Support Section
Division of Correctional Health Care Services

cc:  Jessica Devencenzi, Staff Counsel, Legal Affairs Division (By Electronic Mail)
     Alison Hardy, Prison Law Office (By Electronic Mail)
     Karen Saylor, M.D., Health Care Manager (A), SQ
BK  Medical Appeals Analyst, SQ

Attachment-D13A(2)



# PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Rachel Farbiarz
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

12/7/2006

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin:

I write in response to our conversation on 11/30/06. In the conversation, you stated that you had an MRI done over a year ago, and that you were referred to a neurosurgeon, who said that he wanted an up-to-date MRI before performing surgery. You express your concern that it would take weeks or months to have this MRI performed.

I am sorry to hear about this situation. After reviewing the documents we have on file, we will unfortunately need for you to exhaust your administrative remedies on this issue before we can advocate on your behalf.

Until I hear from you again, I wish you the best.

Sincerely,

Sam Weiner
Litigation Assistant under Alison Hardy

Enclosures: None

Board of Directors
Penelope Cooper, President • Michele Walkin Hawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

Attachment v.02226(8)



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Keith Wattley

7/18/2006

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin,

As you know, we wrote to the Attorney General on 5/9/2006 under procedures set forth in the *Plata* Stipulation to request further information about your Flomax. I spoke with Dr. Saylor about your concern at a telephone conference on 7/14/2006. Please see the enclosed memo for further information that was provided to us.

Dr. Saylor said that you were seen on 7/14/06 by the urologist. I also spoke to you on 7/17/2006 and you confirmed this statement, as well as informing me that you are still taking Flomax.

During our phone conversation, you also informed me that you have been waiting over three months for results from an upper-GI. I understand that you are very frustrated because you have had to wait so long for these results, and it is inhibiting you from seeking further treatment from specialists. Unfortunately, our office is unable to assist you with this concern at this time. You must attempt to exhaust your administrative remedies before we can determine whether we can assist you.

If you have specific information or documents showing that the information told to us by prison officials is not correct, please contact us. Unless there is such information, we cannot take further action regarding your particular medical care concern, and we may not be able to take further action in any event, depending on the nature of your medical concern. We advise you to continue using the "sick call" process to bring your concerns to the attention of medical staff. If your concern is not resolved by medical staff, you should file and pursue a 602 administrative appeal unless you have already received a Director's Level response to an appeal. You can send this office any newly exhausted medical appeal (602 with Director's Level response).

I wish you the best.

Sincerely,

Nina Frank
Litigation Assistant under Alison Hardy

Enclosures: CDC faxed Memo; HB ch. 8; SASE

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Honorable John Burton • Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns

Attachment A-12(A)



## PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964-0001
Telephone: (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

*Director:*
Donald Specter

*Staff Attorneys:*
Susan Christian
Steven Fama
Brittany Glidden
Penny Godbold
Megan Hagler
Alison Hardy
Millard Murphy
Sara Norman
Keith Wattley

6/12/2006

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin,

As you know, we wrote to the Attorney General on 5/9/2006 under procedures set forth in the *Plata* Stipulation to request further information about your Flomax. I spoke with Dr. Williams about your concern at a telephone conference on 6/9/2006. Please see the enclosed memo for further information that was provided to us.

Dr. Williams said that you now have your Flomax in your possession. He told us that the delay in receiving this medication was due to the prescribing doctor not drafting a follow-up order. He also informed us that when he spoke with you about a week ago, you told him that you are only having trouble urinating at certain times of the day. He told us that he suggested that you take your medications later in the morning to alleviate these symptoms. Dr. Williams also informed us that he submitted a request for you to see the urologist. During our next call, we plan to ask about the scheduling of this appointment.

Since there are issues that are still unresolved, I intend to discuss your case with the Health Care Manager at SQ again during our next scheduled call on 7/14/06. I will contact you again once I receive further information. I would appreciate it if you would keep me updated regarding any treatment or pending treatment you receive. I am enclosing a postage-prepaid envelope for your convenience.

Sincerely,

Nina Frank
Litigation Assistant under Alison Hardy

Enclosures:  CDC faxed Memo; SASE

Board of Directors
Marshall Krause, President • Michele WalkinHawk, Vice President
Honorable John Burton • Penelope Cooper • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts



PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964-0001
Telephone (415) 457-9144 • Fax (415) 457-9151
www.prisonlaw.com

Director:
Donald Specter

Staff Attorneys:
Susan Christian
Steven Fama
Rachel Farbiarz
Penny Godbold
Megan Hagler
Alison Hardy
Vibeke Martin
Millard Murphy
Sara Norman
Judith Rosenberg
Zoe Schonfeld
E. Ivan Trujillo

2/21/2008

Leonard Haskin, B-96040
SQ
PO Box (See CDC # near name)
San Quentin, CA 94974

Dear Mr. Haskin:

I am writing to let you know that based on the phone conversation we had on 2/1/08, we will be re-opening your file. Nonetheless, in order to document your concerns, I still encourage you to continue to pursue this matter through the 602 appeals process as well.

We will discuss your medical care and health concerns at our next scheduled HCM conference call. We will contact you again once the call has taken place. We have submitted the following to the Attorney General's Office:

On 2/1/2008 we received a call from Mr. Haskin. At that time he informed us that in November he underwent surgery to address urological problems. He states that he received a number of post-surgical recommendations, including urinalysis and a prescription for Paradione. However, Mr. Haskin informs us that he did not receive these treatments, and states that San Quentin medical staff told him they have not been able to locate any post surgical recommendations. He states that he saw his PCP on 1/14, and she said that she would inquire about this issue, but as of 2/1 he has not received a response.

1. Please briefly describe Mr. Haskin's November surgery, post-operative care at San Quentin and current medical status.

2. What post-operative recommendations, if any, has San Quentin medical staff received following Mr. Haskin's surgery?

3. Has Mr. Haskin been seen regularly by his PCP following his surgery? Is it appropriate that he be seen regularly? Please explain.

Sincerely,

Tobias Smith
Litigation Assistant under Alison Hardy

Enclosures: PI;

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Honorable John Burton • Felecia Gaston • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

INMATE COPY

Attachment B(1)

07 00204

INMATE COPY

STATE OF CALIFORNIA

**INMATE/PAROLEE**
**APPEAL FORM**

CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region

1. ___SQ___     2. _____

Log No.

1. __07.00209__     2. _____

Category

__1__

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure.

NURSE PICKET    NC

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|-----------------|
| HASKIN, L | B-96040 | Medically Unassigned | 4-H-17L |

A. Describe Problem: On Sunday evening of Dec. 24, 06 at approximately 1900 hrs. I began to have extensive vommiting and diarrhea every (30) minutes. At approximately 0001 hrs. I approached Officer Perry at the podium and explained that I had been continuously vommiting and suffering from diarrhea since 1900 hrs., also that I had a known history of stomach trouble already; I need immediate medical attention; please do a (man-down). At that time the first-watch

If you need more space, attach one additional sheet.

B. Action Requested: That all staff members medical and custody who were involved in this fiasco be immediately suspended without pay pending investigation of this matter. That this very Serious incident be immediately put under investigation.

Inmate/Parolee Signature: _Leonard Haskin_     JAN 1_ REC'D     Date Submitted: 1-1-07

C. INFORMAL LEVEL (Date Received: _JAN 10 REC'D_ )

Staff Response: _____

**Bypass**

Staff Signature: _____     Date Returned to Inmate: _____

JAN 17 REC'D

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**Bypass**

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

[    ]

Attachment B-36

Sergeant was called, in direct violation of Section (3354) regarding health care responsibilities and limitations of the Title 15 rules and regulations code, the First-Watch Sergeant took it upon himself to act as a health care employee and deny me badly needed medical attention. Section (3354) explicitly explains that only health care consultants shall be permitted, within the scope of their lisencure, to diagnose illness or, prescribe medication and health care treatment for inmates." No other personnel may do so." Once again at approximately 0300 hrs. after still continuously suffering from extensive vommiting/diarrhea I approched the podium and told Officer Perry that my symtoms have become increasingly worse that I seriously need medical attention, also that I was now becoming critically dehydrated. Officer Perry once again contacted the First-Watch Sergeant and explained that inmate (Haskin) was getting seriously worse, unfortunately the Seargeant again violating Section (3354) took it upon himself to deny me badly needed medical attention. At any point of time during this fiasco if by chance on M.T.A. was contacted, then that person was seriously negligent in performing his/her job duties! At 0520 hrs. I approached Officer Perry again and said, "what do I have to do to get some damned medial attention? For God's sakes I feel like I'm literally dying." Finally he took the initiative to write me a pass directly to the T.T.A. Clinic. At 0530 hrs. I barely made it to the Admin. Building and observed my third-watch dorm Officer Lee coming out of the M.S.F. Dorm and approach the Admin. Building, he stopped at the front door and asked what I needed. I then

JAN 17 RECD

Attachment; B(3)

Thank God I was brought in there. Over approximately 4 hours it took a full 4 liter bags of sterile fluids to bring my heart rate even back to (100) a somewhat safer level. I was lastly given an I.V. injection of prochorperazine and three prochorperazine 10mg. tablets. As I got ready to return to my dorm I was told no solid foods for at least 4 days, unfortunately this is where the first mistake was made. I wasn't issued any enlive nutrient drinks to sustain myself. The following day of Dec. 26, 06 I approached male nurse (Acker) and explained to him my situation, he became very unprofessional and stated thusly, "you got enough fluids yesterday I've nothing for you." I was very unprofessionlly denied any way to sustain myself for over 4 days until the medical staff finally started handing out (enlive). I was never treated so disrespectfully my entire life until this Fiasco. The only three people who showed professionalism and respect were, Sergeant Collier, and the two male nurses in the T.T.A. Clinic.

JAN 17 REC'D

1-2-07

C. M. O. Saylor;

The main reason that I am sending this appeal directly to you at the informal level is many fold. First, I have previously brought this matter to the attention of your Scenior M.T.A. with no response. Secondly, I tried to obtain staff assistance regarding who to direct this appeal to, only to face a dead end. Lastly, the severity of the issues at hand, also that they deal with violations regarding medical protocol, which in turn put my health and well-being at great risk.

I will deeply appreciate your assistance in getting to the bottom of this urgent matter.

Thanking you in advance.

Leonard Washin, B-96040

JAN 17 REC'D

Attachment, #6.5

1-2-07

Mr. Robert Sillen,

I am sending you a copy of an inmate appeal which I sent to C.M.O. Kathleen Taylor. The reason for sending you a copy is due to the severity of the issues at hand, and also that they deal directly with extremely serious violations of professional medical protocol. There is no question that my health and well-being were put at great risk by this astronomic fiasco of unprofessionalism. I feel sir that (4 liter bags of fluids) to finally rehydrate me was extensive. At (55) years of age, a heart rate of (145-150) was definitely at a critical stage.

I will deeply appreciate your assistance at getting to the root of this fiasco.

Thanking you in advance.

Leonard Haskin, B-96040

JAN 0 5 REC'D

JAN 17 REC'D

1-8-7 See 602 left hand corner + CDCR 695 dated 1-8-7

# INMATE/PAROLEE APPEALS SCREENING FORM

AME: Haskin  NUMBER B96040  SQP LOG No:_____

(OTHER LOG NO)_____  ISSUE:_____  AREA OF ORIGIN:_____

OUSING UNIT_____  NOTE_____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

___1. The action or decision being appealed is not within the jurisdiction of the Department.
_____a. **BPT Issue, file BPT 1040 form & submit to C&PR** _____b. Other, see comments

___2. You have submitted a duplicate appeal on the same issue.  Check one:
_____Your first appeal was screened out on _____for _____
_____Your appeal is currently under review at the_____level.
_____Your first appeal has been completed at the _____level.

___3. You are appealing an action not yet taken.

___4. You may not submit an appeal on behalf of another inmate.

___5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.
_____CDC-115 Hearing Officer's or Disciplinary Committee Results _____Supplemental Reports to CDC-115.
_____CDC-115A with I.E./D.A. info. _____CDC-128B1 Hearing Notif. _____CDC-839/840 Class/Reclass Score Sheet
_____CDC-128G ICC/UCC Clas.Com. _____CDC-128G Init. Clas. Com. _____CDC-128G CSR Endorsement Chrono
_____Lab Results Sheet _____CDC-114D Lock Up Order _____CDC-1030 Confidential Disclosure
_____CDC-7219 Medical Report _____Legal Status Summary _____CDC-128C Medical Chrono
_____Board of Control Claim Form (attached) _____Property Inventory Slip
_____Receipts:____Qtr.Pkg. Inventory Slip _____CDC-143 Property Transfer Slip _____Cell Search Slip
_____You have failed to complete Section_____ _____Sign & Date Section_____
_____Other:_____

___6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

___7. This issue has been appealed under the assigned SQP Appeal Log No._____.  Per DOM section 54100.10.1,
a copy of the reviewer's response: _____Is attached _____Will be forwarded to you upon completion

___8. Abuse of the Appeal Procedure. See Comments.

Comments: _Please submit your complaint on
the attach 602 and return to
the Inmate Appeals office for process
ing._

R.CHANDLER-DACANAY  W. Jepperson
CC-II Appeals Coordinator  W. JEPPESON
JAN 17 REC'D  CC-II, Appeals Coordinator  Date 1-8-7

This screening action may not be appealed unless you allege that the above reason is inaccurate.  In such case, please return this
form to the Appeals Coordinator with the necessary information.

## PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

CDC-695 (REVISED 9/03)

State of California

# Memorandum

Date  :  **March 1, 2007**

To    :  **Haskin, B96040**

Subject:  **STAFF COMPLAINT RESPONSE - APPEAL # 07-00209-**

**APPEAL ISSUE:**  Complaint Against Staff

**DETERMINATION OF ISSUE:**  A review of the allegations of staff misconduct presented in the written complaint has been completed.  Based upon this review your appeal has been handled as follows:

☒ PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the conclusion of any internal affairs investigation)

**SUMMARY FOR APPEAL INQUIRY:**
You allege that on December 24, 2006 you became very ill, which lasted for several days.  You stated that you received several liters of IV Fluid in the TTA during the time of this illness. You alleged that LVN Picket was in H Unit on December 26, 2006 and treated you in an unprofessional manner when you requested Enlive.  Upon interview, you stated that you chose not to pursue the complaint against LVN Picket at this time.

**FINDINGS FOR AN APPEAL INQUIRY:**
Your appeal is PARTIALLY GRANTED at the ☒ First level, as an inquiry into your allegation has been conducted.    ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.  As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates.  Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.   If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review.   Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

_____, SRN II          3/1/7
S. Grove, Supervising Registered Nurse II                Date

# INMATE/PAROLEE APPEALS SCREENING FORM

NAME: *Haskin* NUMBER *B 96040* SQP LOG No: _____

(OTHER LOG NO)_____ ISSUE:_____ AREA OF ORIGIN:_____

HOUSING UNIT  *4 H17*                    NOTE_____

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

__1. The action or decision being appealed is not within the jurisdiction of the Department.
　　　___a. BPT issue, file BPT 1040 form & submit to C&PR　　　　___b. Other, see comments

__2. You have submitted a duplicate appeal on the same issue.  Check one:
　　　_____Your first appeal was screened out on _____for _____
　　　_____Your appeal is currently under review at the_____level.
　　　_____Your first appeal has been completed at the _____level.

__3. You are appealing an action not yet taken.

__4. You may not submit an appeal on behalf of another inmate.

__5. You have not adequately completed the Inmate/Parolee Form (CDC 602) or attached the proper documents.
　　　_____CDC-115 Hearing Officer's or Disciplinary Committee Results　　_____Supplemental Reports to CDC-115.
　　　_____CDC-115A with I.E./D.A. info.　　_____CDC-128B1 Hearing Notif.　　_____CDC-839/840 Class/Reclass Score Sheet
　　　_____CDC-128G ICC/UCC Clas.Com.　　_____CDC-128G Init. Clas. Com.　　_____CDC-128G CSR Endorsement Chrono
　　　_____Lab Results Sheet　　_____CDC-114D Lock Up Order　　_____CDC-1030 Confidential Disclosure
　　　_____CDC-7219 Medical Report　　_____Legal Status Summary　　_____CDC-128C Medical Chrono
　　　_____Board of Control Claim Form (attached)　　　　_____Property Inventory Slip
　　　_____Receipts:_____Qtr.Pkg. Inventory Slip　　_____CDC-143 Property Transfer Slip　_____Cell Search Slip
　　　_____You have failed to complete Section_____　　　　_____Sign & Date Section_____
　　　_____Other:_____

__6. There has been too great a time lapse between when the action or decision occurred and when you filed your appeal.

__7. This issue has been appealed under the assigned SQP Appeal Log No._____.  Per DOM section 54100.10.1,
　　　a copy of the reviewer's response:　　　_____Is attached　　　_____Will be forwarded to you upon completion

__8. Abuse of the Appeal Procedure.  See Comments.

Comments: *Your appeal is not appropriate for formal level processing. You must provide proof of having received an informal level response*

*prior to submitting this appeal to the Appeals Office, for further processing. Reference CCR section 3084.2(c) which states: Place of Filing.*

*t the formal levels, the appeal shall be forwarded to the appropriate office or appeals coordinator within the time limits prescribed in*

*section 3084.6.  NOTE: as of 6/23/97, Appeals Office will not assign log numbers to informal appeals. Appeals will receive a log number*

*pon reaching the 1st formal level if necessary. Please take heed of this notice when preparing future appeals.* *Send to the*
*Medical Dept.*

CHANDLER-DACANAY　　　　　　W. JEPPESON
CC-II, Appeals Coordinator　　　　CC-II, Appeals Coordinator　　　Date *12-31-4*

This screening action may not be appealed unless you allege that the above reason is inaccurate.  In such case, please return this
form to the Appeals Coordinator with the necessary information. *Please follow instructions*

## PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE.

CDC-695 (REVISED 9/03)

STATE OF CALIFORNIA                                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ | 1. _____ | _____ |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Haskins, Leonard | B 76040 | P.I.A. Chair Upholsterer | 7-A-17L |

A. Describe Problem: On 12-2-04 I was seen by Dr. Jeffrey L. Tange for a Tele-Ortho consultation regarding xray results of my left shoulder and Cervical Spine. I informed him that due to severe chronic pain in my neck and left shoulder I had already missed approximately a little over a weeks worth of work and also my boss Jeff Scozzy needed paper work excusing me from work until I received some means of treatment. I was informed by Dr. Tange that he would order physical Therapy

If you need more space, attach one additional sheet.

B. Action Requested: That this matter be immediately investigated by proper assigned staff. That all parties involved receive disciplinary action of the highest degree. That my initial Appeal be immediately granted. That I be compensated for all loss of pay!

Inmate/Parolee Signature: _Leonard Haskins_                    Date Submitted: 12-29-04

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____                    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim                    CDC Appeal Number:

treatment for my shoulder and to be placed on temporary medical leave from work. The Tele-Ortho Nurse took my boss's name and extension number from me and said he would receive the necessary paper work. On 12-3-04 after finding out that my boss didn't receive paper work, I went to M.T.A. Walker who said she would ask for my chart and take care of the problem. On 12-6-04 again finding that my boss hadn't received any paper work as yet, I went and asked M.T.A. Morrow to check into the matter. She, once again said she would ask for my chart and resolve the problem. On 12-7-04 when enquiring again with M.T.A. Morrow, she exclaimed that my chart was unavailable. After receiving the same answer for approximately (2) two weeks on a daily basis, I consulted with Lieutenant Eagan regarding the problems I was having. He said I should file an immediate Inmate Appeal to cover my tracks. On 12-17-04 I delivered my appeal to M.T.A Morrow who was to hand deliver it to Chief Medical Officer Dr. Calvo that day. On 12-20-04, I asked M.T.A. Morrow if she delivered my Appeal, she informed me that it was delivered to the Appeal's Office. On a daily basis since 12-17-04 I have been asking if my Medical Chart has been located so I can receive medical treatment. I have been treated very disrespectfully by M.T.A. Morrow and Walker telling me there was nothing they would do until they received an answer on my Appeal. On 12-29-04 since (12) twelve days had elapsed with no response, I asked M.T.A Morrow once again what was happening. I received the same arrogant response, "there is nothing

I will do until I receive an answer on your Appeal." The continued responses finally made me suspicious, that is when on 12-29-07 I brought the matter to the attention of Officer Brodi who contacted your Office.

The deliberate misdirection of an Appeal is serious business, considering the consequences that it can cause. The Inmate Appeal is a legal process and should be treated as such by all individuals who handle them. The deliberate misdirection or destroying of an Appeal should deem serious disciplinary actions to all parties involved.

One thing that I forgot to mention is that a copy of my Appeal was sent by myself directly to Dr. Calvo.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| D. ALLEN, LT. | 12/23/2004 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 12/24/2004 | 0900 HRS |

REASON: NEUROLOGY

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| *(signature)* | CAPOZOLLI |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 3 N 067U |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| D. ALLEN, LT. *(signature)* | 8/10/2004 | NORTH BLOCK |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 8/11/2004 | 1430 HRS |

REASON: TELEORTHO

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| | MACAALAY |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskins | B96040 | |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| Wallen | 4/27/15 | |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| IH | | 1215 |

REASON: RN Triage unavail

ARRIVAL TIME: *(illegible)* unavail inmate Painful

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskin | B96040 | 4H17L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| J. Snovey | 11-3-04 | P1A |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| H-Unit | 11-3-04 | 1215 |

REASON: Medical

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 4H17 |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| Wat | 2-22-05 | |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| INFIRMARY | 2-22-05 | AM |

REASON: LAB

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**PRIORITY INMATE DUCAT** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| D. ALLEN, LT. | 11/28/2004 | H-UNIT |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| H-UNIT | 11/29/2004 | 0800 HRS |

REASON: H-UNIT CLINIC

| AUTHORIZED BY: | REQUESTED BY: |
|---|---|
| *(signature)* | SUMLER |

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKINS | B96040 | 4H17 |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| Wat | 2-2-05 | |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| H-Unit Clinic | 2-2-05 | 0830 |

REASON: RN Triage

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
**INMATE PASS** — CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| Haskins | B96040 | 4H17L |

| ISSUED BY: | DATE: | PASS FROM: |
|---|---|---|
| L Brade | 12-3-04 | H Unit |

| PASS TO: | DATE: | TIME: |
|---|---|---|
| OIC | 12-3-04 | 0945 |

REASON: Medical Phone Conference

| ARRIVAL TIME: | RECORDED BY: |
|---|---|

| DEPART TO: | TIME: | RECORDED BY: |
|---|---|---|

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**PRIORITY INMATE DUCAT**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 5/26/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 5/27/2005 | 1000 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MD | |
| DEPART TO:   TIME: | RECORDED BY: | |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 4H17 |
| ISSUED BY: | DATE: | PASS FROM: |
| | 2-7-05 | |
| PASS TO: | DATE: | TIME: |
| H-Unit Clinic | 2-7-05 | 0830 |
| REASON: | | |
| SICKCALL | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: 0930 | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**PRIORITY INMATE DUCAT**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 6/17/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT | 6/20/2005 | 0830 HRS |
| REASON: | | |
| SICK CALL | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | MD | |
| DEPART TO:   TIME: | RECORDED BY: | |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN, L. | B96040 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| MTA McCloskey | 1/9/05 | DORM 4 |
| PASS TO: | DATE: | TIME: |
| UCC TRIAGE | 1/10/05 | 0930 |
| REASON: | | |
| Must be seen & chart | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 417L |
| ISSUED BY: | DATE: | PASS FROM: |
| Archambeau | 2-25-05 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| O.I. C LAB | 2-25-05 | 11:20 |
| REASON: | | |
| LAB TEST | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: | TIME: | RECORDED BY: |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**INMATE PASS**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: B96040 | HOUSING #: |
|---|---|---|
| HASKIN | 8-21-05 | 4H17L |
| ISSUED BY: | DATE: | PASS FROM: |
| Archambeau | 8-21-05 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| H-UNIT MEDICAL | 8-21-05 | 0700 |
| REASON: | | |
| Staph infection on lefthand | | |
| ARRIVAL TIME: | RECORDED BY: | |
| DEPART TO: 4H | TIME: 1350 | RECORDED BY: MTO KRSL |

---

**STATE OF CALIFORNIA** — **DEPARTMENT OF CORRECTIONS**
**PRIORITY INMATE DUCAT**
CDC 129 (7/88)

| INMATE'S NAME | CDC #: | HOUSING #: |
|---|---|---|
| HASKIN | B96040 | 04 H 017L |
| ISSUED BY: | DATE: | PASS FROM: |
| P. MASSEY, LT. | 4/21/2005 | H-UNIT |
| PASS TO: | DATE: | TIME: |
| INFIRMARY | 4/22/2005 | 0900 HRS |
| REASON: | | |
| UROLOGY | | |
| AUTHORIZED BY: | REQUESTED BY: | |
| | GERSHBEIN | |
| DEPART TO: | TIME: | RECORDED BY: |

part within this appeal was a minor issue at best. I personally spoke with an Officer who was a key wittness in this appeal, he was never interrviewed. As far as I have been able to ascertain, there was never any legitimate investigation ever conducted, only a giant smoke screen. Considering that one of the most important wittnesses was never interrviewed, only adds credence to the lack of any means of investigation. I am also considering filing a Citizens Complaint regarding this matter. I don't appreciate being lied to regarding this matter. I am now requesting an Internal Affairs investigation of these issues; especially after the malicious intents to thwart the seriousness of this appeal through totally inadequate investigating!

Attachment, B (9) 3-6-07

Unfortunately once again it seems that one of my Inmate Appeals wasn't returned on it's due date as yet. The Appeal that I filed regarding Staff Complaints. Log # C.S.Q-5-07-00209 had a due date of 2-27-2007. This Appeal was assigned to the A W 3 as a Staff reviewer at the First level for response. It seems this is an ongoing problem at this Institution concerning Appeals not being returned on their (due dates). I would deeply appreciate my Appeal being returned with the First level reviewer's response.

Leonard Haskin B-96040
4-14-17 L

MAR 0 8 REC'D

3/8 Please See attached Sheets.

K Marshall

San Quentin State Prison

03/08/2007

ATTACHMENT B (10)

## CALIFORNIA DEPARTMENT OF CORRECTIONS
### Inmate / Parolee Appeals Tracking System - Level I & II

#### Statistic Sheet

Log Number: CSQ-5-07-00209        Area Of Origin: H-UNIT        Last Name: HASKIN        First Name: LEONARD        CDC Number: B96040

Housing At Time Of Appeal:4H17

Current Housing:4H17        Issue: STAFF COMPLAINTS        Issue Subcategory: Unprofssnl/Rude/Disrespectful

#### Inmate Information

Appeal Abuse:        Appeal Abuse Until:        Appeal Flag:        Appeal Flag Until:

Special Needs:

Other Log Numbers:

#### Appeal History

| Log Number | Issue | L1 Received | L1 Due | L1 Completed | L1 Disposition | L2 Received | L2 Due | L2 Completed | L2 Disposition |
|---|---|---|---|---|---|---|---|---|---|
| CSQ-5-07-00094 | PROPERTY | 01/09/2007 | 02/23/2007 | 01/22/2007 | WITHDRAWN | | | | |
| CSQ-5-05-00488 | MEDICAL | 03/11/2005 | 04/25/2005 | 04/06/2005 | GRANTED IN PART | | | | |
| CSQ-5-04-03246 | LIVING CONDITIONS | 12/28/2004 | 02/09/2005 | 02/07/2005 | GRANTED IN PART | 02/22/2005 | 03/22/2005 | 02/22/2005 | CANCELLED |
| CSQ-3-00-03599 | FUNDS | 10/03/2000 | 11/15/2000 | 10/31/2000 | CANCELLED | | | | |
| CSQ-3-00-02777 | FUNDS | 08/09/2000 | 09/21/2000 | 11/13/2000 | DENIED | 08/09/2000 | 01/22/2001 | 02/20/2001 | DENIED |

#### Screen Outs

| Level | Received | Screened Out | Reason | Note |
|---|---|---|---|---|

Page: 1

San Quentin State Prison

03/08/2007

# CALIFORNIA DEPARTMENT OF CORRECTIONS

## Inmate / Parolee Appeals Tracking System - Level I & II

### Statistic Sheet

#### Informal Level

-- Assignments --

| Assigned | Assigned To | Replied |
|---|---|---|

**Received:** _____  **Due:** _____  **Completed:** _____  **Disposition:** _____

#### Level I

-- Assignments --

| Assigned | Assigned To | Replied |
|---|---|---|
| 01/11/2007 | HCM | 03/02/2007 |

**Received:** 01/11/2007  **Due:** 02/27/2007  **Completed:** 03/06/2007  **Disposition:** WITHDRAWN  **NoT withdrawn**

#### Level II

-- Assignments --

| Assigned | Assigned To | Replied |
|---|---|---|

**Received:** _____  **Due:** _____  **Completed:** _____  **Disposition:** _____

#### Level III

**Completed:** _____  **Disposition:** _____

Attachments (cont)

San Quentin State Prison

03/08/2007

**CALIFORNIA DEPARTMENT OF CORRECTIONS**

Inmate / Parolee Appeals Tracking System - Level I & II

**Statistic Sheet**

| Last Name | | First Name | Staff Involved | | |
|---|---|---|---|---|---|
| LEE | | J. B. | | Job Classification | Resolution |
| | | | | Correctional Officer | NOT SUSTAINED |

Investigation Type: Fact Finding

**Modification Orders**

| Level | Modification Order Type | | Assigned To | Due | Sent | Completed | Grant Reason |
|---|---|---|---|---|---|---|---|

**115 Information**

Administrative / Serious:    115 Log Number:    Hearing Officer:    Discovery:

**Reimbursement**

| Cash Award: | Amount Awarded: | Reimbursement With Like Item(s): |
|---|---|---|
| Factor: | | Inmate Signed Waiver: |
| Comment: | | |

**Comment**

2 PART APPEAL ASSIGNED TO HCM AND AW 3 ON 1/17/06. APPEAL REASSIGNED TO AW 2 PER AW 3 ON 1/19/07.

Page: 3

Attachment; B (13.)

Please see attached 3-12-07

A. Marshall

3/14

4-H-17L

    In accordance to the Title 15 Rules and Regulations Code, as per Section 3084.5, regarging ( Levels of Appeal Review and Disposition), Second level review shall be conducted by the institution head or regional parole administrator, or their designee. Considering that my appeal log # C.S.Q.-5-07-00209 in accadance with your Inmate / Parolee Appeals Tracking System, was originally assigned to the (H.C.M.) then Redirected to the (A.W.3) at the First Level of Review, then once again redirecting my appeal at the Second Level of Review back to the (H.C.M.) is totally inappropriate. This misdirection of my appeal is in complete violation of the Title 15's Section 3084.5 concerning Levels of Appeal Review. Unfortunately, the (H.C.M) does not meet the criteria as a high enough level staff member to answer my appeal at the Second Level, per the Title 15 Rules and Regulations Code Book. I would deeply appreciate my appeal being reassigned to the proper level reviewer.

               Howard Haskin B-96040

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                    Date: March 14, 2007
Current Housing: 4H17

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-5-07-00209

ASSIGNED STAFF REVIEWER: HCM
APPEAL ISSUE: STAFF COMPLAINTS
DUE DATE: 04/06/2007

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for SECOND level response. If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for THIRD level review. Third level appeals are to be mailed directly to:

        Chief of Inmate Appeals
        Department of Corrections
        P. O. Box 942883
        Sacramento, CA 94283-0001


R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison.

3/14 Your appeal has been properly
control and is not due until
4/6/07.

K M Marshall

Attachment, B (15)

# INMATE APPEAL ASSIGNMENT NOTICE

To:  INMATE  HASKIN, B96040                          Date: January 17, 2007
Current Housing:  4H17

From:  INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER:  CSQ-5-07-00209

ASSIGNED STAFF REVIEWER:  AW 3
APPEAL ISSUE:  STAFF COMPLAINTS
DUE DATE:  02/27/2007

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for FIRST level response.  If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for SECOND level review.


R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                     Date: March 12, 2007
Current Housing: 4H17

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-5-07-00209

ASSIGNED STAFF REVIEWER: HCM
APPEAL ISSUE: STAFF COMPLAINTS
DUE DATE: 04/06/2007

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above staff for SECOND level response. If you have any questions, contact the above staff member. If dissatisfied, you have 15 days from the receipt of the response to forward your appeal for THIRD level review. Third level appeals are to be mailed directly to:

> Chief of Inmate Appeals
> Department of Corrections
> P. O. Box 942883
> Sacramento, CA 94283-0001

R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

April 30, 2007

*HASKIN, B96040*
*4H16*

Log Number: CSQ-5-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have submitted an appeal that duplicates a previous appeal upon which a decision has been rendered or is pending (CCR 3084.3(c)(2)).*

*DULPICATE APPEAL OF LOG # 07-209 WAS ANSWERED DELAY WAS DUE TO BACK LOG.*

Appeals Coordinator
San Quentin State Prison

**NOTE:**  Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d).  This screening decision may not be appealed.  If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents.  You have only 15 days to comply with the above directives.

---

## PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. _____ | 1. _____ | _____ |
| 2. _____ | 2. _____ | _____ |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME HASKIN | NUMBER B-96040 | ASSIGNMENT Med Unss | UNIT/ROOM NUMBER 4 H 17 L |
|---|---|---|---|

A. Describe Problem: THE ATTACHED APPEAL ( COPY THEREOF ) WAS DUE TO BE ANSWERED BY APRIL 6, 2007. TO DATE APPELLANT HAS NOT BEEN PROVIDED AN ANSWER

If you need more space, attach one additional sheet.

B. Action Requested: REQUEST THAT THE ATTACHED APPEAL BE ANSWERED FORTHWITH

Inmate/Parolee Signature: *Leonard Haskin*     APR 23 REC'D   Date Submitted: 4-20-07

C. INFORMAL LEVEL (Date Received: 4/23/07 )

Staff Response: Staff has been notified about your Overdue appeal.

Staff Signature: *K. Marshall*     Date Returned to Inmate: 4-23-07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

APPELLANT SUBMITS THIS APPEAL TO THE FORMAL LEVEL TO ASCERTAIN THE REASONS FOR THE LATE APPEAL AND SEEKS INDENTIFICATION OF THE RESPONSIBLE PARTY.

Signature: *Leonard Haskin*     Date Submitted: 4-26-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

APR 27 REC'D

STATE OF CALIFORNIA                                       DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1 | S.Q. | 1 07-00209 | |
| 2 | | 2 | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| HASKIN, L | B-96040 | Medically Unassigned | 4-H-17L |

A. Describe Problem: On Sunday evening of Dec. 24, 06 at approximately 1900 hrs. I began to have extensive vommiting and diarrhea every (30) minutes. At approximately 0001 hrs. I approached Officer Ferry at the podium and explained that I had been continuously vommiting and suffering from diarrhea Since 1900 hrs., also that I had a known history of stomach trouble already, I need immediate medical attention, please do a (man-down). At that time the first-watch

If you need more space, attach one additional sheet.

B. Action Requested: That all staff members medical and custody who were involved in this fiasco be immediately suspended without pay pending investigation of this matter. That this very serious incident be immediately put under investigation.

Inmate/Parolee Signature: Leonard Haskin            Date Submitted: 1-1-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____         Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

Sergeant was called, in direct violation of Section (3354) regarding health care responsibilities and limitations of the Title 5 rules and regulations Code, the First-Watch Sergeant took it upon himself to act as a health care employee and deny me badly needed medical attention. Section (3354) explicitly explains that only health care consultants shall be permitted, within the Scope of their lisencure, to diagnose illness or, prescribe medication and health care treatment for inmates." No other personnel may do so." Once again at approximately 0500 hrs. after still continuously suffering from extensive vommiting/diarrhea I approached the podium and told Officer Perry that my symtoms have become increasingly worse that I seriously need medical attention, also that I was now becoming critically dehydrated. Officer Perry once again contacted the First-Watch Sergeant and explained that inmate (Haskin) was getting Seriously worse, unfortunately the Seargeant again violating Section (3354) took it upon himself to deny me badly needed medical attention. At any point of time during this fiasco if by chance an M.T.A was contacted, then that person was seriously negligent in performing his/her job duties! At 0520 hrs. I approached Officer Perry again and said, "what do I have to do to get some damned medial attention? For God's sakes I feel like I'm literally dying." Finally he took the initiative to write me a pass directly to the TTA Clinic. At 0530 hrs. I barely made it to the Admin. Building and observed my third-watch dorm Officer Lee coming out of the M.S.F. Dorm and approach the Admin. Building, he stopped at the front door and asked what I needed, I then

Attachment, D (2H)

xplained that I had been deathly ill all night long and was in
rious need of medical attention. Officer Lee exclaimed, "we
ed to do a man-down, hold on for a second." Just as
fficer Lee entered the building the morning nurse
rrived. She told me to also hold on a moment as she
itered the building. Unfortunately directly after she
tered the building Officer Johnston approached me very
rrogantly," what the fuck do you think your doing out here?"
the ranch is out here get the fuck back to your building."
hen I tried to explain he again said," get the fuck
ack to your building now.'" By that time I was so
eek I barely made it back to building (4). While standing
side the door of my building at approximately 0555 hrs. I
as lucky to observe 2nd-watch Sergeant Collier going through
he the outside ped-gate, I immediately approached him and
xplained my plight. Sergeant Collier thankfully acted very
rofessionally and escorted me directly to the admin. building
old me to grab a chair, then sit directly outside the
clinic area. Approximately 30 minutes later I was escorted
y walking directly to the T.T.A. clinic. Thankfully to
ergeant Collier's professionalism I was finally out of serious
edical danger. When the on duty nurses took my vital
igns and discovered a heart rate of (145-150) they
nstinctively knew that I was very seriously dehydrated.
They immediately contacted the on-call emergency doctor
nd he confirmed that I was dangerously dehydrated
start pumping fluids into him (stat). Both on duty
male nurses told me I was deathly sick and

Attachment; B (22)

thank God I was brought in there. Over approximately
7 hours it took a full 4 liter bags of sterile fluids
to bring my heart rate even back to (100) a somewhat
safer level. I was lastly given an I.V. injection of
prochorperazine and three prochorperazine 10mg. tablets.
As I got ready to return to my dorm I was told no
solid feeds for at least 4 days, unfortunately this is
where the first mistake was made. I wasn't issued any
nlive nutrient drinks to sustain myself. The following day
F Dec. 26, 06 I approached male nurse (Picket) and explained
to him my situation, he became very unprofessional
nd stated thusly; "you got enough fluids yesterday I've
nothing for you." I was very unprofessionly denied
ny way to sustain myself for over 4 days until the
nedical staff finally started handing out (enlive).
I was never treated so disrespectfully my entire life
until this Fiasco. The only three people who showed
professionalism and respect were, Sergeant Collier, and
the two male nurses in the T.T.A. Clinic.

Attachment (23)

04/27/2007

**San Quentin State Prison**

## CALIFORNIA DEPARTMENT OF CORRECTIONS
### Inmate / Parolee Appeals Tracking System - Level I & II

**Statistic Sheet**

Log Number: CSQ-5-07-00209          Area Of Origin: H-UNIT          Last Name: HASKIN          First Name: LEONARD          CDC Number: B96040

Housing At Time Of Appeal: 4H17
Current Housing: 4H17                                          Group Appeal:
                                          Issue: STAFF COMPLAINTS          Issue Subcategory: Unprofssnl/Rude/Disrespectful

**Inmate Information**

Appeal Abuse:          Appeal Abuse Until:          Appeal Flag:          Appeal Flag Until:

Special Needs:
Other Log Numbers:

**Appeal History**

| Log Number | Issue | L1 Received | L1 Due | L1 Completed | L1 Disposition | L2 Received | L2 Due | L2 Completed | L2 Disposition |
|---|---|---|---|---|---|---|---|---|---|
| CSQ-5-07-01305 | CASE INFO./RECORDS | 03/29/2007 | 05/10/2007 | 04/17/2007 | DENIED | 04/23/2007 | 05/21/2007 | | |
| CSQ-5-07-00094 | PROPERTY | 01/09/2007 | 02/23/2007 | 01/22/2007 | WITHDRAWN | | | | |
| CSQ-5-05-00488 | MEDICAL | 03/11/2005 | 04/25/2005 | 04/06/2005 | GRANTED IN PART | | | | |
| CSQ-5-04-03246 | LIVING CONDITIONS | 12/28/2004 | 02/09/2005 | 02/07/2005 | GRANTED IN PART | 02/22/2005 | 03/22/2005 | 02/22/2005 | |
| CSQ-3-00-03599 | FUNDS | 10/03/2000 | 11/15/2000 | 10/31/2000 | CANCELLED | | | | CANCELLED |
| CSQ-3-00-02777 | FUNDS | 08/09/2000 | 09/21/2000 | 11/13/2000 | DENIED | 08/09/2000 | 01/22/2001 | 02/20/2001 | DENIED |

**Screen Outs**

| Level | Received | Screened Out | Reason | Note |
|---|---|---|---|---|

Attachment

San Quentin State Prison

04/27/2007

## CALIFORNIA DEPARTMENT OF CORRECTIONS
### Inmate / Parolee Appeals Tracking System - Level I & II

**Statistic Sheet**

---

**Informal Level**

Received:                                    **Assigned**        **Assigned To**                                      **Replied**

-- Assignments --

Due:                                         Completed:          Disposition:

---

**Level I**

Received: 01/11/2007    Due: 02/27/2007    **Assigned**        **Assigned To**                                      **Replied**
                                           01/11/2007          HCM                                                  03/02/2007

-- Assignments --

                        Completed: 03/06/2007    Disposition: WITHDRAWN

---

**Level II**

Received:               Due:               **Assigned**        **Assigned To**                                      **Replied**
                                           03/09/2007          HCM

-- Assignments --

                        Completed:          Disposition:

---

**Level III**

Received: 03/09/2007    Due: 04/06/2007

                        Completed:          Disposition:

San Quentin State Prison

04/27/2007

## CALIFORNIA DEPARTMENT OF CORRECTIONS
### Inmate / Parolee Appeals Tracking System - Level I & II

### Statistic Sheet

**Staff Involved**

| Last Name | First Name | Job Classification | Resolution |
|---|---|---|---|
| LEE | J. B. | Correctional Officer | OTHER |

**Investigation Type:** Fact Finding

### Modification Orders

| Level | Modification Order Type | Assigned To | Sent | Due | Completed | Grant Reason |
|---|---|---|---|---|---|---|

**115 Information**

**Administrative / Serious:**    115 Log Number:    Hearing Officer:    Discovery:

**Reimbursement**

**Cash Award:**    Amount Awarded:    Reimbursement With Like Item(s):

**Factor:**    Inmate Signed Waiver:

**Comment:**

**Comment**

Page: 3

Attachment, P (26)

## INMATE APPEAL ASSIGNMENT NOTICE

To: INMATE HASKIN, B96040                     Date: March 11, 2005
Current Housing: N 3 000308 C  067U

From: INMATE APPEALS OFFICE

Re: APPEAL LOG NUMBER: CSQ-5-05-00488

ASSIGNED STAFF REVIEWER: HCM
APPEAL ISSUE: MEDICAL
DUE DATE: 04/25/2005

Inmate HASKIN, this acts as a notice to you that your appeal has been sent to the above
staff for FIRST level response.  If you have any questions, contact the above staff
member. If dissatisfied, you have 15 days from the receipt of the response to forward
your appeal for SECOND level review.


R.Chandler-Dacanay or W.Jeppeson
Appeals Coordinator
San Quentin State Prison

Attachment 2

STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS
CALIFORNIA MEDICAL FACILITY
RADIOLOGY REPORT

**NAME:** HASKIN, L.          **NO:** B-96040  **HSG:** X-102          **AGE:** 35

**TYPE OF X-RAY:** LUMBOSACRAL SPINE                    **ORDERING M.D.:** DASSAH

**DATE OF X-RAY:** 7/10/87                    **DATE OF REPORT:** 7/10/87

LUMBOSACRAL SPINE:

Five views of the lumbar spine show mild diffuse hypertrophic changes involving
the bodies and to a lesser degree the facets. Loss of disc space height is
noted especially at L4-5. There is partial sacralization of the L5, with
diminuative 12th ribs.

JB:pc

J. BRONK, M.D.
RADIOLOGSIT

CALIF. MED. FACILITY
Jul 15  4 51 PM '87
RECEIVED

---

SALINAS VALLEY RADIOLOGISTS, INC.
A MEDICAL GROUP
CLEAR MEDICINE, ULTRASOUND AND COMPUT... ED TOMOGRAPHY
515 EAST ROMIE LANE
SALINAS, CALIFORNIA 93901

RADIOLOGY

Richard C. Hader, M.D.
Harold E. Rumbul, M.D.
James E. Kowalski, M.D.
Richard L. Mattson, M.D.
Donald A. Catalano, M.D.

William S. Be...
Daniel P. Celidore
Giles A. Dureuluis
Jay Klo...

**PATIENT:** HASKINS, LEONARD B-96040 LB-140 AGE: 3...

**REFER PHYSICIAN:** DUFFIELD          **DATE** 8-20-

IVP:  Preliminary film of the abdomen reveals several phlebolit
in the pelvis. There is no evidence for organ enlargements or
soft tissue masses.

Following the intravenous infusion of contrast there is prompt
and equal visualization of the kidneys. The right kidney measur
12 cm in length, the left kidney measures 12 cm also. Both kid...
have a normal contour. The calices, pelves and ureters are nice
seen and have a normal appearance.

The urinary bladder is small, however, it empties nicely on the
final film.

IMPRESSION:

Essentially normal IVP as noted above.

JAMES A. KOWALSKI, M.D.

JAK/vj
8-23-85

# HIGH DESERT STATE PRISON

NAME: HASKINS               CDC#: B96040     DOE: 10-31-97

REFERRING PHYSICIAN: Efren Robinson, M.D.

CERVICAL SPINE:

DIAGNOSIS: Degenerative and discogenic degenerative findings are noted.

COMMENT: The alignment of the vertebral bodies is satisfactory. Degenerative findings are noted throughout the lower cervical spine with narrowing present at C6-C7, suggesting discogenic degenerative changes. Minor uncovertebral degenerative changes are noted throughout the mid to lower cervical spine, more so on the right side. The odontoid is intact.

Thank you for this consultation.

Justin F. Weiss, M.D.
TR\Med/By Design, Inc.
1601 N. Tucson Blvd., Ste. 5A
Tucson, AZ   85716

D:  11-21-97  JFW
T:  11-25-97  af

Attachment, E (3)

# HIGH DESERT STATE PRISON

## RADIOLOGY REPORT

---

Name: HASKIN, L.

Number: B96040

Date: 11/06/96

Exam Requested: LUMBAR SPINE

Housing: B1-208L

Doctor: GILKES

---

**LUMBAR SPINE, LIMITED:**

Lumbar spine examination demonstrates early interspace narrowing at L3-4, L4-5, and L5-S1 consistent with degenerative disk disease. Very early posterior bone spurring is present at L4-5. Moderate anterior osteophyte formation is present at L4 and L5. No fracture or dislocation is noted. The pedicles are intact. The SI joints are open without diastasis.

IMPRESSION:    1.   **Early degenerative disk disease at L3-4, L4-5 and L5-S1.**

2.   No fracture.

Thomas W. Maclennan, M.D. DABR

11/14/96 dac

Attachment 4:08-cv-02226-CW

# X-RAY REPORT
## FOLSOM STATE PRISON

NAME   HASKIN, LEONARD   NO.   B-96040   DATE _____ 09/29/98

X-RAY OF   LUMBOSACRAL SPINE   ORDERED BY _____ GEOFFREY HANSON, M.D.

CLINICAL DATA _____

Outside films of the lumbosacral spine dated 11/19/96 have become available for comparison with the study dated 06/23/98. The degenerative osteoarthritic changes have advanced slightly compared with the previous study and involve more joints. Rudimentary twelfth ribs were noted in both studies. The narrowing of the fourth lumbar vertebral interspace was noted in both studies with very little if any change. The latest study shows narrowing of the fifth lumbar vertebral interspace not mentioned in the report and appears narrower compared with the previous study. The third lumbar vertebral interspace appears well preserved to this observer with no significant change compared with the previous study. There is widening of the transverse processes of L-5.

IMPRESSION:

1.   Degenerative osteoarthritic changes and suggestive of degenerative disc disease, advanced, compared with the previous study.

JLM:   ml
D:     09/29/98
T:     10/06/98

JERRY L. MURPHY, D.O.
RADIOLOGIST

# X-RAY REPORT
## FOLSOM STATE PRISON

NAME __HASKIN, LEONARD__    NO. __B-96040__  DATE _____ __06/23/98__

X-RAY OF __LUMBOSACRAL SPINE__    ORDERED BY _____    MARION MC ARTHUR, M.D.

CLINICAL DATA _____

The examination reveals apparent partial lumbarization in the first sacral segment with an associated joint space narrowing although disc disease here cannot be excluded. I cannot exclude neural foraminal encroachment by posterior spurring at this level as well. There is also a slight narrowing of the fourth lumbar vertebral interspace and disc disease here cannot be excluded. Mild degenerative osteoarthritic changes are noted with anterior vertebral body lipping and osteophyte formation involving T-12, L-1, L-3, 4, and 5. The study is otherwise unremarkable.

JLM:  ml
D:  06/23/98
T:  06/29/98

JERRY L. MURPHY, D.O.
RADIOLOGIST

Leonard Alexbin B-96080
San Quentin Prison 4-K-17-L
San Quentin Calif 94974

Legal Mail

RECEIVED

JUL 28 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Office of The Clerk U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Legal Mail

