IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEONARD A. HASKIN, | ) | No. C 08-2226 CW (PR) |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING WITHOUT |
| | ) | PREJUDICE ALL CLAIMS AGAINST |
| v. | ) | DEFENDANT CAPOZOLI; AND GRANTING |
| | ) | REMAINING DEFENDANTS' MOTION TO |
| ROBERT AYERS, JR., et al., | ) | DISMISS |
| | ) | |
| Defendants. | ) | (Docket no. 32) |
| _____ | ) | |

INTRODUCTION

Plaintiff Leonard A. Haskin[1] filed this pro se civil rights action under 42 U.S.C. § 1983 on July 28, 2008, when he was a state prisoner incarcerated at San Quentin State Prison (SQSP).

In an Order dated December 31, 2009, the Court found cognizable Plaintiff's Eighth Amendment claim of deliberate indifference to serious medical needs against the following SQSP Defendants: Warden Robert Ayers, Jr.; Chief Physician Dr. Williams; Physicians Dr. Martin, Dr. Wilson, Dr. Bui and Dr. Udenyi; Neurologists Dr. Capozoli and Dr. Mendius; Urologist Dr. Gershbein; Sergeant Nguyen; and Correctional Officer Perry.

On March 23, 2010, Defendants Ayers, Bui, Gershbein, Martin, Nguyen, Perry, Udenyi, Williams and Wilson (Defendants) moved to dismiss Plaintiff's deliberate indifference claim for failure to exhaust administrative remedies.[2]  Inmate Appeals Branch Chief D.

---

[1] Plaintiff's last name was previously incorrectly spelled as "Haskins."  The correct spelling is "Haskin."

[2] Defendants Mendius and Capozoli were never served in this action; therefore, they have not joined the other Defendants in the present motion.  On January 25, 2011, the Court dismissed without prejudice Plaintiff's claims against Defendant Mendius under Federal Rule of Civil Procedure 4(m).  Meanwhile, in an Order dated March 1, 2011, the Court directed Plaintiff to provide a current address for Defendant Capozoli within fourteen days.  The fourteen-day deadline has passed, and Plaintiff has not

Foston and Deputy Attorney General C. Young submitted declarations in support of Defendants' motion to dismiss. Plaintiff filed three letters -- on August 13, 2010, October 7, 2010 and January 3, 2011 -- in response to Defendants' motion to dismiss.[3] Defendants filed a reply to Plaintiff's letters.

On February 1, 2011, the Court directed Defendants to produce supporting documents relevant to 602 inmate appeal log no. 07-00209. On February 8, 2011, Defendants responded to the Court's February 1, 2011 Order. SQSP Appeals Coordinator L. Rojas submitted another declaration in support of Defendants' motion to dismiss. On March 1, 2011, Plaintiff filed a reply to Defendants' response.

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss.

BACKGROUND

Plaintiff alleges that Defendants "neglect[ed] to appropriately acknowledge or treat" his serious medical needs on

---

responded to the Court's March 1, 2011 Order. Accordingly, Plaintiff's claims against Defendant Capozoli are also DISMISSED without prejudice under Rule 4(m).

[3] In addition to opposing the motion to dismiss, Plaintiff alleges in these letters that his sentence is illegal. (Pl.'s Aug. 13, 2010 Letter at 2 (citing Cunningham v. California, 549 U.S. 270 (2007)).) However, contrary to Plaintiff's allegation that this is an "important matter regarding this law suit involving San Quentin," his sentencing claim need not be addressed at this time because it is not relevant to his deliberate indifference claims. Instead, if Plaintiff wishes to pursue this claim, he should file a separate habeas corpus action after exhausting his state court remedies.

2

several occasions between 2003 and 2008. (Am. Compl. at 5.[4]) The amended complaint refers to Plaintiff's multiple medical problems; however, for the purposes of analyzing the exhaustion issue, the Court has divided his problems into the following categories:

I.   Lack of Treatment for Urological Problems

Plaintiff alleges that between December 2, 2004 and approximately March 1, 2005, he "complained" to Defendants Wilson and Bui "of urological problems, and neither Dr. ordered any treatment." (Id. at 6.)

On December 2, 2004, Plaintiff was examined by Dr. Williams, who indicated that "he would be sending [Plaintiff] to urology, but never followed through with the appointment." (Id. at 7.)

On or about April 1, 2005, Defendant Bui ordered antibiotics for Plaintiff's "enlarged prostrate [sic];" however, the medication "did not work." (Id. at 6.)

On April 22, 2005, Plaintiff saw Defendant Gershbein, who prescribed Plaintiff "seven days of Valium" and informed Plaintiff that his symptoms were "psychosomatic." (Id. at 8.) Plaintiff "continued to complain to H-Unit Doctors until [he was] prescribed Flomax." (Id.)

On July 14, 2006, Plaintiff was examined by an SQSP urologist.[5]

---

[4] Plaintiff has not numbered his amended complaint. Although he has numbered the pages of the attached exhibits, the pages are not in numerical order. Therefore, the Court has renumbered his amended complaint and exhibits, beginning with page one as the first page of the complaint form.

[5] After a "minimal case review" during the July 14, 2006 appointment, Plaintiff alleges he was not examined by a urologist "until approximately December 12, 2008." (Am. Compl. at 9.)

3

On or about September 1, 2007, Plaintiff was examined by SQSP urology specialist Dr. Brown.

On October 16, 2007, Plaintiff received prostate surgery.

On October 17, 2007, Plaintiff was "discharged . . . with no follow-up treatment or pain medications ordered by Dr. Brown." (Id.)

On October 18, 2007, Plaintiff was transported to the Trauma Treatment Area-Emergency Room (TTA) because he was "in severe pain." (Id.) Plaintiff "received pain medication and antibiotics, and a follow-up treatment, which included cleaning [his] exterior catheter."

On October 19, 2007, Plaintiff was seen by Defendant Udenyi, who allegedly exclaimed to Plaintiff, "'Oh my God, your catheter was supposed to be removed in 48 hours. Jesus, we're a day late already . . . ." (Id.) Defendant Udenyi then directed the registered nurse to send Plaintiff immediately to TTA to remove the catheter. (Id.) Soon after, a TTA doctor removed Plaintiff's catheter.

On or about October 21, 2007, Plaintiff "began suffering complications" from his prostate surgery, which he alleges caused "acute pain" in his prostate area, problems with "urinary retention" and "burning" while urinating. (Id. at 11.)

On November 20, 2007, Plaintiff returned to TTA because he was "in severe pain from said complications." (Id.) He was allegedly "refused said treatment." (Id.)

---

However, this is contradicted by the record, which shows that Plaintiff was examined by urology specialists in September, 2007.

4

On or about December 10, 2007, Defendant Udenyi told Plaintiff that "all of Dr. Brown's treatment orders of November 20, 2007 were lost out of [his] medical file." (Id.) Defendant Udenyi then indicated she would "call Dr. Brown, and ask him what treatment he prescribed." (Id.) Defendant Udenyi later prescribed Plaintiff one milligram of Terazosin once daily. Plaintiff alleges that "this dosage did nothing for my pain or systems [sic]." (Id. at 12.) Thereafter, Defendant Udenyi increased Plaintiff's medication dosage.

II. Lack of Treatment for Dehydration[6]

On December 24, 2006, Plaintiff alleges that at around 7:00 p.m. he "began to vomit every 30 minutes." (Id. at 13.) At around 1:00 a.m., Plaintiff approached Defendant Perry and requested "immediate medical treatment," which was denied. (Id.) At around 3:00 a.m., Plaintiff again approached Defendant Perry and requested immediate medical treatment, which was denied. (Id.) At 5:20 a.m., Plaintiff once more approached Defendant Perry, who this time "wrote [him] a pass" to go to TTA. (Id.) Plaintiff alleges the TTA registered nurse informed Plaintiff that if he had "not come in when [he] did, that [he] would have died of dehydration." (Id.)

On January 1, 2007, Plaintiff submitted 602 inmate appeal log no. SQ-07-00209, requesting that the December 24, 2006 incident "be immediately put under investigation." (Id. at 44.)

On January 2, 2007, Plaintiff also submitted a copy of appeal

---

[6] Although it is not clearly indicated in the record, the Court assumes that Plaintiff's dehydration was related to his urological problems.

5

log no. SQ-07-00209 to Chief Medical Officer K. Saylor and Federal Receiver R. Sillen.

On January 17, 2007, Plaintiff received notification that appeal log no. SQ-07-00209 had been assigned to a reviewer at the first formal level. (Id. at 61.)

On March 6, 2007, Plaintiff wrote a letter indicating that he had not yet received a response from the first formal level of review, which had a due date of February 27, 2009. (Id. at 55.)

On March 1, 2007, appeal log no. SQ-07-00209 was "partially granted" at the first formal level of review because an "inquiry into [Plaintiff's] allegation had been conducted." (Rojas Decl., Ex. A at AGO-09.) Plaintiff then submitted his appeal to the second formal level of review.

On March 14, 2007, Plaintiff received notification that appeal log no. SQ-07-00209 had been assigned to a reviewer at the second formal level. (Am. Compl. at 62.)

The record originally did not contain a copy of the response to his appeal to the second formal level of review or any indication about whether the appeal progressed to the Director's level of review. Therefore, in its February 1, 2011 Order the Court directed Defendants to provide the Court with "any and all relevant supporting documents showing whether there was a second level response to inmate appeal log no. 07-00209, and if so, whether the appeal progressed to the Director's level." (Feb. 1, 2011 Order at 2.)

Defendants submitted a copy of the response from the second formal level of review, which shows that the reviewer "partially

6

granted" appeal log no. SQ-07-00209 on June 16, 2008. (Rojas Decl., Ex. A at AGO-18.) The reviewer determined that the inquiry into Plaintiff's allegation was "complete," and that staff did not violate California Department of Corrections and Rehabilitation (CDCR) policy. (Id.) In that response, Plaintiff was instructed as follows: "If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted." (Id.)

In Plaintiff's reply to Defendants' response, he claims that the copy of the second formal level reviewer's response is "absolutely fraudulent." (Pl.'s Reply at 1.) However, the Court finds no evidence to support Plaintiff's allegation. The documents submitted by Defendants, including the second formal level reviewer's response, were attached to a declaration by Appeals Coordinator Rojas, who swore under penalty of perjury that the copy of appeal log no. SQ-07-00209 and the responses to that appeal, attached as "Exhibit A," was a "true and correct copy of the original appeal, the first level review memoranda, and the second level review memorandum." (Rojas Decl. ¶ 4.)

Finally, there is nothing in the record that indicates that Plaintiff appealed to the Director's level of review. The Court notes that in his original complaint, filed on a habeas corpus petition form, Plaintiff alleges that appeal log no. SQ-07-00209 was "not pursued" to the Director's level of review "because of misdirection" by the "Appeals Coordinator." (Pet. at C-4.)

7

III. Lack of Treatment for Spinal Arthritic Disk Degeneration

Plaintiff alleges that on October 21, 2003, he learned he had "Chronic Cervical Lumbar Arthritic Degeneration." (Am. Compl. at 9.) Plaintiff initially requested treatment for his disorder that day; however, he was informed that he "was beyond physical therapy until August 13, 2006."[7] (Id.) Plaintiff was referred to University of California, San Francisco Hospital. Plaintiff was then referred to SQSP's "medical physical therapist" for "another probationary period of light traction for Cervical Spine Disorder." (Id.)

On or about October 1, 2004, Plaintiff was seen by Defendant Wilson for his Spinal Arthritic Disk Degeneration, during which time Plaintiff told Defendant Wilson "that in addition to the severe pain and loss of feeling in [his] hands and feet," he was experiencing pain in his shoulder. (Id. at 6.) Defendant Wilson referred Plaintiff to a Tele-Ortho Doctor.

On April 5, 2007, the "traction probationary period" ended and the physical therapist referred Plaintiff "back to the neurosurgeon." (Id.) From April 5, 2007 until approximately December 17, 2007, Plaintiff alleges he received "no follow-up treatments." (Id.)

DISCUSSION

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), amended 42 U.S.C. § 1997e to

---

[7] Because there is nothing in the record showing that Plaintiff received any physical therapy during this time, the Court assumes that Plaintiff was informed that such therapy was unavailable to him until August, 2006.

8

provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement is therefore mandatory, and no longer left to the discretion of the district court.  Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The PLRA's exhaustion requirement requires "proper exhaustion" of administrative remedies.  Woodford, 548 U.S. at 93.  This means "[p]risoners must now exhaust all 'available' remedies," id. at 85, in "compliance with an agency's deadlines and other critical procedural rules."  Id. at 90-91.  The requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Id.  Further, the remedies "available" need not meet federal standards, nor need they be "plain, speedy and effective."  Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth, 532 U.S. at 739-40 & n.5.

It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).  The CDCR provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. Tit. 15, § 3084.1(a).  The CDCR also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers.  See id. § 3084.1(e).  In order to exhaust all available

9

administrative remedies within this system, a prisoner must submit his complaint as a 602 inmate appeal and proceed through several levels of appeal: (1) informal level grievance filed directly with any correctional staff member; (2) first formal level appeal filed with one of the institution's appeal coordinators; (3) second formal level appeal filed with the institution head or designee; and (4) third formal level appeal filed with the CDCR director or designee. Id. § 3084.5; Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009); Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). Barry, 985 F. Supp. at 1237-38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

Defendants argue Plaintiff has not exhausted all available administrative remedies for his deliberate indifference claims. A search of the Inmate Appeals Branch's computer records was conducted for all appeals filed by Plaintiff, and a computer print-out of the results was generated. (Foston Decl. ¶ 6.) The computer print-out comprises "each and every appeal" to the Director's level of review filed by Plaintiff and "accepted for review" from 1993 to January 20, 2010 or "screened-out" at the Director's level of review from 2000 to January 20, 2010. (Id.) Defendants claim that the Inmate Appeals Branch has no record of Plaintiff having pursued any appeals relating to his deliberate indifference claims to the Director's level of review. (Foston

Decl. at 6; Ex. A.)  Specifically, they argue that he only submitted two inmate appeals for review at the Director's level of review, appeal log nos. SQ-07-01305 and SQ-07-02076, and neither of those appeals involves the deliberate indifference claims found in his amended complaint.  In his letter filed on January 3, 2011, Plaintiff concedes that these two inmate appeals are "totally irrelevant to the pending case . . . ."  (Pl.'s Jan. 3, 2011 Letter at 1.)

The Court now analyzes whether Plaintiff exhausted his deliberate indifference claims relating to each of his aforementioned medical problems:

I.   Lack of Treatment for Urological Problems

Plaintiff does not allege, nor does the record indicate, that he pursued an inmate appeal to the Director's level of review relating to his claim of lack of treatment for his urological problems between December 2, 2004 and March 28, 2008.  The Court finds that Plaintiff did not exhaust all administrative remedies available as to this claim.  Accordingly, Defendants' motion to dismiss is GRANTED as to Plaintiff's deliberate indifference claim for lack of treatment for urological problems.

II.  Lack of Treatment for Dehydration

As mentioned above, Plaintiff attempted to exhaust his deliberate indifference claim relating to the lack of treatment for his dehydration episode on December 24, 2006 by submitting appeal log no. SQ-07-00209.  However, the Inmate Appeals Branch has no record of Plaintiff having pursued appeal log no. SQ-07-00209 to the Director's level of review.  (Foston Decl. at 6; Ex.

11

A.) Plaintiff does not allege, nor does the record indicate, that Plaintiff pursued appeal log no. SQ-07-00209 to the Director's level of review. Instead, Plaintiff argues that the Appeals Coordinator's Office "deliberately used every means available to thwart" his pursuit of appeals. (Pl.'s October 7, 2010 letter at 1.) As mentioned above, Plaintiff concedes that appeal log no. SQ-07-00209 was "not pursued" to the Director's level of review; however, he holds the "Appeals Coordinator" responsible based on alleged "misdirection." (Pet. at C-4.) Plaintiff makes conclusory allegations about the inadequacy of the administrative grievance process, which is not a sufficient ground to defeat dismissal of a complaint for failure to exhaust. See White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997). Furthermore, there is no evidence in the record that prison officials deliberately lost or failed to honor Plaintiff's appeal log no. SQ-07-00209. Instead, the record shows Plaintiff failed to utilize the prison's administrative grievance process properly because he did not pursue appeal log no. SQ-07-00209 to the Director's level of review. Because the PLRA's exhaustion requirement requires "proper exhaustion" of administrative remedies, Woodford, 548 U.S. at 93, Plaintiff did not satisfy this requirement; he did not comply with SQSP's procedural rules of pursuing inmate appeals to the highest level of review.

Based on the record, including Plaintiff's statements above, the Court finds that he has conceded non-exhaustion as to his deliberate indifference claim for lack of treatment for dehydration, and has not alleged any exception to the exhaustion requirement. Accordingly, Defendants' motion to dismiss is

12

GRANTED as to his claim relating to the lack of treatment for his dehydration.

III. Lack of Treatment for Spinal Arthritic Disk Degeneration

Plaintiff does not allege, nor does the record indicate, that Plaintiff pursued a 602 inmate appeal to the Director's level of review relating his claim of lack of treatment for his Spinal Arthritic Disk Degeneration problems between December 2, 2004 and March 28, 2008. Accordingly, the Court GRANTS Defendants' motion to dismiss on this issue because Plaintiff did not exhaust all administrative remedies available as to this claim.

CONCLUSION

For the foregoing reasons,

1. The Court DISMISSES without prejudice Plaintiff's claims against Defendant Capozoli under Federal Rule of Civil Procedure 4(m). As mentioned above, Plaintiff's claims against Defendant Mendius have previously been dismissed without prejudice under Rule 4(m).

2. The Court GRANTS the remaining Defendants' motion to dismiss Plaintiff's Eighth Amendment claims of deliberate indifference as unexhausted. This dismissal is without prejudice.

3. The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

4. This Order terminates Docket no. 32.

13

IT IS SO ORDERED.

DATED: 3/16/2011



CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD A HASKINS, | Case Number: CV08-02226 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| ROBERT AYERS JR et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 16, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Leonard A. Haskins
800 Main St., Apt. #207
Redwood City, CA 94063

Dated: March 16, 2011

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk